CROWELL & MORING LLP
Steven D. Allison, *Admitted Pro Hac Vice* (CSB No. 174491, sallison@crowell.com)
Van-Dzung V. Nguyen, *Admitted Pro Hac Vice* (CSB No. 222832, vnguyen@crowell.com)
Samrah R. Mahmoud, *Admitted Pro Hac Vice* (CSB No. 285168, smahmoud@crowell.com)
3 Park Plaza, 20th Floor
Irvine, CA 92614
Telephone: 949-263-8400
Facsimile: 949-263-8414

CROWELL & MORING LLP
Brendan V. Mullan (HSB No. 9479, bmullan@crowell.com)
275 Battery Street, 23rd Floor
San Francisco, CA 94111
Telephone: 415-365-7847
Facsimile: 415-986-2827

STUART N. FUJIOKA (HSB No. 4223, stuart@snfaal.com)
1188 Bishop St. #1006
Honolulu, HI 96813
Telephone: 808-544-0068
Facsimile: 808-544-0078

Attorneys for Plaintiffs/Counterclaim Defendants
AMERICAN AUTOMOBILE INSURANCE COMPANY
and NATIONAL SURETY CORPORATION

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| AMERICAN AUTOMOBILE INSURANCE COMPANY, a Missouri Corporation; NATIONAL SURETY CORPORATION, an Illinois Corporation, <br><br> Plaintiffs, <br><br> v. <br><br> HAWAII NUT & BOLT, INC. and SAFEWAY INC., <br><br> Defendants. <br><br> SAFEWAY INC.; HAWAII NUT & BOLT, INC. <br><br> Counterclaim Plaintiffs | CIVIL NO. CV 15-00245-ACK/KSC (Declaratory Judgment) <br><br> **MEMORANDUM IN SUPPORT OF MOTION TO DISMISS BREACH OF CONTRACT AND REFORMATION COUNTERCLAIMS IN COUNTERCLAIM PLAINTIFFS' SECOND AMENDED COUNTERCLAIM** |

v.

AMERICAN AUTOMOBILE
INSURANCE COMPANY, a Missouri
Corporation; NATIONAL SURETY
CORPORATION, an Illinois Corporation,

      Counterclaim Defendants.

  and

DOUGLAS MOORE, MONARCH
INSURANCE SERVICES, INC., a
Hawaii Corporation, and INSURANCE
ASSOCIATES, INC., a Hawaii
Corporation,

      Additional Counterclaim
      Defendants

Trial Date:  Aug. 1, 2017

# TABLE OF CONTENTS

**Page(s)**

I.  INTRODUCTION .................................................................................1

II.  STATEMENT OF FACTS ....................................................................3

    A.  Factual Background..................................................................3

    B.  Insurance Policies ...................................................................5

III.  LEGAL STANDARD ...........................................................................7

    A.  Motion to Dismiss ...................................................................7

    B.  Insurance Contract Interpretation...........................................8

IV.  ARGUMENT.........................................................................................9

    A.  Counterclaim Plaintiffs' Breach of Contract Counterclaim Fails Because Safeway's Underlying Claims Were Not for "Property Damage" Caused by an "Occurrence" as the Plain Language of the Policies Require .....................................................................9

        1.  Safeway's underlying "contract" claims...................................13

        2.  Safeway's intentional misrepresentation and "negligence" claims .................................................................14

        3.  Safeway's remaining underlying claims for unjust enrichment and product defects ................................................16

        4.  Act 83 does not change the result here .....................................18

    B.  Counterclaim Plaintiffs' Reformation Counterclaim Should Be Dismissed For Failure to Plead Mutual Mistake with Particularity Under Rule 9(b).....................................................19

V.  CONCLUSION.....................................................................................21

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ......................................................................7, 8

*Burlington Ins. Co. v. Oceanic Design & Constr.,*
  383 F.3d 940 (9th Cir. 2004) ....................................................*passim*

*Burlington Ins. Co. v. United Coatings Mfg. Co., Inc.,*
  518 F. Supp. 2d 1241 (2007) ....................................................*passim*

*Coto Settlement v. Eisenberg,*
  593 F.3d 1031 (9th Cir. 2010) ...........................................................8

*Evanston Ins. Co. v. Nagano,*
  891 F. Supp. 2d 1179 (D. Haw. 2012) .............................................17

*First Ins. Co. of Hawaii, Inc. v. State, by Minami,*
  66 Haw. 413 (1987) ...........................................................................8

*Fortune v. Wong,*
  68 Haw. 1 (1985) ...........................................................................8, 9

*Group Builders, Inc. v. Admiral Ins. Co.,*
  123 Haw. 142 (Ct. App. 2010) ...........................................11, 12, 19

*Hawaiian Holiday Macadamia Nut Co., Inc. v. Indus. Indem. Co.,*
  76 Haw. 166 (1994) ...................................................................10, 16

*Illinois Nat'l Ins. Co. v. Nordic PCL Const., Inc.,*
  870 F. Supp. 2d 1015 (D. Haw. 2012).......................................*passim*

*Maloney v. Scottsdale Ins. Co.,*
  256 Fed. Appx. 29 (9th Cir. 2007).....................................................20

*Nautilus Ins. Co. v. 3 Builders, Inc.,*
  955 F. Supp. 2d 1121 (D. Haw. 2013).................................................17

*Oahu Transit Servs., Inc. v. Northfield Ins. Co.,*
  107 Haw. 231 (2005) ......................................................................8, 9

*Rymal v. Bank of Am.,*
  2011 WL 6100979 (D. Haw. Dec. 6, 2011) ......................................20

**TABLE OF AUTHORITIES**
**CONTINUED**

Page(s)

*State Farm Fire & Cas. Co. v. Vogelgesang,*
    834 F. Supp. 2d 1026 (D. Haw. 2011)...............................................9, 12, 15, 19

*State Farm Fire and Cas. Co. v.GP West, Inc.,*
    2016 WL 3189187 (D. Haw. June 7, 2016)................................................*passim*

*State Farm Fire and Cas. Co. v. Pac. Rent-All, Inc.,*
    90 Haw. 315 (1999) ...........................................................................8, 9

*State v. Kahua Ranch, Ltd.,*
    47 Haw. 28 (1963) ..............................................................................19

*Ebeid v. Lungwitz,*
    616 F.3d 993 (9th Cir. 2010) ................................................................20

*Watson v. U.S. Fidelity & Guar. Co.,*
    427 F.2d 1355 (9th Cir. 1970) .........................................................19, 20

**Statutes**

Haw. Rev. Stat. Ann. § 490:2-106(1) .......................................................14

Haw. Rev. Stat. Ann. § 490:2-201(3)(c) ...................................................14

Haw. Rev. Stat. Ann. § 490:2-207(3) .......................................................14

Haw. Rev. Stat. Ann. § 431:1-217(a).........................................................18

**Other Authorities**

Fed. R. Civ. P. 9(b) ...........................................................................2, 19, 20

Fed. R. Civ. P. 12(b)(6)...........................................................................7

## MEMORANDUM IN SUPPORT OF MOTION

## I.   INTRODUCTION

Since at least 1996, courts applying Hawaii law—including the Ninth Circuit and this Court— have held that claims arising out of contractual relationships are not insured by commercial general liability ("CGL") policies.  Specifically, these courts have consistently found that construction defects claims are not covered by CGL policies because such claims are not "occurrences," *i.e.*, "accidents," as required by CGL policies; instead they are based on rights and obligations to which the insured agreed.

In direct conflict with this well-settled rule, Defendants and Counterclaim Plaintiffs Safeway Inc. ("Safeway") and Hawaii Nut & Bolt, Inc. ("HNB") seek indemnification from FFIC[1] under CGL policies for precisely these types of claims. Safeway sued HNB, FFIC's insured (in addition to the general contractor and other parties), in state court for alleged defects in the construction of a roof deck at a new Safeway store in Kapahulu.  Safeway alleged HNB entered in contracts with the general contractor (Nordic PCL Construction, Inc. "Nordic") and another subcontractor on the Safeway project and that Safeway was the intended third-party beneficiary of those contracts.  HNB's contracts also allegedly incorporated the terms of Safeway's master Construction Contract with Nordic.  Safeway therefore asserted several contract and tort claims against HNB based on HNB's alleged dereliction of its contractual representations and obligations.

After settling the underlying action without FFIC's consent, HNB and Safeway (as HNB's assignee) counterclaimed against FFIC in this action for among other things, breach of contract and reformation (counterclaims one and

---

[1] "FFIC" or "Fireman's Fund Insurance Co." refers collectively to Plaintiffs and Counterclaim Defendants American Automobile Insurance Co. and National Surety Corp.

four).  Counterclaim Plaintiffs allege FFIC owes a duty to indemnify HNB for a stipulated judgment based on Safeway's underlying claims.

But Counterclaim Plaintiffs' breach of contract counterclaim fails because none of Safeway's underlying claims were for "property damage" caused by an "occurrence" as required by the plain language of the relevant policies.  As discussed further below, all of Safeway's claims in the underlying action, including Safeway's tort claims, arose out of and were derivative of HNB's alleged contractual relationships and obligations.  Under Ninth Circuit precedent, these claims fail to fall within the unambiguous insuring language of the policies, and Counterclaim Plaintiff's breach of contract counterclaim must be dismissed.

Further, Counterclaim Plaintiffs' reformation counterclaim must also be dismissed because they failed to plead it with particularity under Federal Rule of Civil Procedure 9(b).  An insurance policy cannot be reformed simply because an insured disagrees with the policy's plain language; rather, the insured must prove that both the insurer and insured entered into the contract on a mistaken belief of fact.  Rule 9(b) requires allegations of mistake to be pled with particularity.  But here, Counterclaim Plaintiffs do not allege *any* factual allegations supporting their assertion of mutual mistake, let alone allege those facts with particularity.  Instead, Counterclaim Plaintiffs allege the opposite: that FFIC intended, at the time of issuing the policies, to deny claims like those in the underlying action under Ninth Circuit precedent.

FFIC's motion to dismiss should therefore be granted as to Counterclaim Plaintiffs' first and fourth counterclaims for breach of contract and reformation.[2]

---

[2] By moving to dismiss counterclaims one and four, FFIC does not concede the accuracy or viability of Counterclaim Plaintiffs' other counterclaims.

FFIC'S MTN. TO DISMISS SACC
CASE NO.: CV 15-00245-ACK-KSC

## II.     STATEMENT OF FACTS

### A.     Factual Background

This case involves an insurance coverage dispute between FFIC and HNB and Safeway (as HNB' assignee) over a construction defects lawsuit.  Second Am. Counterclaim ("SACC") ¶¶ 2, 69.

On June 22, 2009, Safeway filed a complaint in the First Circuit Court of the State of Hawaii ("Underlying Action") against the general contractor, and various subcontractors, vendors, and suppliers, including HNB, for alleged defects in the construction of a roof deck at a new Safeway store in Kapahulu ("Safeway Project").  SACC ¶¶ 14-15, 28; Declaration of Pam Kasbohm ("Kasbohm Decl."). ¶ 2 & Ex. A, Compl., *Safeway Inc. v. Nordic PCL Constr., Inc.,* No. 09-1-1414-06 (June 22, 2009) ("UC") ¶¶ 2-7.  Safeway alleged that in November 2006, it entered into a Master Construction Contract with Nordic, in which Nordic agreed to be the general contractor on the Safeway Project.  UC ¶¶ 11-12.  The Master Construction Contract allowed Nordic to "retain professional subcontractors and vendors as may be necessary to fully implement the services it was rendering."  *Id.* ¶ 14.   It also required Nordic to "be responsible for the timely and proper performance of services by its subcontractors, their respective subcontractors and vendors of any tier to the same extent as if all such services were performed by Nordic."  *Id.*

Nordic therefore allegedly entered into a contract with HNB, in which "HNB agreed to supply certain products manufactured by VersaFlex and/or others to be used in the construction of the Roof Deck, and specifically the preparation of the Wearing Slab for the application of the VersaFlex Coating System and for the VersaFlex Coating System itself."  UC ¶ 16.  Safeway also alleged that HNB entered into a contract with Cascade, another subcontractor on the Safeway Project, for the same purpose.  *Id.* ¶ 17.

According to Safeway, HNB's contracts with Nordic and Cascade

"incorporated by reference the terms and obligations of the Construction Contract [between Nordic and Safeway], and were entered into for the intended benefit of [Safeway] and manifested an intent to benefit [Safeway]." *Id.* ¶ 18.  As a result, HNB allegedly agreed to

> provide quality products and/or services, free from defects and as represented or advertised, and in strict conformance with the Construction Contract, General Conditions, Plans and Specifications, and product directions for the installation, preparation, construction, and repair of the VersaFlex Coating System and related Roof Deck items, in accordance with accepted practices as exercised by reasonable professionals in their respective fields, including adherence to all laws, codes, and regulations applicable to such work.

*Id.* ¶ 19.

In January 2008, shortly after it was opened to the public, the Safeway Kapahulu store experienced water leaks through its roof deck.  *Id.* ¶ 31; SACC ¶ 26.  Safeway alleged this was because the VersaFlex Coating System that HNB supplied began "manifest[ing] cracks and failures in the waterproof membrane throughout the entire field of the Roof Deck."  UC ¶ 33.  Safeway therefore asserted the following claims against HNB based on its alleged failure to fulfill its contractual representations and obligations: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) negligence/gross negligence; (4) breach of express and implied warranties; (5) unjust enrichment; (6) negligent misrepresentation and/or omission; (7) intentional misrepresentation and/or fraudulent concealment; (8) product defects; and (9) negligent design and manufacture ("Underlying Claims").  *Id.* ¶¶ 49-125.

HNB tendered Safeway's Underlying Claims to FFIC shortly thereafter.  SACC ¶ 53.  FFIC had issued three commercial general liability policies and three umbrella/excess policies to HNB, covering successive policy periods from May 1,

2007 to May 1, 2010.[3]  *Id.* ¶¶ 41-42, 44-45.  FFIC agreed to defend HNB under a reservation of rights and retained counsel for HNB.  *Id.* ¶¶ 54, 55, 62.

FFIC continued to defend HNB in the Underlying Action throughout the next six years.  *Id.* ¶ 63.  On June 29, 2015, FFIC filed this declaratory relief action against HNB seeking a declaration of its rights and obligations under the policies.  *Id.* ¶ 64.

On February 12, 2016, HNB and Safeway settled the Underlying Action without FFIC's consent, and HNB entered into a stipulated judgment in which HNB also assigned its rights under the policies to Safeway in exchange for a covenant not to execute.  *Id.* ¶¶ 2, 3.  Safeway was granted leave to join this action, and it and HNB filed a Second Amended Counterclaim alleging four counterclaims against FFIC: (1) breach of contract; (2) bad faith; (3) negligent misrepresentation and omission; and (4) reformation.  *Id.* at ¶¶ 71-142.

### B.   Insurance Policies

FFIC issued three CGL policies and three umbrella and excess policies to HNB during the relevant time period ("Policies").  America Automobile Insurance Company ("AAIC") issued CGL policy nos. A S1 AZC 80667751 and A S1 AZC 80828365 to HNB for the policy periods of May 1, 2007 to May 1, 2008 and May 1, 2008 to May 1, 2009, respectively.  SACC ¶ 41; *see also* Kasbohm Decl. Exs. B & C.  It also issued umbrella and excess insurance policies to HNB under the same policy numbers and for the same policy periods.  SACC ¶ 42.

National Surety Corp. ("NSC") issued CGL policy no. A S1 AZC 80828365 to HNB for the policy period of May 1, 2009 to May 1, 2010.  *Id.* ¶ 44; *see also*

---

[3] FFIC also issued CGL and umbrella/excess policies to HNB for several years leading up to May 1, 2007 and for the policy period of May 1, 2009 to May 1, 2010, but those policies periods are not implicated by the Underlying Action or this action.  Regardless, the relevant language in those policies is identical to the language in the 2007-2010 policies.

Kasbohm  Decl. Ex. C.  It also issued an umbrella and excess insurance policy to HNB under the same policy number and for the same policy period.  SACC ¶ 45.

All three of the CGL policies insure "property damage" only where it is caused by an "occurrence":

> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . **property damage** . . . to which this insurance applies. [4]
>
> . . .
>
> b. This insurance applies:
>
>> (1) To . . . **property damage** only if:
>>
>>> (a) The . . . **property damage** is caused by an **occurrence** that takes place in the **coverage territory**; and
>>>
>>> (b) The . . . **property damage** occurs during the policy period.

§ II.G.1, Kasbohm Decl. Exs. B at 73-74 & C at 411-412.[5]

The term "occurrence" as used in this liability insurance provision is defined by the Policies as "an **accident** including continuous or repeated exposure to substantially the same general harmful conditions." § III.12, *Id.* Exs. B at 87 & C at 425.  An "accident" is further defined as a "fortuitous circumstance, event or happening that takes place and is neither expected nor intended from the standpoint of the insured." § III.1, *Id.* Exs. B at 85 & C at 423.[6]

---

[4] The Policies also provide insuring language for bodily injury, personal injury, or advertising injury as defined by the Policies and subject to any applicable exclusions.  Safeway's claims in the underlying action were not seeking these types of damages, so these provisions are irrelevant to this action.

[5] Citations to page numbers in Exhibits B & C are to the Bates numbered pages of the exhibit.

[6] The Policies also include several applicable exclusions that FFIC is not raising on this motion to dismiss but that provide additional defenses to coverage.

Similarly, the umbrella insurance provisions in all three of the umbrella/excess insurance policies also insure "property damage" only where it is caused by an "occurrence":

> 1. We will pay on behalf of any **Insured** those sums that any **Insured:**
>
>> a. Becomes legally obligated to pay as damages because of:
>>
>>> (1) . . . **Property Damage** that takes place during our Policy Period and is caused by an **Occurrence** . . .

§ II.A.1.a.(1), *Id.* Again, "occurrence" as used above is defined by all three policies as "an *accident*, including continuous or repeated exposure to substantially the same general harmful conditions. . . ." § VI.L.1, *Id.* Exs. B at 112 & C at 453 (emphasis added).

Finally, the excess insurance provisions in all three of the umbrella/excess insurance policies only insure damages that are "covered by the **Primary Insurance**." § I.A.1., Exs. B at 94 & C at 435. In other words, if the damages at issue are not covered by the CGL policy provisions discussed above, then there is no excess coverage.

## III.   LEGAL STANDARD

### A.   Motion to Dismiss

A court must dismiss claims that fail to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); Fed. R. Civ. P. 12(b)(6). To establish a plausible claim for relief, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Iqbal*, 556 U.S. at 678. When ruling on a Rule 12(b)(6) motion, a Court must accept all factual allegations as true, but need not accept unreasonable inferences

or legal conclusions cast in the form of factual allegations. *Id.* at 681 (formulaic recitation of elements of claim are not entitled to assumption of truth). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*at 678.

Moreover, the court may also "'consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment.'" *Illinois Nat'l Ins. Co. v. Nordic PCL Const., Inc.*, 870 F. Supp. 2d 1015, 1026 (D. Haw. 2012) (quoting *United States v. Ritchie*, 342 F. 3d 903, 908 (9th Cir. 2003)) (taking judicial notice of CGL insurance policies and considering relevant terms on a motion to dismiss); *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) (considering billing agreement on motion to dismiss under doctrine of incorporation by reference).

## B.   Insurance Contract Interpretation

Under Hawaii law, "[i]nsurance policies are subject to the general rules of contract construction." *First Ins. Co. of Hawaii, Inc. v. State, by Minami*, 66 Haw. 413, 423-24 (1987).   The "terms of the policy should be interpreted according to their plain, ordinary, and accepted sense in common speech unless it appears from the policy that a different meaning is intended." *Id.* at 424; *see also Burlington Ins. Co. v. Oceanic Design & Constr.*, 383 F.3d 940, 945 (9th Cir. 2004).   "[A ] court cannot rewrite the parties' insurance contracts." *Fortune v. Wong*, 68 Haw. 1, 11 (1985) (internal citation and quotation marks omitted).

Further, "[it] is well settled that courts should not draw inferences from a contract regarding the parties' intent when the contract is definite and unambiguous." *State Farm Fire and Cas. Co. v. Pac. Rent-All, Inc.*, 90 Haw. 315, 324 (1999).   An insurance contract is not ambiguous simply because the insured disagrees with its terms or asserts that it is ambiguous. *Oahu Transit Servs., Inc. v.*

*Northfield Ins. Co.*, 107 Haw. 231, 235 n.7 (2005); *see also Fortune*, 68 Haw. at 10.  Rather, as the Hawaii Supreme Court has instructed, courts "should look no further than the four corners of the document to determine whether an ambiguity exists" (*Pac. Rent-All, Inc.*, 90 Haw. at 324); a contract is ambiguous "only when the contract taken as a whole is reasonably subject to differing interpretations." *Oahu Transit,* 107 Haw. at 235 n.7 .

The insured bears the burden of establishing coverage under an insurance policy, and a court may dismiss an insured's breach of contract claim where the insured fails to allege facts sufficient to meet this burden.[7]  *See Nordic PCL*, 870 F. Supp. 2d at 1028-36 (dismissing Nordic's breach of contract counterclaim seeking coverage for this same underlying action because complaint failed to allege damage caused by an "occurrence" as required by the plain language of CGL policies); *see also State Farm Fire & Cas. Co. v. Vogelgesang*, 834 F. Supp. 2d 1026, 1033 (D. Haw. 2011) ("[t]he burden is on the insured to establish coverage under an insurance policy" (citing *Sentinel Ins. Co. v. First Ins. Co. of Haw.*, 76 Haw. 277, 291 n. 13 (1994)).

## IV.   ARGUMENT

### A.   Counterclaim Plaintiffs' Breach of Contract Counterclaim Fails Because Safeway's Underlying Claims Were Not for "Property Damage" Caused by an "Occurrence" as the Plain Language of the Policies Require.

Counterclaim Plaintiffs' breach of contract counterclaim should be dismissed because none of Safeway's Underlying Claims against HNB were for

---

[7] On this motion to dismiss, FFIC is only contesting its duty to indemnify HNB for the claims in the Underlying Action.  FFIC has already paid HNB's defense costs and is not seeking to litigate its duty to defend or to recover these expenses at this time, though FFIC reserves its right to do so at a later date.

"property damage" caused by an "occurrence."  Indeed, this Court has already decided strikingly similar issues in its *GP West* decision.  *See State Farm Fire and Cas. Co. v. GP West, Inc.*, 2016 WL 3189187 (D. Haw. June 7, 2016).  There, the court granted summary judgment for an insurer on its duties to defend and indemnify its insureds for breach of contract, breach of warranties, negligence, and intentional/negligent misrepresentation claims in an underlying action.  The court found these claims were not "occurrences" under the insureds' CGL policy because the claims arose from the insureds' contractual relationships and obligations.  Nothing in this case justifies a different result.

*GP West* is well supported by Hawaii and Ninth Circuit law; courts have consistently held that claims arising out of contractual relationships—like Safeway's Underlying Claims— are not "occurrences" under CGL policies because they are not for "accidental" conduct.

The Hawaii Supreme Court first applied this rule in 1994 when it reversed summary judgment for an insured after concluding an insurer had no duty to defend breach of contract and fraud claims under a CGL policy.  *Hawaiian Holiday Macadamia Nut Co., Inc. v. Indus. Indem. Co.*, 76 Haw. 166, 170-71 (1994).  Like HNB here, Hawaiian Holiday was insured by a CGL policy that covered "property damage" caused by an "occurrence," which was defined as an "accident."  *Id.* at 168.  There, the Hawaii Supreme Court found that the alleged "property damage" – the killing of the seedlings under a contract to farm macadamia nuts – "was part and parcel of the alleged acts committed by Hawaiian Holiday that resulted in the claims for breach of contract and fraud."  *Id.* at 171.  Thus, because the conduct was not "accidental," it did not constitute an "occurrence" under the CGL policy.  *Id.*

Relying on *Hawaiian Holiday*, the Ninth Circuit held that breach of contract and tort claims arising from construction defects actions—like the claims at issue here—are not covered by CGL policies under Hawaii law.  *See Burlington Ins.*

*Co.*, 383 F. 3d at 948.  In *Burlington*, the insured, Oceanic, was sued for breach of contract, breach of express and implied warranties, and negligent and/or intentional infliction of emotional distress arising from its alleged faulty construction of a house.  *Id.* at 943.  The Court affirmed summary judgment for the insurer, finding the claims were not "occurrences" because the alleged suit was a foreseeable result of the defendant's breach of its contractual obligations.  *Id.* at 948.  To hold otherwise, the court noted, "would covert [] CGL polic[ies] into a professional liability policy or a performance bond."  *Id.* at 949.  The Court also noted its holding was "consistent with the line of cases from the District of Hawaii that hold that contract and contract-based tort claims are not within the scope of CGL policies under Hawaii law."  *Id.* (collecting district court opinions dating back to 1996).

The *Burlington* Court's holding was later adopted by the Hawaii Intermediate Court of Appeals when it similarly held that construction defect claims "do not constitute an 'occurrence' under a CGL policy."  *Group Builders, Inc. v. Admiral Ins. Co.*, 123 Haw. 142, 148 (Ct. App. 2010).  In *Group Builders*, the insured subcontractor was sued for alleged defects in the design and construction of a hotel that led to extensive mold growth.  *Id.* at 144.   In the insured's coverage action against its CGL insurer, the Hawaii Intermediate Court of Appeals affirmed summary judgment for the insurer, holding that "breach of contract claims based on allegations of shoddy performance are not covered under CGL policies.  Additionally, tort-based claims, derivative of these breaches of contract claims, are also not covered under CGL policies."  *Id.* at 148-49.

Moreover, since *Burlington*, Hawaii district courts have unerringly found that construction defect claims like those at issue here are not "occurrences." Indeed, courts have found that *any* "[c]ontract-based claims—including claims sounding in *tort* which are predicated upon, stemming directly from, or derivative of, [] contracts, contracts of sales, and warranties—are not covered under [] CGL

polic[ies]." *See Burlington Ins. Co. v. United Coatings Mfg. Co., Inc.*, 518 F. Supp. 2d 1241, 1250 (2007)(collecting cases); *see also GP West*, 2016 WL 3189187, at *16 (finding no duty to defend and indemnify breach of contract, breach of warranties, and contract-based tort claims under CGL policy); *Vogelgesang*, 834 F. Supp. 2d at 1038-39 (same as to breach of contract and contract-based tort claims).

In fact, in the action between Nordic and its CGL insurer for coverage of the same Underlying Action, Judge Mollway dismissed Nordic's breach of contract counterclaim, concluding that Safeway's underlying claims were not for "occurrences." *Nordic PCL*, 870 F. Supp. 2d at 1027-32. The relevant provisions of Nordic's CGL policy were nearly identical to those at issue here. *Id*. at 1030. In dismissing Nordic's breach of contract counterclaim, Judge Mollway noted that "this court is clearly bound by *Burlington* in which the Ninth Circuit construed Hawaii law as not providing for insurance coverage for contract-related claims." *Id.* Applying *Burlington*, the court found that Safeway's underlying breach of contract, breach of the implied covenant, negligence, gross negligence, breach of warranties, and negligent and intentional misrepresentation claims were not "occurrences" under the plain language of the policies. *Id.* at 1032-33.

This outcome is the same where underlying construction defects claims arise out of a subcontractor's contractual relationships, like the claims at issue here. *See* UC ¶¶16-19. *See United Coatings*, 518 F. Supp. 2d at 1249; *GP West*, 2016 WL 3189187, at *2 (insured was subcontractor on the construction project at issue); *see also Group Builders*, 123 Haw. at 143 (insured was subcontractor hired by general contractor on hotel construction project).

Thus, for the reasons discussed below, each of Safeway's Underlying

Claims were not for "occurrences" under the Policies.[8]

### 1.       Safeway's underlying "contract" claims

Safeway's underlying contract claims—breach of contract, breach of the covenant of good faith and fair dealing, and breach of express and implied warranties[9]—arose directly out of HNB's alleged contractual relationships and were not for "occurrences" under the plain language of the Policies.

These claims were based on Safeway's allegations that HNB entered into Subcontractor/Vendor Agreements, which imposed upon HNB terms and obligations "for the benefit of Plaintiff [Safeway]." UC ¶ 52.  Plaintiff alleges that these Subcontractor/Vendor Agreements "incorporated by reference the terms and obligations of [its] Construction Contract [with Nordic], and were entered into for the intended benefit of Plaintiff [Safeway] and manifested an intent to benefit Plaintiff [Safeway]." *Id.* ¶ 18.  Plaintiff further alleged that HNB "materially breached the contractual obligations [it] owed to Plaintiff either directly or as an intended third-party beneficiary by, among other things, performing services and/or providing products that were not in accordance with their respective agreements or as represented to Safeway . . . ." *Id.* ¶ 53; *see also United Coatings*, 518 F. Supp. 2d at 1249 & n. 3 (finding underlying claims against subcontractor arose from subcontractor's contractual relationship because plaintiff had sued as

---

[8] Safeway's underlying claims will be discussed in three groupings: (1) the contract claims, which include Safeway's underlying breach of contract, breach of the covenant of good faith and fair dealing, and breach of express and implied warranties claims; (2) the intentional misrepresentation claim and the "negligence" claims, which include negligence/gross negligence, negligent misrepresentation and/or omission, and negligent design and manufacture claims; and (3) the unjust enrichment and product defects claims.

[9] As noted in *United Coatings*, "[w]arranties, whether express or implied, are contract claims." 518 F. Supp. 2d at 1250 n. 4 (citing to HRS §§ 490:2-313, 490:2-315); *see also GP West*, 2016 WL 3189187, at *11 (ruling as a matter of law that underlying plaintiffs' "claims for breach of contract, breach of express warranty, and breach of implied warranties are all contract-based claims and are therefore not covered by State Farm's CGL policies").

"the intended and known third-party beneficiary to the contract and warranties between [the insured] and [the general contractor]").[10]

Thus, under *Burlington* and the case law cited above, Safeway's underlying contract claims are not for "occurrences" and Counterclaim Plaintiffs' breach of contract claim in this action cannot be based on these claims.

### 2.       Safeway's intentional misrepresentation and "negligence" claims

Similarly, Safeway's underlying intentional misrepresentation and "negligence" claims were not for "property damage" caused by an "occurrence." *See GP West*, 2016 WL 3189187, at *11; *Nordic*, 870 F. Supp. 2d at 1036 (dismissing insured's breach of contract counterclaim seeking coverage for same underlying claims as here because they were not occurrences under CGL policies); *United Coatings*, 518 F. Supp. 2d at 1250-51.  In *United Coatings*, the court noted that the "relevant query is whether the *genesis* or *origin* of the underlying claims, including those sounding in tort, is premised on a contractual relationship or is based on an independent tort claim under state law."  518 F. Supp. 2d at 1250-51; *see also GP West*, 2016 WL 3189187, at *11(quoting *United Coatings*).  The court therefore ruled that an insurer had no duty to defend or indemnify negligent misrepresentation and negligence claims asserted in a construction defects action because those claims "depend[ed] upon the existence of [the insured's] underlying contract, contract of sale, or warranties".  *United Coatings*, 518 F. Supp. 2d at 1250-51.

Likewise, in *GP West*, this Court found no coverage for negligence and intentional or negligent misrepresentation claims like those at issue here because

---

[10] The sale of goods may constitute an enforceable contract when payment has been made and accepted.  *See* Haw. Rev. Stat. Ann. §§ 490:2-106(1), 490:2-201(3)(c), 490:2-207(3).

the claims arose from the insured's subcontracts to install an HVAC system.  2016 WL 3189187, at *11.  The underlying plaintiffs' intentional or negligent misrepresentation claim was based on allegations that they "relied to their detriment on Defendants' representations regarding the HVAC system"; the Court found that these claims "clearly relie[d] upon the existence of the underlying contract or warranties, and [were] therefore not covered by the CGL policy."  *Id.*; *cf. Vogelgesang*, 834 F. Supp. 2d at 1036 (finding negligent misrepresentation claim arose from contractual relationship and noting negligent misrepresentation claims are viable under Hawaii law only in a business relationship context).  Similarly, as to the negligence claim, the Court found that any duties defendants owed to plaintiff arose from the parties' "contract and subcontract to construct the MVC Building and install the HVAC system"; thus, these claims were not for "occurrences."  *GP West*, 2016 WL 3189187, at *12.

Here, Safeway's negligence/gross negligence claim explicitly relied on HNB's contractual relationships: "Defendants, and each of them, breached their duty of care to Plaintiff . . . by not performing their services and work in accordance with the Construction Contract, the *Subcontractor/Vendor Agreements*, the Plans and Specifications, and/or accepted practices and applicable industry standards . . . ."  *See* UC ¶ 65 (emphasis added).  Thus, as in *GP West*, *Nordic*, and *United Coatings*, Safeway's claim directly arose from HNB's contractual relationships and is not for "property damage" caused by an "occurrence."  *See id.* ¶¶ 16-19, 65.

Similarly, Safeway's intentional misrepresentation/fraudulent concealment, negligent misrepresentation and/or omission, and negligent design and manufacture claims are based on HNB's or the VersaFlex product's alleged failure to perform according to HNB's contractual representations and warranties.  *See id.* ¶¶ 78-81, 84-88, 120-123.  Indeed, Safeway alleged that "in the Subcontract/Vendor Agreements,  . . . HNB . . . among other things, agreed to

FFIC'S MTN. TO DISMISS SACC
CASE NO.: CV 15-00245-ACK-KSC

provide quality products and/or services, free from defects and as represented or advertised, and in strict conformance with the Construction Contract, General Conditions, [and] Plans and Specifications . . ." *Id.* ¶ 19.  Thus, Safeway based these claims on HNB's contractual representations and obligations and they are therefore also not for "property damage" caused by an "occurrence" under the case law cited above.

Safeway's intentional misrepresentation claim is also not an "occurrence" under the Policies because it is expressly based on *intentional* conduct and not an "accident" as required by the Policies.  *See United Coatings*, 518 F. Supp. 2d at 1251 n.6 (finding injuries resulting from "intentional conduct" were not caused by an "accident" and were "therefore outside the coverage of the CGL Policy."); *see also Hawaiian Holiday*, 76 Haw. at 170 (finding claim for fraud based on "intentional acts performed by Hawaiian Holiday to defraud [] plaintiffs" was not "accidental" and therefore did not constitute an "occurrence" under CGL policy).

Thus, like the claims at issue in *GP West*, *United Coatings*, and *Nordic*, Safeway's underlying intentional misrepresentation/fraudulent concealment and "negligence" claims are not "occurrences" under the plain language of the Policies. These claims therefore cannot support Plaintiffs' breach of contract claim in this action.

### 3. Safeway's remaining underlying claims for unjust enrichment and product defects

Lastly, the Policies do not cover Safeway's remaining underlying claims for unjust enrichment and products defects because these claims also fail to state an "occurrence" under the plain language of the Policies.

Safeway's underlying unjust enrichment claim stemmed directly from, and depended on the existence of, HNB's alleged contractual relationships.  The unjust enrichment claim was based on HNB's alleged failure to "perform [its] work and

supply [its] products free of material defects" in return for "money paid by [Safeway] under the Construction Contract to Nordic [which] inured to the benefit of all Defendants." UC ¶ 74; *see also id.* ¶ 73.  Courts have likewise held that these types of claims are not "occurrences" under CGL policies.  *See, e.g.*, *Nautilus Ins. Co. v. 3 Builders, Inc.*, 955 F. Supp. 2d 1121, 1124, 1134-37 (D. Haw. 2013) (finding unjust enrichment claim, among others, was not for an  "occurrence" under CGL policy); *Evanston Ins. Co. v. Nagano*, 891 F. Supp. 2d 1179, 1182, 1194 (D. Haw. 2012) (same).

Similarly, Safeway's underlying product defects claim arose from its contractual representations and obligations.  This claim is nearly identical to the strict products liability claim in *United Coatings*, which the court concluded was contract or warranty-based and not for an "occurrence" under a CGL policy.  518 F. Supp. 2d at 1252.  In *United Coatings*, the insured subcontractor sold "Acrylad" paint to the general contractor on a project to repair and repaint several residential buildings.  *Id.* at 1244.  The Acrylad paint did not perform as the insured represented it would, and after the Acrylad was applied, the paint began to chalk, streak, and chip off the buildings' walls.  *Id.* at 1245.  The insured subcontractor was then sued by the buildings' owners association for among other things, strict products liability.  *Id.*

In the insured's coverage action against its insurer, the court found that the strict products liability claim was not an "occurrence" under the CGL policy.  In reaching its ruling, the court rejected a formulaic approach to determining whether a claim sounded in contract or an independent tort and instead looked to the claim's underlying allegations.  *Id.* at 1252. The court determined the underlying claim "allege[d] that [the product] was unsuited for the purpose for which it was purchased and that the composition of the paint was not as represented or warranted" and that the strict products liability claim was "dependent upon the existence of United Coatings' contracts, contracts of sale, warranties, or

representations." *Id*. The court therefore found the strict products liability claim failed to "allege[] an independent duty which transcends the underlying contracts or warranties and that "artful pleading [would] not trigger coverage." *Id*.

As in *United Coatings*, Safeway's underlying products defect claim was based on allegations that VersaFlex was unsuited for the Safeway Project and "Hawaii's UV exposure". UC ¶¶ 23-24, 112 ("The products used in the VersaFlex Coating System were not sufficient, adequate, or fit for their intended use . . . which caused the products to malfunction, fail, and not perform to the standards indicated by VersaFlex and HNB."). As a result, this claim depends on HNB's alleged contracts, and contract of sale and warranties. Under *United Coatings*, this claim does not state an "occurrence."

Thus, Safeway's remaining underlying claims for unjust enrichment and product defects arose from HNB's contracts and are not "occurrences" under the Policies and Counterclaim Plaintiffs cannot establish that any of Safeway's Underling Claims were covered by the Policies.

### 4.      Act 83 does not change the result here

Further, as in *Nordic* and *GP West*, Act 83 (codified as Haw. Rev. Stat. § 431:1-217(a)) does not change the outcome in this case. *See GP West*, 2016 WL 3189187, at *10. Act 83 was passed in 2011 by the Hawaii legislature, and it provides that courts must construe the term "occurrence" in liability insurance policies "in accordance with the law as it existed at the time that the insurance policy was issued." Haw. Rev. Stat. § 431:1-217(a).

Here, the Policies under which Plaintiffs seek coverage were issued beginning in 2007, and it was well-settled law by then that construction defects claims arising out of contractual relationships were not "occurrences" under CGL policies. Indeed, *Burlington* was decided several years before the Policies were issued. *Burlington* in turn relied on *Hawaiian Holidays* and a line of Hawaii

district court cases dating back to 1996.  383 F.3d at 948-49.  Further, federal courts have recognized that the Intermediate Court of Appeals' decision in *Group Builders* was consistent with existing Hawaii law at the time it was decided.  *See GP West*, 2016 WL 3189187, at *10 (noting that *Group Builders* serves as "helpful insight into how Hawaii courts will construe and apply the multiple cases, including *Burlington* . . . ."); *Vogelgesang*, 834 F. Supp. 2d at 1037 ("[A]lthough the *Group Builders* case was issued by the ICA in 2010, it relied heavily on previously decided state and federal cases.").  Thus, Counterclaim Plaintiffs' breach of contract counterclaim in this action is not saved by Act 83 and must be dismissed.[11]

### B.   Counterclaim Plaintiffs' Reformation Counterclaim Should Be Dismissed For Failure to Plead Mutual Mistake with Particularity Under Rule 9(b).

Counterclaim Plaintiffs' reformation counterclaim also fails because Counterclaim Plaintiffs did not plead with particularly that FFIC and HNB were mutually mistaken about the Policies' terms.  Under Hawaii law "reformation may be had when the written instrument does not, through a *mutual mistake of fact*, conform to the intention of the parties to the instrument."  *State v. Kahua Ranch, Ltd.*, 47 Haw. 28, 33 (1963) (emphasis added), *aff'd on rehearing*, 47 Haw. 466 (1964); *Watson v. U.S. Fidelity & Guar. Co.*, 427 F.2d 1355, 1357 (9th Cir. 1970)

---

[11] To the extent Counterclaim Plaintiffs may argue the underlying claims are covered by the Policies' products-completed operations hazard ("PCOH") provisions, Counterclaim Plaintiffs' argument is unavailing.  Courts, including this Court and the *Nordic* Court, have already rejected this argument after finding that the underlying claims must still allege "property damage" caused by an "occurrence."  *GP West*, 2016 WL 3189187, at *14 ("The Court finds that even if the policies include coverage for products-completed operations, this does not obviate the requirement that coverage for such claims arise from an 'occurrence.'"); *Illinois Nat'l Ins. Co. v. Nordic PCL Constr. Inc.*, 2012 WL 5386609, at *12-13 (D. Haw. Oct. 31, 2012) (dismissing breach of contract claims based on PCOH provisions because those provisions still required "property damage" caused by an "occurrence" under insuring clause).

(internal citation and quotation omitted) (noting that reformation is "a remedy the purpose of which is to make a mistaken writing conform to antecedent expressions on which the parties agreed").   Reformation is not a proper remedy to enforce terms to which an insurer never assented.  *See Watson*, 427 F.2d at 1357.

A plaintiff must plead the circumstances constituting mistake with the same particularity as with fraud by alleging the "who, what, when, where, and how of the misconduct charged."  *See Ebeid v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (internal citation and quotation omitted); *see also* Fed. R. Civ. P. 9(b) (requiring allegations of mistake or fraud to be pled with particularity).  In *Rymal*, the court dismissed the plaintiff's "mistake" claim, in which the plaintiff alleged her loan transaction was entered into based on a mutual mistake, because plaintiff "d[id] not even attempt to describe the circumstances constituting mistake, much less provide such circumstances with particularity as required by Rule 9."  *Rymal v. Bank of Am.*, 2011 WL 6100979, at *6-7 (D. Haw. Dec. 6, 2011).

As in *Rymal*, Counterclaim Plaintiffs fail to plead *any* facts to establish the existence of a mutual mistake, let alone facts sufficient to meet Rule 9(b)'s particularity requirement.  For instance, Counterclaim Plaintiffs do not allege who at FFIC was mistaken about the scope of the Policies' coverage, how they were mistaken, or the details of any expression by FFIC that it believed the Policies would cover the types of claims at issue in the underlying action.

What is more, Counterclaim Plaintiffs allege that FFIC *intended* at the time it issued the policies to "later rely on *Burlington's* 'occurrence' analysis to deny coverage for the sorts of property damage claims that it knew or should have known that HNB expected and understood were covered under the Policies." SACC ¶ 100; *see also* SACC ¶ 109 (incorporating "allegations contained in the foregoing paragraphs as if fully stated or set forth herein").  Thus, Plaintiffs' reformation counterclaim claim should be dismissed.  *See Maloney v. Scottsdale Ins. Co.*, 256 Fed. Appx. 29, 32 (9th Cir. 2007) (affirming dismissal of a claim

where factually inconsistent allegations were not pleaded in the alternative but incorporated into each cause of action).

## V.    CONCLUSION

For the foregoing reasons, FFIC respectfully requests the Court dismiss Counterclaim Plaintiff's counterclaims one and four, for breach of contract and reformation respectively.


Dated:    September 7, 2016                    CROWELL & MORING LLP


_____
                                    /s/ Steven D. Allison
                                    Steven D. Allison
                                    Van-Dzung V. Nguyen
                                    Brendan V. Mullan
                                    Samrah R. Mahmoud
                                    Attorneys for Plaintiffs/Counterclaim
                                    Defendants AMERICAN AUTOMOBILE
                                    INSURANCE COMPANY and NATIONAL
                                    SURETY CORPORATION

21