CROWELL & MORING LLP
Steven D. Allison, *Admitted Pro Hac Vice* (CSB No. 174491, sallison@crowell.com)
Van-Dzung V. Nguyen, *Admitted Pro Hac Vice* (CSB No. 222832, vnguyen@crowell.com)
Samrah R. Mahmoud, *Admitted Pro Hac Vice* (CSB No. 285168, smahmoud@crowell.com)
3 Park Plaza, 20th Floor
Irvine, CA 92614
Telephone: 949-263-8400
Facsimile: 949-263-8414

CROWELL & MORING LLP
Brendan V. Mullan (HSB No. 9479, bmullan@crowell.com)
275 Battery Street, 23rd Floor
San Francisco, CA 94111
Telephone: 415-365-7847
Facsimile: 415-986-2827

STUART N. FUJIOKA (HSB No. 4223, stuart@snfaal.com)
1188 Bishop St. #1006
Honolulu, HI 96813
Telephone: 808-544-0068
Facsimile: 808-544-0078

Attorneys for Plaintiffs/Counterclaim Defendants
AMERICAN AUTOMOBILE INSURANCE COMPANY
and NATIONAL SURETY CORPORATION

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| AMERICAN AUTOMOBILE INSURANCE COMPANY, a Missouri Corporation; NATIONAL SURETY CORPORATION, an Illinois Corporation, <br><br> Plaintiffs, <br><br> v. <br><br> HAWAII NUT & BOLT, INC. and SAFEWAY INC., <br><br> Defendants. <br><br> SAFEWAY INC.; HAWAII NUT & BOLT, INC. <br><br> Counterclaim Plaintiffs | CIVIL NO. CV 15-00245-ACK/KSC (Declaratory Judgment) <br><br> **PLAINTIFFS AMERICAN AUTOMOBILE INSURANCE COMPANY'S AND NATIONAL SURETY CORPORATION'S OPPOSITION TO SAFEWAY, INC.'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS; DECLARATION OF PAM KASBOHM; DECLARATION OF BRENDAN V. MULLAN; EXHIBITS A-W; CERTIFICATE OF SERVICE** |

v.

AMERICAN AUTOMOBILE
INSURANCE COMPANY, a Missouri
Corporation; NATIONAL SURETY
CORPORATION, an Illinois Corporation,

    Counterclaim Defendants.

  and

DOUGLAS MOORE, MONARCH
INSURANCE SERVICES, INC., a
Hawaii Corporation, and INSURANCE
ASSOCIATES, INC., a Hawaii
Corporation,

    Additional Counterclaim
    Defendants.

Hearing Date: January 3, 2017
Time: 9:30 a.m.

Trial Date: Aug. 1, 2017

## TABLE OF CONTENTS

Page(s)

I.     INTRODUCTION ...................................................................1

II.    FACTUAL BACKGROUND.................................................3

III.   THE DISCOVERY AT ISSUE ...........................................4

    A.    Safeway Did Not Engage In A Meaningful Meet And Confer............4

    B.    Fireman's Fund Produced The Entirety Of The Claim And Underwriting Files, Among Other Things ....................7

    C.    Fireman's Fund Has Produced Privileged Communications And Work-Product From The Underlying Case ..........................8

    D.    The Remaining Requests Seek Information And Documents That Are Not Relevant ........................11

IV.    ARGUMENT.........................................................................12

    A.    Many Of The Requested Documents Have Been Produced ...............12

        1.    The Claims And Underwriting Files Have Been Produced......12

        2.    Claims Manuals, Training Materials, And Marketing Materials Have Been Produced.............13

        3.    Privileged Communications And Work-Product Of Underlying Defense Counsel Have Been Produced; Safeway Is Not Entitled To Privileged Communications And Work-Product Of Fireman's Fund's Separate Counsel....................13

    B.    The Other Requests Seek Documents That Are Not Relevant And Would Be Unduly Burdensome And Costly To Produce ..........17

        1.    Documents Regarding Other Policies, Claims Or Lawsuits, Involving Different Insureds, Policies And Facts, Are Not Relevant ........................17

            a.    Other Policies, Claims, And Complaints Are Irrelevant....................17

            b.    The Costs And Burdens To Produce The Other Claims Files Requested By Safeway Would Be Incredible ................19

        2.    Information Regarding The Reserves Are Not Relevant..........21

        3.    Fireman's Fund's Personnel Files Contain Private Third Party Information And Are Not Relevant.................23

        4.    Safeway's Motion Includes Requests That Are Not Addressed In Its Motion And Which Seek Documents And Information That Are Not Relevant ..................25

    C.    Fireman's Fund's Responses And The Format Of Its Production Comply With The Federal Rules Of Civil Procedure .........................26

    D.    There Are No Grounds For Sanctions Against Fireman's Fund.........28

OPPOSITION TO SAFEWAY'S
MOTION TO COMPEL
CASE NO.: CV 15-00245-ACK-KSC

# TABLE OF CONTENTS
(Continued)

Page(s)

V.    CONCLUSION.................................................................................29

TABLE OF AUTHORITIES

Page(s)

**Cases**

*40 Rector Holdings, LLC v. Travelers Indem. Co.*,
40 A.D.3d 482 (N.Y. App. Div. 2007) ........................................................22, 24

*Acoba v. General Tire, Inc.*,
92 Haw. 1 (Haw. 1999).................................................................................20

*Adams v. Allstate Ins. Co.*,
189 F.R.D. 331 (E.D. Pa. 1999)..................................................................24

*Aetna Cas. Sur. Co. v. Super. Ct.*,
153 Cal. App. 3d 467 (1984) ...............................................................14, 15

*All Waste Sys. v. Gulf Ins. Co.*,
295 A.D.2d 379 (N.Y. App. Div. 2002) ................................................15, 17

*Allied World Assur Co. (U.S.) v. Lincoln General Ins. Co.*,
280 F.R.D. 197 (M.D. Pa. 2012) .................................................................24

*Allstate Ins. Cos. v. Herron*
393 F. Supp. 2d 948 (D. Alaska 2005) ........................................................23

*Alpha Life Ins. Co. v. Gayle*,
796 S.W.2d 834 (Tex. App. 1990)...............................................................21

*Amfac, Inc. v. Waikiki Beachcomber Inv. Co.*,
74 Haw. 85 (1992) ......................................................................................23

*Anastasi v. Fid. Nat'l Ins. Co.*,
134 Haw. 400 (Haw. Ct. App. 2014), *aff'd in part, vacated in part
on other grounds*, 137 Haw. 104 (Haw. 2016).......................................14, 15

*Bancinsure, Inc. v. McCaffree*,
No. 12-CV-2110-KHN-GLR, 2013 U.S. Dist. LEXIS 152804 (D.
Kan. Oct. 24, 2013).................................................................................18, 20

*Bishelli v. State Farm Auto Ins. Co.*
No. 07-cv-00385-WYD-MEH, 2008 U.S. Dist. LEXIS 10406 (D.
Colo. Jan. 31, 2008) .....................................................................................23

*Buss v. Super. Ct.*,
    16 Cal. 4th 35 (1997) ........................................................................22

*Costco Wholesale Corp. v. Super. Ct.*,
    47 Cal. 4th 725 (2009) ....................................................................15

*In re Couch*,
    80 B.R. 512 (S.D. Cal. 1987).............................................................22

*Dobro v. Allstate Ins. Co.*,
    2016 U.S. Dist. LEXIS 119198 (S.D. Cal. Sept. 2, 2016).................20

*Dunlea v. Dappen*,
    83 Haw. 28 (1996), *rev'd on other grounds* 102 Haw. 92 (Haw.
    2003) ..................................................................................................25

*First Ins. Co. of Hawaii, Inc. v. State, by Minami*,
    66 Haw. 413 (Haw. 1987)..................................................................22

*Genovese v. Provident Life & Accident Ins. Co.*,
    74 So.3d 1064 (Fla. 2011) .................................................................16

*Grange Mut. Ins. Co. v. Trude*,
    151 S.W.3d 803 (Ky. 2004)...............................................................24

*Harper v. Auto-Owners Ins. Co.*
    138 F.R.D. 655 (S.D. Ind. 1991) ......................................................16

*In re Hawaii Corp.*,
    88 F.R.D. 518 (D. Haw. 1980) .........................................................23

*Hawkins v. Allstate Ins. Co.*,
    733 P.2d 1073 (Ariz. 1987) ...............................................................17

*Holmgren v. State Farm Mut. Auto. Ins. Co.*,
    976 F.2d 573 (9th Cir. 1992) .............................................................16

*Ivy Hotel San Diego, LLC v. Houston Cas. Co.*,
    No. 10cv2183-L(BGS), 2011 U.S. Dist. LEXIS 119746 (S.D. Cal.
    Oct. 17, 2011) ...................................................................................16

*Lyon v. Bankers Life & Case. Co.*,
   No. CIV. 09-5070-JLV, 2011 U.S. Dist. LEXIS 4702 (D.S.D. Jan.
   14, 2011) ..................................................................................................24

*Mead Reinsurance Co. v. Superior Court*,
   188 Cal. App. 3d 313 (1986) ...................................................................19

*Minn. Lawyers Mut. Ins. Co.v. Comm'r of Internal Revenue*,
   285 F.3d 1086 (8th Cir. 2002) .................................................................22

*In re Nat'l Lloyds Ins. Co.*,
   449 S.W.3d 486 (Tex. 2014) ....................................................................19

*National Union Fire Ins. Co. of Pittsburgh, Pa v. Stauffer Chem. Co.*,
   558 A.2d 1091 (Del. Super. Ct. 1989) ....................................................22

*Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*,
   135 F.R.D. 101 (D.N.J. 1990) ..................................................................18

*Palmer v. v. Sentinel Ins. Co. Ltd*,
   No. C12-5444 BHS, 2013 U.S. Dist. LEXIS 95643 (W.D. Wash.
   July 9, 2013) .............................................................................................16

*Phillips v. Clark Cty. Sch. Dist.*,
   No. 2:10-cv-02068, 2012 U.S. Dist. LEXIS 5309 (D. Nev. Jan. 18,
   2012) .........................................................................................................18

*Polygon v. Northwest Co., LLC v. Steadfast Ins. Co.*,
   No. C08-1294 RSL, 2009 WL 1437565 (W.D. Wash. May 22,
   2009), denied ............................................................................................18

*Safeway, Inc. v. Nordic PCL Construction, Inc., et al.*,
   Civil No 09-1-1414-06 ...............................................................................3

*Saldi v. Paul Revere Life Ins.*,
   224 F.R.D. 169 (E.D. Pa. 2004) ..............................................................24

*Silva v. Basin Western Inc.*,
   47 P.3d 1184 (Colo. 2002) .......................................................................22

*Stewart Title Guar. Co. v. Credit Suisse, Cayman Island Branch*,
No. 1:11-cv-227-BLW, 2013 U.S. Dist. LEXIS 49804 (D. Idaho
April 3, 2013) ......................................................................................15, 16

*Stokes v. Life Ins. of N. Am.*,
No. CV 06-411-S-LMB, 2008 U.S. Dist. LEXIS 52280 (D. Idaho
July 3, 2008) ................................................................................................24

*In re Sunrise Secs. Litig.*,
130 F.R.D. 560 (E.D. Pa. 1989) ...................................................................24

*Ten Talents Inv. I LLC v. Ohio Secs., Ins. Co.*,
No. C12-5849 RBL, 2013 U.S. Dist. LEXIS 87697 (W.D. Wash.
June 21, 2013) .............................................................................................16

*Webber v. State Farm Mut. Auto. Ins. Co.*,
873 F. Supp. 209 (S.D. Iowa 1994) ............................................................17

**Other Authorities**

Fed. R. Civ. P. Rule 26(b)(1) ............................................................17, 19

Fed. R. Civ. P. Rule 26(b)(2)(B) ............................................................28

Fed. R. Civ. P. Rule 26(b)(3)(A) ............................................................14

Fed. R. Civ. P. Rule 34 ...........................................................................27

Fed. R. Civ. P. Rule 34(a)(5)(A) ............................................................28

Fed. R. Civ. P. Rule 34(b)(2)(B) ............................................................26

Fed. R. Civ. P. Rule 34(b)(2)(C) ............................................................26

Fed. R. Civ. P. Rule 34(b)(2)(E)(i) and (ii) ...........................................28

Fed. R. Civ. P. Rule 37 ...........................................................................28

Haw. Const. § 6 .......................................................................................21

Haw. R. Evid. 503(d) ..............................................................................15

Haw. R. Evid. 503(b) ..............................................................................14

**PLAINTIFFS AMERICAN AUTOMOBILE INSURANCE COMPANY'S AND NATIONAL SURETY CORPORATION'S OPPOSITION TO SAFEWAY, INC.'S MOTION TO COMPEL**

## I.    INTRODUCTION

American Automobile Insurance Company and National Surety Corporation's (collectively, "Fireman's Fund") responses to Safeway, Inc.'s ("Safeway") 60 document requests comply with the Federal Rules of Civil Procedure ("FRCP") and include all responsive non-privileged documents Fireman's Fund has been able to locate to date after a reasonable and diligent search.  Safeway's Motion to Compel fails to establish that Fireman's Fund's discovery is inadequate or that Safeway is entitled to those categories of documents that Fireman's Fund did not produce.

The majority of the information Safeway seeks has already been produced.  Fireman's Fund has produced all non-privileged documents from its claim file, the claim notes, the underwriting file, training material, marketing material, claims manuals and guidelines, and communications with its insured, Hawaii Nut & Bolt ("HNB").  Fireman's Fund is not aware of additional documents to be produced.

Moreover, Safeway is not entitled to the other documents and information it seeks.  First, Fireman's Fund has produced all privileged communications and documents in its possession from defense counsel in the Underlying Action.  The only communications and documents withheld are attorney-client privileged communications that Fireman's Fund had with its in-house counsel who provided legal advice on coverage issues and litigation counsel retained to represent it in this case.  The attorney work-product of coverage and litigation counsel have also been withheld.  Hawaii law is clear that those communications are privileged attorney-client communications and any attorney work-product by Fireman's Fund's attorneys are similarly protected from discovery.

Second, Safeway's requests for all other policies, claim files, and complaints against Fireman's Fund dating back 10-15 years seek information not relevant to this case, which includes private information of other insureds. Moreover, Safeway's requests would require Fireman's Fund to spend an incredible amount of time, resources and money to manually review over hundreds of thousands of claim files. Any marginal theoretical benefit from this discovery is outweighed by the tremendous costs and burdens to produce the requested documents.

Third, information regarding Fireman's Fund's reserves is irrelevant. Safeway contends that Fireman's Fund's reserve information from the Underlying Action may be relevant to determine how Fireman's Fund interpreted the policies at issue and whether Fireman's Fund acted in bad faith. But Safeway does not show how reserves are relevant to these issues, especially when courts have found that reserves are not an accurate estimate of potential liability.

Fourth, Safeway has not overcome the "heightened" standard of relevance to discover personnel files or the strong public policy against disclosure.

Fifth, Fireman's Fund has complied with the Federal Rules of Civil Procedure (the "FRCP") in its responses to the requests, objecting specifically to each request and stating whether documents would or would not be produced. In addition, Fireman's Fund has produced privilege and redaction logs. Fireman's Fund has also complied with the FRCP in producing documents as they are kept in the ordinary course of business, which includes some documents in PDF format as well as over 20,000 pages of electronically stored information ("ESI").

Last, based on all of the above, Safeway is not entitled to sanctions as Fireman's Fund's positions are justified and there is a genuine dispute between the parties. Moreover, Safeway did not meet and confer in good faith. Safeway's truncated meet and confer consisted of it repeating demands without a meaningful effort to engage in a substantive discussions. It was apparent on the one telephonic

meet and confer Safeway agreed to hold that it was more interested in creating a record for this Motion than resolving the issues.

Safeway's Motion and request for sanctions should therefore be denied.

## II.     FACTUAL BACKGROUND

This is an insurance coverage dispute between Fireman's Fund and its insured, HNB, arising out of an underlying construction defect dispute.  In the Underlying Action, Safeway sued the general contractor, and various subcontractors, and suppliers, including HNB, for alleged defects in the design and construction of a roof deck at a new Safeway store in Kapahulu (the "Project"), in *Safeway, Inc. v. Nordic PCL Construction, Inc., et al.* Civil No 09-1-1414-06, First Circuit (the "Underlying Action").  (Dkt. No. 64, Safeway's Second Amended Counterclaim ("SACC") ¶¶ 14, 26).  Safeway alleged that a waterproofing system manufactured by VersaFlex and purchased through HNB was unsuitable for the Project and to blame for the leaks.  (SACC, ¶¶ 17-27).  Safeway asserted contract and contract-based tort claims against HNB.  (SACC, ¶ 29).

Fireman's Fund defended HNB in the Underlying Action, subject to reservation of rights.  (SACC, ¶ 41, Safeway's Motion to Compel ("Mot.") at p.4).  Fireman's Fund issued three primary general liability policies and three excess policies to HNB through America Automobile Insurance Company and National Surety Corporation (collectively, "the Policies").  (*Id.*).

Safeway eventually settled with all of the other defendants.  And, on February 12, 2016, Safeway settled the Underlying Action with HNB without Fireman's Fund's consent, and entered into a stipulated judgment against HNB for $8 million (out of total claimed damages of over $11 million).  (SACC, ¶¶ 2, 3 ).  In addition, HNB assigned its rights under the policies to Safeway in exchange for a covenant not to execute.  (*Id.*).

On June 29, 2015, Fireman's Fund filed this action seeking a declaration regarding its coverage obligations to its insured HNB for the claims asserted in the Underlying Action. (Dkt. No. 1). Safeway (as an assignee of HNB's claim) and HNB filed counterclaims against Fireman's Fund. The SACC generally alleges that, although Fireman's Fund defended HNB throughout the Underlying Action, Fireman's Fund breached its insurance contracts and other duties by filing this action and failing to settle the Underlying Action. (SACC, ¶¶ 64-68).

## III.    THE DISCOVERY AT ISSUE

### A.    Safeway Did Not Engage In A Meaningful Meet And Confer

Many of the issues raised by Safeway's Motion might have been resolved through the meet and confer process. Safeway, however, refused to engage in any substantive meet and confer. Instead, Safeway rushed through the meet and confer process to create the record it thought it needed to file this motion to compel.[1] This is evident from Safeway's meet and confer communications, discussed below, which consisted mostly of unsubstantiated accusations of misconduct by Fireman's Fund and false statements about the productions.

On May 27, 2016, Safeway served 60 overboard (and often vague and ambiguous) document requests on Tom Petrus & Miller LLLC, Fireman's Fund's prior counsel in this case. (Dkt. Nos. 50, 51). Safeway extended a professional courtesy, granting an open ended extension on responses, in part, because of a needed substitution of counsel for Fireman's Fund.[2] (Mot. at p. 6; Declaration of

---

[1] Safeway claimed it needed to file its motion to compel on an ex parte basis because it needed discovery to respond to Fireman's Fund's motion to dismiss which was scheduled to be heard on December 12, 2016. The Court denied the ex parte application, finding "[d]iscovery is not required to defend against a motion to dismiss," and setting the hearing on this Motion for January 3, 2017. (Dkt. No. 148).

[2] Safeway had also requested a continuance on a motion for summary judgment filed by Fireman's Fund, which Fireman's Fund also granted in exchange.

Judith Pavey in support of Safeway's Motion to Compel ("Pavey Decl."), ¶ 7).  On July 14, 2016, Crowell & Moring LLP substituted in as counsel for Fireman's Fund.  (Declaration of Brendan Mullan in support of Opposition to Motion to Compel ("Mullan Decl."), ¶ 2).  On August 31, 2016, the parties mutually agreed that Fireman's Fund would serve its responses and begin producing documents on a rolling basis on September 15, 2016, which Fireman's Fund did.  (Mullan Decl., Exh. D).

On September 19, Safeway wrote to Fireman's Fund asserting that Fireman's Fund had failed to produce all responsive documents.  (Mullan Decl., Exh. E).  But, as Fireman's Fund made clear, discovery was ongoing (with a discovery deadline in June 2017) and Fireman's Fund production was on a rolling basis.  (Mullan Decl., Ex. D).  Further, as Fireman's Fund stated in its responses, Fireman's Fund would use its best efforts to locate and produce all documents located by October 28, 2016.  (Mullan Decl., Exh. A).

On September 21, Fireman's Fund further confirmed the parties' prior agreement to produce documents on a rolling basis.  (Mullan Decl., Exh. F).

On September 26, 2016, Fireman's Fund sent a meet and confer letter to Safeway and the other parties in connection with privilege issues raised by Safeway's document requests.  (Mullan Decl., Exh. H).  Fireman's Fund did not receive a response to that letter.

On September 27, Safeway asked for an unredacted version of the claim notes from the Underlying Action (the Claims History Caption Report).  (Mullan Decl., Exh. I).  In the same letter, it accused Fireman's Fund of attempting to "force a hearing on your Motion to Dismiss prior to producing documents relevant to [Fireman's Fund's] Motion . . . ." (*Id.*).  Fireman's Fund responded the next day.  (Mullan Decl., Exh. J).  Fireman's Fund's response indicated that it had produced all non-privileged documents that it had located to date, withheld

confidential mediation/settlement communications that Safeway had objected to producing, but was willing to meet and confer. (*Id.*). Shortly thereafter, Fireman's Fund produced to counsel for Safeway and HNB the mediation/settlement communications, as well as all communications with and work-product of HNB's defense counsel in the Underlying Action. (Mullan Decl., ¶ 8, Exh. M).

On September 30, Safeway sent two e-mails about the format of Fireman's Fund's production and stated that it was "working on an item by item communication." (Mullan Decl., Exh. K). Fireman's Fund waited for the "item by item communication" to substantively respond.

On October 3, 2016, Safeway sent a generalized bullet point list – without reference to any specific requests – of purported issues that it had with Fireman's Fund's productions. (Mullan Decl., Exh. L). On October 10, 2016, Fireman's Fund responded in detail in a seven page letter addressing its position with respect to each issue listed by Safeway and invited a further meet and confer. (Mullan Decl., Exh. N). Later that morning, the parties participated in a telephonic meet and confer, which was terminated after only fifteen minutes by Safeway's counsel. (Mullan Decl., ¶ 23). Rather than engage in a meaningful discussion of the issues, Safeway's counsel's stated, "I've got what I need for my motion." (*Id.*). Safeway refused to respond to the specific points raised by Fireman's Fund with respect to the disputed issues. (*Id.*)

Fireman's Fund sent a follow-up letter the next day. The letter confirmed the telephonic discussion and reiterated that Fireman's Fund "was prepared to meet and confer in good faith and work collaboratively through the issues." (Mullan Decl., Exh. O). Safeway responded with an e-mail re "***Your ridiculous letter***" and, without responding to the substance of Fireman's Fund's letter, accused Fireman's Fund of making one-sided, false, incomplete statements. (Mullan Decl., Exh. P). Fireman's Fund responded by stating that it had no intention to misstate the record

and invited another meet and confer. (*Id.*). Safeway again did not substantively respond. (*Id.*).

On October 19, Safeway once again baldly requested production of irrelevant, burdensome and privileged categories of documents and threatened to file a motion, but did not actually address any points made by Fireman's Fund. (Mullan Decl., Exh. Q). Fireman's Fund responded the next day again setting forth its positions, invited Safeway to actually meet and confer, and corrected Safeway's assertion that certain documents were missing from the production. (Mullan Decl., Exh. R).

Without responding to Fireman's Fund's repeated offers to further meet and confer and address the substantive issues, Safeway filed this Motion (as well as its ill-fated ex parte application).

## B. Fireman's Fund Produced The Entirety Of The Claim And Underwriting Files, Among Other Things

To date, Fireman's Fund has produced all non-privileged documents that it has been able to locate after a reasonable and diligent search. Fireman's Fund searched its electronic databases – known as FileNet, Atlas, and Chief – and its email system for documents. (Declaration of Pam Kasbohm in support of Opposition to Motion to Compel ("Kasbohm Decl."), ¶¶ 2-7; Mullan Decl., Exh., B). Fireman's Fund also searched for archived historical documents. (Kasbohm Decl., ¶ 2.) As Fireman's Fund repeatedly advised, Fireman's Fund has produced what it has in its possession that it has been able to locate to date, including:

- all claim files for the Underlying Action, including internal claim notes by the adjusters;

- all underwriting files for policies issued to HNB, including available marketing materials;

- all responsive claims manuals, training materials and information on other

resources available to adjusters;

- all communications with and documents received from defense counsel in the Underlying Action, including but not limited to:
  - o communications with defense counsel regarding case strategy and defenses;
  - o internal and external mediation/settlement documents and communications;
  - o expert reports and any other expert information and documents;
  - o analyses and evaluations – including legal analyses of HNB's exposure – of the Underlying Action and settlement value; and
  - o all responsive claims and underwriting manuals, training materials, and information on other resources available to adjusters. (Mullan Decl., ¶ 8).

The production of these documents has been substantial. Specifically, in six productions between September 15, 2016 to October 31, 2016, Fireman's Fund has produced over 30,000 pages. (Mullan Decl., ¶ 6).

## C. Fireman's Fund Has Produced Privileged Communications And Work-Product From The Underlying Case

Significantly, as noted above, Fireman's Fund produced all communications with and work-product of HNB's defense counsel in the Underlying Action, Greg Takase and Cary Tanaka, that it has in its possession and has been able to locate. As Fireman's Fund explained to Safeway, Fireman's Fund previously objected to and withheld those documents because Fireman's Fund was concerned with producing privileged documents belonging HNB to other parties in this action, including Safeway[3] and the broker defendants. (Mullan Decl., Exhs. G, M).

---

[3] Although HNB assigned its claims to Safeway, it was not clear whether Fireman's Fund could produce HNB's privileged communications to Safeway. In (Continued…)

Fireman's Fund requested a meet and confer on privilege issues, but Safeway did not respond. (Mullan Decl., Exh. H). Although Safeway would not engage in a substantive meet and confer on privilege issues, Fireman's Fund shortly thereafter produced those documents (and also removed redactions on certain documents) to HNB's counsel (who also represents Safeway in this case). Fireman's Fund told HNB (and the other parties) that it was up to HNB to determine its production obligations with respect to the other parties.[4] (Mullan Decl., Exh. M).

In that same production, Fireman's Fund also produced settlement and mediation communications from the Underlying Action to Safeway and HNB. (*Id*.). Fireman's Fund explained that those documents were previously withheld because Safeway and HNB had appeared to object to the disclosure of the documents to the broker defendants. (*Id*.). Fireman's Fund did not agree with that position but nevertheless withheld the documents so that the parties could meet and confer on the issue. (Mullan Decl., Exhs. H, M). Again, Safeway and HNB refused to engage in a substantive meet and confer on the issue. Thus, Fireman's Fund later produced the settlement and mediation documents to Safeway and HNB only. (Mullan Decl., Exh. M). Fireman's Fund advised the broker defendants that those documents were not produced to them because it appeared Safeway and HNB had objected to the documents being produced. (*Id*.). Fireman's Fund then provided updated privilege and redaction logs to show what had been produced to Safeway and HNB but withheld from others. (Mullan Decl., Exh. C). Thus, Safeway's counsel has received all documents and communications that Fireman's Fund has from the defense of the Underlying Action (except for information on

_____

addition, the document requests were served by Safeway and not HNB, which are two separate parties in this case, so it was unclear whether Fireman's Fund had any obligation to produce HNB's privileged materials to Safeway.

[4] Fireman's Fund can amend its responses to Request Nos. 30, 31, 32, 33, and 36 to reflect that documents have been produced to HNB.

reserves, discussed below).

The only documents that Fireman's Fund has withheld based on attorney-client privilege and attorney work-product are communications and work-product between Fireman's Fund and its separate attorneys who provided legal advice on coverage issues. (Kasbohm Decl., ¶ 18; Mullan Decl., ¶¶ 4,8, Exh. C). To be clear, these are documents and communications generated by Fireman's Fund's in-house lawyers or outside lawyers retained to render legal advice on coverage, not communications or documents "generated" in the Underlying Action for purposes of the defense of HNB or investigation of the claims in that action. Fireman's Fund privilege and redaction logs identify the specific documents withheld. (Mullan Decl., Exh. C). Safeway does not point to any specific entry on the log that it disputes.

In sum, Fireman's Fund has produced all non-privileged responsive documents, to the extent documents exist, that it has been able to locate to date, including:

- Claims and underwriting files, and marketing materials (RFP Nos. 8, 9, 13, 17, 29, 30, 31, 32, 33, 34, and 36); and
- Claims manuals, training materials and other resources available to adjusters (RFP Nos. 42, 45, and 48).[5]

Safeway's assertion that there must be more documents is based on its own mistaken speculation about what documents should exist and its own failure to understand what Fireman's Fund has produced. As discovery is ongoing, however, if Fireman's Fund locates any additional non-privileged responsive documents, Fireman's Fund will produce them.

---

[5] Moreover, with respect to aspects of Request Nos. 8 and 17, Fireman's Fund clearly stated that it has not located any non-privileged documents or that the documents simply do not exist.

**D.     The Remaining Requests Seek Information And Documents That Are Not Relevant**

Fireman's Fund and Safeway disagree on whether several requests seek relevant and discoverable information in this case.  These requests include:

- Requests for privileged communications with and work-product of Fireman's Fund internal coverage counsel and outside litigation counsel hired to represent it in this case (Request No. 20);

- Requests for documents relating to other claims, policies or complaints that have nothing to do with this case (RFP Nos. 27[6], 38, 50, 51, 56, 57, 58);

- Requests for information regarding reserves (RFP No. 26);

- Requests for personnel files (RFP No. 24), information regarding other third parties that Fireman's Fund likely does not have (RFP No. 25), employee handbooks and manuals regarding employment terms and goals for claims adjusters (RFP No. 47), and promotion and demotion criteria (RFP No. 54);

- Requests for Fireman's Fund's net worth and "compensation" (RFP Nos. 7, 55, 58);

- Requests for other documents, assuming they exist, that have nothing to do with this case, such as requests for documents and reports from consultants regarding general claims handling process and recommended redesign of the process (RFP. No. 53), requests for certain documents – not limited to the policies at issue in this case – submitted to the insurance commissioner (RFP. No. 39)[7], requests for documents concerning "national standards"

---

[6] Also, as to Request No. 27, there are no data/reports/analysis of financial impact of Fireman's Fund's denial of CGL claims.  (Kasbohm Decl., ¶ 22).

[7] With respect to Request No. 39, which is overbroad, vague and ambiguous, to the extent it seeks the filings with the Hawaii Insurance Commission relating to the policies at issue, Fireman's Fund is currently conducting a search for any such documents and will produce what it locates as required under the FRCP. (Kasbohm Decl., ¶ 21).

(RFP No. 49), and requests for insurance policies that may cover Fireman's
Fund for costs of this action (RFP No. 35).

As discussed below, Safeway has not demonstrated how these documents
are relevant in this case and how any marginal benefit from documents that have
nothing to do with the handling of the claim in the Underlying Action outweigh the
significant burdens and costs of producing the requested documents.

## IV.       ARGUMENT

Safeway's Motion seeks to compel documents that have either: 1) already
been produced, including the claim file, underwriting file, claims manuals and
guidelines, training materials, and marketing materials, or 2) that they are not
entitled to discover, including attorney-client communications and work-product of
Fireman's Fund's coverage and litigation counsel, documents regarding other
policies, claims and lawsuits, information regarding reserves, personnel files, and
other random requests not discussed substantively in the Motion.

### A.       Many Of The Requested Documents Have Been Produced

#### 1.       The Claims And Underwriting Files Have Been Produced

As discussed above, Fireman's Fund has produced the entirety of the claims
files for HNB, with the exception of privileged communications and documents
with its separate coverage counsel and information on reserves.  Fireman's Fund
has also produced the underwriting files for HNB.  Specifically, these documents
include the claim notes that record communications and activities on the claim by
Fireman's Fund's adjusters, documents received, created, and sent during the
Underlying Action, communications with HNB's defense counsel, expert
information and reports, mediation and settlement communications and documents,
and the entire underwriting file maintained for HNB.  Thus, Fireman's Fund is not
aware of any additional non-privileged responsive documents in its possession to
be produced.  Accordingly, to the extent they exist, Fireman's Fund has produced

documents in response to Request Nos. 8, 9, 13, 17, 29, 30, 31, 32, 33, 34, and 36.

**2.      Claims Manuals, Training Materials, And Marketing Materials Have Been Produced**

In addition, as discussed above, Fireman's Fund has produced all non-privileged documents consisting of claims manuals and guidelines, training materials, and marketing materials that it has been able to locate after a reasonable and diligent search.  (Mullan Decl., ¶¶ 4, 8).  Fireman's Fund has also provided interrogatory responses listing the resources available to Fireman's Fund's adjusters in handling claims. (Mullan Decl., Exh. B).  Moreover, Safeway has had the opportunity to depose Fireman's Fund's adjusters about training materials and other resources available to them.  (Mullan Decl., ¶ 3).  Further, as to Request No. 49, which requests "national standards" for underwriting, claims adjusting, investigation, and denials, as Fireman's Fund stated in its responses, Fireman's Fund simply does not understand what is meant by "standards or which entity or body allegedly set the so-called 'standards'."  (Mullan Decl., Exh. A).  Moreover, even if there were "national standards," the Request is overbroad and not limited to the insurance coverages/policies at issue here. Accordingly, Fireman's Fund has sufficiently produced documents in response to Request Nos. 42, 45, and 48.

**3.      Privileged Communications And Work-Product Of Underlying Defense Counsel Have Been Produced; Safeway Is Not Entitled To Privileged Communications And Work-Product Of Fireman's Fund's Separate Counsel**

Despite Fireman's Fund's multiple letters and detailed privilege logs on this issue, as discussed above, Safeway appears to believe that Fireman's Fund has withheld communications with and work-product by underlying defense counsel. But, as discussed above, Fireman's Fund has produced all documents that it has in its possession from the defense of HNB in the Underlying Action, including the

communications with and work-product of underlying defense counsel. Fireman's Fund has only withheld is its attorney-client privileged communications with its separate attorneys and its separate attorneys' work-product relating to legal advice on coverage issues. Safeway is not entitled to discover these privileged communications and documents.

The attorney client-privilege protects "communications made for the purpose of facilitating the rendition of professional legal services." (*See* Hawaii Rules of Evidence 503(b); *Anastasi v. Fid. Nat'l Ins. Co.*, 134 Haw. 400, 422 (Haw. Ct. App. 2014), *aff'd in part, vacated in part on other grounds*, 137 Haw. 104, 116 (Haw. 2016)). In addition, Rule 26(b)(3)(A) provides that "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent"), unless "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."

Hawaii law is clear that when an insurance company seeks advice from its counsel on coverage issues, like Fireman's Fund did here, those communications are privileged. Indeed, in *Anastasi v. Fid. Nat'l Ins. Co.*, the court held that "[w]e thus recognize that when a communication between an insurance company and its attorney deals with the issue of coverage under a policy, including when the communication references the investigation undertaken to facilitate the rendering of legal advice on coverage, such communication is typically privileged." (*Id.* at 421). The court relied on a California case, *Aetna Cas. Sur. Co. v. Super. Ct.*, noting that cases from California "provide guidance as to the type of conduct that is generally related to legal advice or legal services in the insurance context." (*Id.* at 421 n.20).

In *Aetna Cas. Sur. Co. v. Super. Ct.,* 153 Cal. App. 3d 467 (1984), a California court denied an insured's request for access to communications between the insurer and its coverage counsel. The court reasoned that, if counsel was "given a legal document (the insurance policy) and was asked to interpret the policy and to investigate the events that resulted in damage to determine whether [the insurer] was legally bound to provide coverage for such damage" that is "a classic example of a client seeking legal advice from an attorney." (*Id*. at 476; *see also Costco Wholesale Corp. v. Super. Ct.*, 47 Cal. 4th 725, 740 (2009) ("If the trial court determined the communications were made during the course of an attorney-client relationship, the communications, including any reports of factual material would be privileged, even though the factual material might be discoverable *by some other means*" (emphasis added); *All Waste Sys. v. Gulf Ins. Co.*, 295 A.D.2d 379, 380 (N.Y. App. Div. 2002) (denying discovery of coverage opinions and draft disclaimer letters prepared by counsel because they were "primarily and predominately legal in nature, and, in their full content and context, were made to render legal advice or services")).

Here, the communications and documents at issue were made for the specific purpose of rendering legal advice to Fireman's Fund on coverage issues. The mere fact that there are bad faith claims is not a basis for discovery of privileged communications and Safeway cites to no authority supporting that proposition. *See, e.g.,* Haw. R. Evid. 503(d) (providing exceptions to the attorney-client privilege but not listing a bad faith claim as an exception).[8] Indeed,

---

[8] In *Stewart Title Guar. Co. v. Credit Suisse, Cayman Island Branch*, No. 1:11-cv-227-BLW, 2013 U.S. Dist. LEXIS 49804, at *15 (D. Idaho April 3, 2013), the court applied the joint-client exception to the attorney-client privilege. Here, *Stewart Title* is not applicable because HNB is not a joint client of Fireman's Fund's coverage counsel or litigation counsel in this case.

*Genovese v. Provident Life & Accident Ins. Co.*, 74 So.3d 1064, 1068 (Fla. 2011), cited by Safeway, supports that "when an insured party brings a bad faith claim against its insurer, the insured may not discover those privileged communications that occurred between the insurer and its counsel during the underlying action."

Moreover, the other cases cited by Safeway involve discovery from attorneys who acted in a dual role as adjusters of the claim, which was not the situation here. *See Ivy Hotel San Diego, LLC v. Houston Cas. Co.*, No. 10cv2183-L(BGS), 2011 U.S. Dist. LEXIS 119746, at *13 (S.D. Cal. Oct. 17, 2011) (attorney acting in dual role as adjuster and attorney so documents created in role of adjuster required to be produced); *Harper v. Auto-Owners Ins. Co.* 138 F.R.D. 655 (S.D. Ind. 1991) (same)[9]; *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992) (discoverable notes by adjuster not attorney).

Here, Fireman's Fund's coverage attorneys were neither acting as claims adjusters in the underlying claim nor performing a function that is part of the ordinary course of handling a claim.[10] (Kasbohm Decl., ¶ 18). They were solely providing legal advice on coverage issues. As such, there is no need for an in camera review,[11] as Safeway is not entitled to discover privilege attorney-client

[9] *Stewart Title Guar. Co.*, 2013 U.S. Dist. LEXIS 49804, at *12 (coverage discussion subject to redaction, but granted in camera review because the attorney performed a mixed role; "at times [ ] providing coverage advice . . . at other times it was investigating claims"); *Palmer v. v. Sentinel Ins. Co. Ltd*, No. C12-5444 BHS, 2013 U.S. Dist. LEXIS 95643, at *6 (W.D. Wash. July 9, 2013) (same); *Ten Talents Inv. I LLC v. Ohio Secs., Ins. Co.*, No. C12-5849 RBL, 2013 U.S. Dist. LEXIS 87697, at *4 (W.D. Wash. June 21, 2013) (same).

[10] HNB and Safeway are evidently also seeking privileged communications and work-product of litigation counsel in this very coverage action. Attempted discovery of such documents is an even more egregious assault on the core of the attorney-client privilege and the attorney work-product protection.

[11] Safeway's argument that the court should review the documents based on the "*Cedell*" standard is misplaced because that Washington law only applies in first-party cases where an insured submits a claim for a loss it suffered itself and is contrary to *Anastasia*'s holding that a bad faith claim is not an exception to the attorney-client privilege.

communications between Fireman's Fund and its coverage counsel, nor is Safeway entitled to the attorneys' work-product.

## B. The Other Requests Seek Documents That Are Not Relevant And Would Be Unduly Burdensome And Costly To Produce

### 1. Documents Regarding Other Policies, Claims Or Lawsuits, Involving Different Insureds, Policies And Facts, Are Not Relevant

Request Nos. 27, 38, 50, 51, 56, 57, 58 seek information and documents about other claims, involving other insureds under different types of policies and factual circumstances, which have nothing to do with the claim at issue here. In general, the requests seek *all* documents regarding *all* claims made under Commercial General Liability ("CGL") policies issued by Fireman's Fund, claims involving product defects, and complaints against Fireman's Fund for the last 10-15 years. These requests are not only irrelevant, but are also vastly overboard, and would be extremely burdensome and costly to produce.

#### a. Other Policies, Claims, And Complaints Are Irrelevant

Under Rule 26(b)(1), discovery must be "relevant to any party's claim or defense and proportional to the needs of the case."

Safeway asserts that the other claim files are relevant to its bad faith claim because a policyholder has the right to "discover evidence of other bad faith cases against his or her insurer to reveal information on the insurer's claim handling practices and coverage interpretations." (Mot. at p. 26). But the cases cited by Safeway do not support discovery of all claims files of an insurer. *See Webber v. State Farm Mut. Auto. Ins. Co.*, 873 F. Supp. 209, 210 (S.D. Iowa 1994) (not addressing the discovery questions presented here but determining whether six claims files could be admitted at trial on a motion in limine); *Hawkins v. Allstate*

*Ins. Co.*, 733 P.2d 1073, 1081 (Ariz. 1987) (involving testimony about claims practices with nothing to do with discovery of claim files).

Moreover, unlike the cases cited in Safeway's Motion,[12] Safeway makes no showing whatsoever that the documents it requests have any relevance to HNB's claim or the insurance policies at issue. Indeed, the requests cover all CGL insurance policies and claims for the last 10-15 years and are not narrowed in scope in any manner (*see, e.g.*, Request Nos. 27, 38, 57, and 58[13]). Fireman's Fund's CGL policies contain coverages that vastly vary in scope and terms. (Kasbohm Decl., ¶ 9). Request No. 51 attempts to limit the scope to "similar" cases/claims but provides no definition of "similar." And it would be difficult to determine what is "similar" given the varying polices and facts of each individual claim. Likewise, Request No. 50, which seeks claims related to "defective products sold or distributed," can involve different policies and entirely different facts. Further, there is no reasonable limitation on the time or jurisdictional scope of these requests. Thus, claims dealing with different policy language, different facts, during different time periods in different jurisdictions that may interpret various policy language differently cannot have any relevance to the claim here. *See Bancinsure, Inc. v. McCaffree*, No. 12-CV-2110-KHN-GLR, 2013 U.S. Dist.

---

[12] *Phillips v. Clark Cty. Sch. Dist.*, No. 2:10-cv-02068, 2012 U.S. Dist. LEXIS 5309, at *38-40 (D. Nev. Jan. 18, 2012), involved the production of only 10 files for claims that involved the same policy provisions and similarly situated insureds. *Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 107 (D.N.J. 1990), also involved discovery involving "identical policy language" and limited the discovery to the 10 earliest and 10 most recent files because of the burden on the insurer to search all of its files. Similarly, *Polygon v. Northwest Co., LLC v. Steadfast Ins. Co.*, No. C08-1294 RSL, 2009 WL 1437565, at *2 (W.D. Wash. May 22, 2009), denied discovery seeking all claims and communications as burdensome and limited it to claims filed within the last five years.

[13] Moreover, as to Request No. 58, Safeway has not shown how the amount of CGL premiums collected and the amount of CGL claims paid – which is highly confidential financial information – has any relevance to any issue in this case. Fireman's Fund also does not know if it can obtain this information without undue burden and expense given how Fireman's Fund records are maintained.

LEXIS 152804, at *9 (D. Kan. Oct. 24, 2013) (denying discovery and noting that, the "other cases cited by FDIC-R [i.e., *Phillips v. Clark County School Dist.*] appear to involve requests for documents for claims in which the identical policy provisions are in issue. By contrast, even as modified by agreement of counsel, Request 19 here contains a far broader request"); *In re Nat'l Lloyds Ins. Co.*, 449 S.W.3d 486, 489 (Tex. 2014) ("Scouring claim files in hopes of finding similarly situated claimants whose claims were evaluated different from [the plaintiff] is at best an 'impressible fishing expedition'") (citations omitted)).

### b. The Costs And Burdens To Produce The Other Claims Files Requested By Safeway Would Be Incredible

Moreover, the burden to locate, review and produce the requested documents regarding all other claims far outweighs any potential probative value and proportional needs of this case.

In considering the proportional needs of the case, the Court must consider the "importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." (Fed. R. Civ. P. 26(b)(1)).

In fact, courts have held that other claim files do not need to be produced when the burden and expense for the production is oppressive. In *Mead Reinsurance Co. v. Superior Court*, the court found that it was unduly burdensome and oppressive to require an insurer to manually review 13,000 claims files. 188 Cal. App. 3d 313, 317 (1986) (basing its decision on a declaration submitted by the insurer stating the request would have required it to "review thousands of files in order to locate documents responsive to this request and it would require [the insurer] to transport potentially thousands of files from its records depository" in

New York to California). Likewise, in *Dobro v. Allstate Ins. Co.* the court found that an interrogatory that would require an insured to review 10,082 files of non-party insureds was "unduly burdensome and not proportional to the needs of this case." No. 16cv1197-AJB (BLM), 2016 U.S. Dist. LEXIS 119198, at *25 (S.D. Cal. Sept. 2, 2016). The court also rejected an attempt to limit the search because "the unrefuted evidence establishes that Defendant does not have the capability to search for claim files containing the six factors identified by Plaintiff to limit the discovery requests to the facts of this case." (*Id.* at *24).

Further, as an example, the Hawaii Supreme Court has denied requests requiring a company to search through thousands of claims files. (*Acoba v. General Tire, Inc.*, 92 Haw. 1, 11 (Haw. 1999). In *Acoba*, plaintiffs propounded an interrogatory requesting information regarding every "lawsuit," "claim," or "incident" involving a specific product. The court held that defendant Firestone did not have to respond because "the burden would be great to require Firestone to produce the names of every individual and every related document for every lawsuit and claim filed, as well as every correspondence made regarding the safety of multi-piece rims." (*Id.*).

Here, like in the cases cited above, it would be unduly burdensome and costly to require Fireman's Fund to produce the requested documents. For the last 15 years, there are approximately 340,000 claims under CGL polices for Fireman's Fund companies. (Kasbohm Decl., ¶ 12). Moreover, Fireman's Fund's systems are not capable of conducting electronic searches to locate claims that are "similar" to the claims here in the manner requested by Safeway. (Kasbohm Decl., ¶ 10.) For example, Fireman's Fund's systems are not capable of searching for specific policy language and coverages, claims made under specific theories of liability with specific factual circumstances, or claims that resulted in a certain resolution. (Kasbohm Decl., ¶¶ 10, 11). Even though there are some designations on claim

files for products claim, they are not always accurate, would not necessarily identify claims that are similar in nature to the claims at issue, and also result in close to 50,000 files for the last 15 years.  (Kasbohm Decl., ¶¶ 11, 13).  A manual review (of electronic and likely hardcopy documents) would have to be conducted of all the claim files to locate other claims that could potentially involve similar insurance policies, factual circumstances, and underlying claims.  (Kasbohm Decl., ¶ 14).  This would be an incredible task. (Kasbohm Decl., ¶¶ 12-15).

Moreover, there are privacy concerns with producing documents relating to other insureds who are all remote third parties to this dispute.  Any claims files produced would need to be reviewed for redactions of personal information of those third parties, in addition to any privileged information.  (*See* Haw. Const. § 6 ("The right of the people to privacy is recognized and shall not be infringed without the showing of a compelling state interest"); *Alpha Life Ins. Co. v. Gayle*, 796 S.W.2d 834, 836 (Tex. App. 1990) (insurer's "interest in protecting the privacy rights of its claimants clearly outweighs any right the real parties in interest have to discover the identities of other claimants")).  The time, resources, and money spent in redacting all of this information would be substantial.

Accordingly, the burdens and costs to produce the requested documents would be both incredible and unjustified and outweighs any theoretical benefit.

## 2.  Information Regarding The Reserves Are Not Relevant

Safeway contends that information on reserves is probative of Fireman's Fund's assessment of the potential liability of HNB in the Underlying Action, the interpretation of the policies, and whether Fireman's Fund acted in bad faith. However, reserves set by insurance companies are nothing more than an educated guess about what an insurer may be required to pay if there is coverage and the costs of defend a case over time.  Courts have denied discovery because reserves are not an accurate estimate of potential liability and thus of no probative value.

*See Silva v. Basin Western Inc.*, 47 P.3d 1184, 1189 (Colo. 2002) (reserves are not the equivalent of settlement authority, as reserves are solely for complying with statutory requirements to guarantee the insurer's ability to satisfy potential liability); *In re Couch*, 80 B.R. 512, 517 (S.D. Cal. 1987) ("a reserve cannot accurately or fairly be equated with an admission of liability or the value of any particular claim"); *National Union Fire Ins. Co. of Pittsburgh, Pa v. Stauffer Chem. Co.*, 558 A.2d 1091, 1097-98 (Del. Super. Ct. 1989) (reserves are hypothetical and therefore irrelevant); *40 Rector Holdings, LLC v. Travelers Indem. Co.*, 40 A.D.3d 482, 483 (N.Y. App. Div. 2007) (reserves are "not material and necessary" to a coverage action).

The two cases cited by Safeway, *Minnesota Lawyers Mut. Ins. Co. v. Commissioner of Internal Revenue* and *Hanover Ins. Co. v. Commissioner*, do not support a different conclusion. Both cases analyze whether the entire amount of reserves across all policies on an insurer's books at the end of the year may be deducted from federal income tax. Neither case analyzes whether reserves for a specific claim are relevant in a subsequent coverage dispute. Indeed, in *Minnesota Lawyers Mut. Ins. Co*, the court refused to adopt a presumption that reserves are a "fair and reasonable estimate" of liability. (*Minn. Lawyers Mut. Ins. Co. v. Comm'r of Internal Revenue*, 285 F.3d 1086, 1091-92 (8th Cir. 2002)).

Further, information on reserves cannot possibly be relevant to the interpretation of the insurance policies. Indeed, "[i]nsurance policies are subject to the general rules of contract construction." (*First Ins. Co. of Hawaii, Inc. v. State, by Minami*, 66 Haw. 413, 423-24 (Haw. 1987)). The "terms of the policy should be interpreted according to their plain, ordinary, and accepted sense in common speech *unless it appears from the policy* that a different meaning is intended." (*Id.* (emphasis added); *Buss v. Super. Ct.*, 16 Cal. 4th 35, 45 (1997) (where policy language "is clear, the language must be read accordingly") (citations omitted)).

Safeway does not assert that any specific provision in the policies is ambiguous. Thus, extrinsic evidence cannot be considered to interpret the unambiguous policies. (*Amfac, Inc. v. Waikiki Beachcomber Inv. Co.*, 74 Haw. 85, 125 (1992) (extrinsic evidence not considered in contract interpretation)).

Thus, Safeway has not demonstrated how information regarding reserves – which Fireman's Fund considers confidential financial information – is relevant to the issues in this case.

### 3. Fireman's Fund's Personnel Files Contain Private Third Party Information And Are Not Relevant

Confidential and private personnel files, including the compensation of Fireman's Fund's employees are not relevant or discoverable in this case (Request Nos. 24, 25). In Hawaii, discovery of personnel files is subject to a "heightened" standard of relevance and there is a strong public policy against such discovery. (*In re Hawaii Corp.*, 88 F.R.D. 518, 524 (D. Haw. 1980) ("strong public policy against disclosure exists"; discovery only allowed when the information is "clearly relevant" and there is a "compelling" need for the information because it is not otherwise readily obtainable)). The weight of authority supports this conclusion.

For example, in *Allstate Ins. Cos. v. Herron*, an Alaska federal court held that adjusters' files are not relevant to negligence claims against insurance companies, as opposed to claims against the individual adjusters, and denied the insured's request to discover the personnel files. (393 F. Supp. 2d 948, 957-58 (D. Alaska 2005) ("It is unclear to the Court how the files of individual adjusters will be relevant to the issue in this case, i.e., the negligence of Allstate as a company")). Similarly, in *Bishelli v. State Farm Auto Ins. Co.*, a Colorado federal court held that an insurance company's employees' files were irrelevant to a claim against the company. (No. 07-cv-00385-WYD-MEH, 2008 U.S. Dist. LEXIS 10406, at *11 (D. Colo. Jan. 31, 2008) ("the cases that the Court has reviewed would counsel

against requiring production" of adjuster's personnel file); *Adams v. Allstate Ins. Co.*, 189 F.R.D. 331, 333 (E.D. Pa. 1999) (request for personnel files who worked on plaintiff's claims was "overbroad, and seeks information that is unnecessarily invasive"); *40 Rector Holdings, LLC*, 40 A.D.3d at 483 (compensation of employees is "not material and necessary" to a coverage action)).[14]

Here, Safeway's bad faith allegations and claims are against Fireman's Fund. The SACC does not allege any individual wrongful or bad faith conduct by any particular adjuster nor is there any basis for such allegation. Moreover, although the Motion asserts that personnel files "typically reveal a scheme for incentivizing claims handlers, adjusters and other employees to delay and/or deny claims" (Mot. at 24), there are no such allegations in the SACC, nor any basis for that assertion. In fact, Fireman's Fund has already responded in sworn interrogatory answers, that there are no such incentive programs for adjusters at Fireman's Fund. (Mullan Decl., Exh. B.) In addition, the recent depositions of Fireman's Fund personnel have confirmed the same thing. (Mullan Decl., Exh. W (Deposition of Ann Galasso ("Galasso Dep.") at 50:25-56:23). *See In re Sunrise Secs. Litig.*, 130 F.R.D. 560, 580 (E.D. Pa. 1989) ("general allegations of wrongdoing do not, standing alone, open the season for fishing expeditions").

Further, there are less intrusive methods to discover information regarding

---

[14] The cases cited by Safeway do not support discovery of personnel files under the circumstances here. *See Stokes v. Life Ins. of N. Am.*, No. CV 06-411-S-LMB, 2008 U.S. Dist. LEXIS 52280 (D. Idaho July 3, 2008) (no analysis of discovery of personnel files); *Saldi v. Paul Revere Life Ins.*, 224 F.R.D. 169, 184 (E.D. Pa. 2004) (discovery of personnel files only because there was not a "less confidential source from which Plaintiff could obtain this material"); *Grange Mut. Ins. Co. v. Trude*, 151 S.W.3d 803, 815 (Ky. 2004) (allowing limited discovery into bonus programs); *Allied World Assur Co. (U.S.) v. Lincoln General Ins. Co.*, 280 F.R.D. 197, 203-204 (M.D. Pa. 2012) (focusing on training materials not confidential personnel information); *Lyon v. Bankers Life & Case. Co.*, No. CIV. 09-5070-JLV, 2011 U.S. Dist. LEXIS 4702, at *23 (D.S.D. Jan. 14, 2011) (concerning incentive programs).

the adjusters' training, education, and performance.  For instance, Safeway has already deposed several adjusters that handled HNB's claim and were able to question them on these topics.  (Mullan Decl., Exh. W (Galasso Dep. at 50:25-56:23); Exh. V (Deposition of Russell Beal at 28:13-31:1, 67:1-71:16); Exh. T (Deposition of Richard Meyer at 12:8-17:25, 18:13-19:15); Exh. U (Deposition of Leslie Barnes at 17:12-20:25)).  Moreover, the personnel files do not contain any information regarding training experience and Fireman's Fund has produced documents regarding the training and resources available to adjusters.  (Kasbohm Decl., ¶ 16; Mullan  Decl., ¶ 8).

In sum, Safeway has not met the heightened standard of relevance to overcome the strong public policy against disclosure of personnel files containing private information of individual employees.

4.      **Safeway's Motion Includes Requests That Are Not Addressed In Its Motion And Which Seek Documents And Information That Are Not Relevant**

In addition, Safeway provides no arguments in its Motion with respect to Request Nos. 55, 7, 25, 47, 54, but they are included as Requests in dispute in Exh. A to the Pavey Decl.  These Requests, however, have nothing to do with the categories in which they are included in Exh. A.  For instance, Request No. 55 has nothing to do with reserves and Request No. 7 has nothing to do with personnel files.  Rather, these requests seek highly confidential information regarding Fireman's Fund "current net worth" and "compensation."  The law is clear that discovery of a defendant's financial information is not permitted unless there is "prima facie" evidence that punitive damages are warranted.  *See Dunlea v. Dappen*, 83 Haw. 28, 32 n.12 (1996), *rev'd on other grounds* 102 Haw. 92 (Haw. 2003) ("We generally agree with the trial court that discovery of a defendant's assets is not appropriate 'until there's prima facie showing in discovery that you

are going to get to a jury on punitives'"). Safeway has made no such prima facie showing and, in fact, have made no arguments whatsoever as to these requests.

Likewise, Request Nos. 25, 47, and 54, which are included in the personnel files category, do not request personnel files of Fireman's Fund's employees. Rather, Request No. 25 seeks documents relating to third parties who were "involved in any decision by [Fireman's Fund] concerning HNB." Safeway has not even attempted to explain how such overboard requests are relevant. And Request Nos. 47 and 54 request handbooks and manuals relating to employment terms, goals, promotion criteria, among other things. Again, Safeway has not demonstrated how any of those requests are relevant.

## C. Fireman's Fund's Responses And The Format Of Its Production Comply With The Federal Rules Of Civil Procedure

Fireman's Fund's responses comply with the FRCP. Rule 34(b)(2)(B) states that "[f]or each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." Rule 34(b)(2)(C) states that "[a]n objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest." (Fed. R. Civ. P. Rule 34(b)(2)(B)).

As an initial matter, Safeway never previously raised any issue regarding the format of Fireman's Fund's responses. Moreover, Fireman's Fund's responses comply with the FRCP. Fireman's Fund stated specific objections tailored to each request and, as required, Fireman's Fund stated what it would and would not produce.[15] (Mullan Decl., Exh. A). Further, Fireman's Fund provided privilege

---

[15] *See, e.g.,* Mullan Decl., Exh. A (Response to Request No. 8 ("Subject to the General Objections and the specific objection set forth above, Fireman's Fund states that it has not located any documents identifying the authors of the FFIC Policies and FFIC Excess Policies after a reasonable and diligent search. (Continued…)

and redaction logs for any documents withheld.  (Mullan Decl., Exh. C).  In
addition, Fireman's Fund has clarified in meet and confer communications what
has been produced and not produced.  (Mullan Decl., Exhs. F, G, J, M, N, O, R, S),
Thus, there is no need for Fireman's Fund to amend its written responses.[16]

Likewise, Fireman's Fund's production is in compliance with the FRCP.
Safeway's document requests contained several pages of onerous "instructions" for
electronically-stored information.  Fireman's Fund objected to the extent
Safeway's instructions were inconsistent with, and imposed burdens exceeding, the
FRCP.  Fireman's Fund stated that it would produce documents "in accordance
with the FRCP," which requires production of documents in the format ordinarily
maintained. (Mullan Decl., Exh. A).  And Fireman's Fund has done so.

Rule 34 states that a party "may state an objection to a requested form for
electronically stored information."  Rule 34 further provides:

> (i) A party must produce documents as they are kept in the usual course of
> business or must organize and label them to correspond to the categories in
> the request;

> (ii) If a request does not specify a form for producing electronically stored
> information, a party must produce it in a form or forms in which it is
> ordinarily maintained or in a reasonably usable form or forms.

---

Fireman's Fund will produce the FFIC Policies and FFIC Excess policies.");
Response to Request No. 13 ("Subject to the General Objections and specific
objections stated above, Fireman's Fund will produce all non-privileged
documents responsive to this request that are within its possession, custody, and
control, and that it is able to locate, including the claim file and any non-privileged
reports made part of the claim file, claim notes, reservation of rights letters, and
underwriting file."); Response to Request No .26   ("Subject to the General
Objections and specific objections stated above, Fireman's Fund will produce
claims manuals and underwriting manuals for commercial general liability policies
effective from 2005 to 2015, the timeframe identified in Request No. 37, in its
possession, custody or control that it is able to locate."))

[16] As discussed above, Fireman's Fund, however, will amend its responses to
reflect that it has produced the communications with and work-product of defense
counsel in the Underlying Action and the settlement and mediation
communications and documents.

(Fed. R. Civ. P. Rule 34(b)(2)(E)(i) and (ii)). Rule 26(b)(2)(B) adds that "[a] party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost." (Fed. R. Civ. P. Rule 26(b)(2)(B)).

As permitted under the FRCP, Fireman's Fund's initial productions (about 512 documents) were in PDF format as those documents are primarily maintained in the ordinary course of business in that format. (Kasbohm Decl., ¶ 17). There were a few word documents and e-mail files that were converted to PDF for consistent form of production. Moreover, despite Safeway's desire to have documents in a certain format for their own convenience, the FRCP does not require Fireman's Fund to have to create and produce single PDFs of each document. Nor does it require Fireman's Fund to incur the extra expense to convert the documents into a format in which they are not ordinarily maintained.

In addition to the documents produced in PDF format, however, Fireman's Fund also produced over 20,000 pages of documents with load files for electronically stored information, including .jpeg, .txt., .dat, .dii, .lfp, .log., opt., xlsk., and .xml files.. (Mullan Decl., ¶ 7). Accordingly, Fireman's Fund's responses and productions are in compliance with the FRCP.

### D. There Are No Grounds For Sanctions Against Fireman's Fund

There is no basis for sanctions. Rule 37 states that the court "must not order" payment of costs if: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." Rule 34(a)(5)(A).

Here, there are no grounds for sanctions. First, as discussed above, Fireman's Fund's objections and non-disclosures were substantially justified. Moreover, as also discussed above, Safeway filed this Motion before attempting to

meet and confer in good faith.  There is simply no basis for sanctions against Fireman's Fund and the Court should deny Safeway's request for sanctions.

## V.    CONCLUSION

Based on the foregoing reasons, Safeway's motion to compel and request for sanctions should be denied.

Dated:    December 13, 2016              CROWELL & MORING LLP


                                          /s/ Brendan V. Mullan
                                          _____
                                          Steven D. Allison
                                          Van-Dzung V. Nguyen
                                          Brendan V. Mullan
                                          Samrah R. Mahmoud
                                          Attorneys for Plaintiffs/Counterclaim
                                          Defendants AMERICAN AUTOMOBILE
                                          INSURANCE COMPANY and NATIONAL
                                          SURETY CORPORATION

CROWELL & MORING LLP
Steven D. Allison, *Admitted Pro Hac Vice* (CSB No. 174491, sallison@crowell.com)
Van-Dzung V. Nguyen, *Admitted Pro Hac Vice* (CSB No. 222832, vnguyen@crowell.com)
Samrah R. Mahmoud, *Admitted Pro Hac Vice* (CSB No. 285168, smahmoud@crowell.com)
3 Park Plaza, 20th Floor
Irvine, CA 92614
Telephone: 949-263-8400
Facsimile: 949-263-8414

CROWELL & MORING LLP
Brendan V. Mullan (HSB No. 9479, bmullan@crowell.com)
275 Battery Street, 23rd Floor
San Francisco, CA 94111
Telephone: 415-365-7847
Facsimile: 415-986-2827

STUART N. FUJIOKA (HSB No. 4223, stuart@snfaal.com)
1188 Bishop St. #1006
Honolulu, HI 96813
Telephone: 808-544-0068
Facsimile: 808-544-0078

Attorneys for Plaintiffs/Counterclaim Defendants
AMERICAN AUTOMOBILE INSURANCE COMPANY
and NATIONAL SURETY CORPORATION

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| AMERICAN AUTOMOBILE INSURANCE COMPANY, a Missouri Corporation; NATIONAL SURETY CORPORATION, an Illinois Corporation, <br><br> Plaintiffs, <br><br> v. <br><br> HAWAII NUT & BOLT, INC. and SAFEWAY INC., <br><br> Defendants. | CIVIL NO. CV 15-00245-ACK/KSC (Declaratory Judgment) <br><br> **CERTIFICATE OF SERVICE** <br><br> Hearing Date: Dec. 12, 2016 <br> Time: 11:00 a.m. <br><br> Trial Date: Aug. 1, 2017 |
| SAFEWAY INC.; HAWAII NUT & BOLT, INC., <br><br> Counterclaim Plaintiffs, | |

v.

AMERICAN AUTOMOBILE
INSURANCE COMPANY, a Missouri
Corporation; NATIONAL SURETY
CORPORATION, an Illinois Corporation,

      Counterclaim Defendants.


and

DOUGLAS MOORE, MONARCH
INSURANCE SERVICES, INC., a
Hawaii Corporation, and INSURANCE
ASSOCIATES, INC., a Hawaii
Corporation,

      Additional Counterclaim
      Defendants.

## CERTIFICATE OF SERVICE

I hereby certify that, on the dates and by the methods of service noted below, a true and correct copy of the foregoing **PLAINTIFFS AMERICAN AUTOMOBILE INSURANCE COMPANY AND NATIONAL SURETY CORPORATION'S OPPOSITION TO SAFEWAY'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS; DECLARATION OF PAM KASBOHM; DECLARATION OF BRENDAN V. MULLAN; EXHIBITS A-W; CERTIFICATE OF SERVICE** was served on the following at their last known addresses:

Served electronically through CM/ECF:

Terence J. O'Toole, Esq.
Judith Ann Pavey, Esq.
Maile S. Miller, Esq.
STARN O'TOOLE MARCUS & FISHER
733 Bishop Street, Suite 1900
Pacific Guardian Center, Makai Tower
Honolulu, HI 96813

Telephone:  (808) 537-6100
Email :  totoole@starnlaw.com
Email:  jpavey@starnlaw.com
Email:  mmiller@starnlaw.com

Attorneys for Real Party in Interest and Defendant/Counterclaim Plaintiff
SAFEWAY INC. and Defendant/Counterclaim Plaintiff HAWAII NUT & BOLT,
INC.

Corlis J. Chang, Esq.
Marissa L.L. Owens, Esq.
GOODSILL ANDERSON QUINN & STIFEL
First Hawaiian Center, Suite 1600
999 Bishop Street
Honolulu, HI 96813
Telephone:  (808) 547-5600
Facsimile:  (808) 547-5880
Email:  cchang@goodsill.com
Email:  mowens@goodsill.com

Attorneys for Counterclaim Defendant
INSURANCE ASSOCIATES, INC.

Kenneth S. Robbins, Esq.
Donna C. Marron, Esq.
Sasha A. Hamada, Esq.
BRONSTER FUJICHAKU ROBBINS
Pauahi Tower
1003 Bishop Street, Suite 2300
Honolulu, HI 96813
Telephone:  (808) 524-5644
Facsimile:  (808) 599-1881
Email:  krobbins@bfrhawaii.com
Email:  dmarron@bfrhawaii.com
Email:  shamada@bfrhawaii.com

Attorneys for Counterclaim Defendants
MONARCH INSURANCE SERVICES and DOUGLAS MOORE

Dated:    December 13, 2016            CROWELL & MORING LLP


                                       /s/ Brendan V. Mullan
                                _____
                                       Steven D. Allison
                                       Van-Dzung V. Nguyen
                                       Brendan V. Mullan
                                       Samrah R. Mahmoud
                                 Attorneys for Plaintiffs/Counterclaim
                                 Defendants AMERICAN AUTOMOBILE
                                 INSURANCE COMPANY and NATIONAL
                                       SURETY CORPORATION