IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

|  |  |  |
|---|---|---|
| AMERICAN AUTOMOBILE INSURANCE COMPANY, a Missouri Corporation; NATIONAL SURETY CORPORATION, an Illinois Corporation, | ) ) ) ) ) ) | Civ. No. 15-00245 ACK-KSC |
| Plaintiffs, | ) ) | ORDER GRANTING PLAINTIFFS AMERICAN AUTOMOBILE INSURANCE |
| vs. | ) ) ) | COMPANY'S AND NATIONAL SURETY CORPORATION'S MOTION TO DISMISS |
| HAWAII NUT & BOLT, INC. AND SAFEWAY INC., | ) ) ) | BREACH OF CONTRACT AND REFORMATION COUNTERCLAIMS IN SECOND AMENDED COUNTERCLAIM |
| Defendants. | ) ) |  |
| SAFEWAY INC.; HAWAII NUT & BOLT, INC., | ) ) ) |  |
| Counterclaim Plaintiffs | ) ) |  |
| vs. | ) ) |  |
| AMERICAN AUTOMOBILE INSURANCE COMPANY, a Missouri Corporation; NATIONAL SURETY CORPORATION, an Illinois Corporation, | ) ) ) ) ) ) |  |
| Counterclaim Defendants. | ) ) ) |  |
| and | ) ) |  |
| DOUGLAS MOORE, MONARCH INSURANCE SERVICES, INC., a Hawaii Corporation, and INSURANCE ASSOCIATES, INC., a Hawaii Corporation, | ) ) ) ) ) ) |  |
| Additional Counterclaim Defendants. | ) ) |  |

### ORDER GRANTING PLAINTIFFS AMERICAN AUTOMOBILE INSURANCE COMPANY'S AND NATIONAL SURETY CORPORATION'S MOTION TO DISMISS BREACH OF CONTRACT AND REFORMATION COUNTERCLAIMS IN SECOND AMENDED COUNTERCLAIM

For the reasons discussed below, the Court GRANTS Plaintiffs/Counterclaim Defendants American Automobile Insurance Company's and National Surety Corporation's Motion to Dismiss Breach of Contract and Reformation Counterclaims in Second Amended Counterclaim, ECF No. 104, with leave to amend.

### FACTUAL BACKGROUND

At issue is an insurance coverage dispute between Plaintiffs/Counterclaim Defendants American Automobile Insurance Company and National Surety Corporation (collectively, Fireman's Fund Insurance Corporation, "FFIC" or "the Insurers") and Defendants/Counterclaim Plaintiffs Hawaii Nut & Bolt, Inc. ("HNB") and Safeway Inc. ("Safeway") over defects related to the construction of a Safeway store in Hawaii.

## I.    Underlying Action

On June 22, 2009, Safeway filed a complaint in the First Circuit Court of the State of Hawaii ("Underlying Complaint" or "UC").  Second Am. Counterclaim ("SACC"), ECF No. 64, ¶ 14; Kasbohm Decl. Ex. A, Compl., Safeway Inc. v. Nordic PCL Constr., Inc., No. 09-1-1414-06 (Haw. Cir. Ct. June 22,

2009)).[1]   The Underlying Complaint involved issues pertaining to the construction of the roof deck at a Safeway store in Kapahulu, Hawaii.   See generally UC.   Safeway alleged that in November 2006 it entered into a construction contract with Nordic PCL Construction, Inc. ("Nordic"), wherein Nordic became the general contractor for the Kapahulu Safeway store.   UC ¶¶ 3, 11.

---

[1] The Court takes judicial notice of the documents attached to the Motion to Dismiss, i.e. the Underlying Complaint and the insurance policies, pursuant to Federal Rule of Evidence ("FRE") 201.   FRE 201 "permits a court to take judicial notice of adjudicative facts 'not subject to reasonable dispute.'" United States v. Chapel, 41 F.3d 1338, 1342 (9th Cir. 1994) (quoting Fed. R. Evid. 201).   The rule further provides that a fact "is not subject to reasonable dispute" where it "can be accurately and readily determined from sources whose accuracy cannot be questioned."   Fed. R. Evid. 201(b)(2).   These documents fall under FRE 201 and their authenticity has not been questioned by Safeway or HNB.   Accordingly, taking judicial notice of the documents is appropriate.   See Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank, 136 F.3d 1360, 1364 (9th Cir. 1998) (taking judicial notice of pleadings filed in related state court action); Illinois Nat. Ins. Co. v. Nordic PCL Const., Inc., 870 F. Supp. 2d 1015, 1026 (D. Haw. 2012) (taking judicial notice of relevant portions of insurance policies at issue).

    Consideration of these documents is also appropriate pursuant to the "incorporation by reference" doctrine.   See Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010) ("We have extended the doctrine of incorporation by reference to consider documents in situations where the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance.").

As part of the contract, Nordic agreed to "retain professional subcontractors and vendors as may be necessary to fully implement the services it was rendering." Id. ¶ 14.  It also agreed to "be responsible for the timely and proper performance of services by its subcontractors, their respective subcontractors and vendors of any tier to the same extents as if all such services were performed by Nordic." Id.

The Underlying Complaint further alleged that Nordic entered into a contract with HNB in which HNB "agreed to supply certain products manufactured by VersaFlex and/or others to be used in the construction of the Roof Deck." Id. ¶ 16. VersaFlex Incorporated ("VersaFlex") developed products, collectively referred to as the "VersaFlex Coating System" which were used to waterproof the roof deck of the Kapahulu Safeway. Id. ¶¶ 4, 16, 17.  As part of its contract with Nordic, HNB agreed to "supply . . . the preparation of the Wearing Slab for the application of the VersaFlex Coating System and for the VersaFlex Coating System itself." Id. ¶ 16.  HNB also allegedly entered into a contract with Cascade Industries, Inc. ("Cascade") to supply the products manufactured by VersaFlex. Id. ¶¶ 4, 17.  As discussed further below, Safeway and HNB now claim that there were no such contracts.

According to the Underlying Complaint, HNB along with VersaFlex represented that the VersaFlex products were

4

sufficient, adequate, and/or fit for their intended use in connection with the Safeway project and that the products would perform as intended notwithstanding Hawaii's ultraviolet ("UV") exposure.  Id. ¶¶ 20-21; see also SACC ¶ 19.  Relying on these representations, Safeway chose to use the VersaFlex Coating System.  UC ¶ 22; SACC ¶ 21.  HNB also proposed to Safeway "the option of deleting the UV and color resistant aliphatic top coat" of the VersaFlex Coating System to save costs.  UC ¶ 27; SACC ¶¶ 22-23.

On January 2008, shortly after the Safeway Kapahulu store opened to the public, the store "began experiencing pervasive water leaks that penetrated into the store through the Roof Deck, disrupting business operations and causing damage to Safeway's business and reputation."  UC ¶ 31; SACC ¶ 26. Safeway further alleged that at the time the roof deck began leaking, "it also became apparent that the VersaFlex Coating System was failing" and that "[s]pecifically, the VersaFlex Coating System began to manifest cracks and failures in the waterproof membrane throughout the entire field of the Roof Deck."  UC ¶ 33; see also SACC ¶ 27.  According to Safeway, the deletion of the aliphatic top coat contributed to the damages it suffered.  UC ¶ 30; SACC ¶ 24.

Safeway asserted the following claims against HNB based on alleged misrepresentations, defects, and deficiencies

in connection with the construction of the Kapahulu Safeway store: 1) breach of contract; 2) breach of the covenant of good faith and fair dealing; 3) negligence/gross negligence; 4) breach of express and implied warranties; 5) unjust enrichment; 6) negligent misrepresentation and/or omission; 7) intentional misrepresentation and/or fraudulent concealment; 8) product defects; and 9) negligent design and manufacture.  UC ¶¶ 49-96, 107-25.

Shortly after HNB was served a copy of the Underlying Complaint, HNB tendered the claims to FFIC.  SACC ¶ 53.  FFIC agreed to defend HNB under a reservation of rights and retained counsel for HNB.  Id.  ¶¶ 54-57, 62.  FFIC defended HNB in the underlying lawsuit for six years.  Id. ¶ 63.

## II.  Insurance Policies

FFIC issued three Commercial General Liability ("CGL") policies and three umbrella and excess policies to HNB during the relevant time period (the "Policies").

American Automobile Insurance Company ("AAIC") issued CGL policy number A S1 AZC 8066751 for the policy period of May 1, 2007 to May 1, 2008 and A S1 AZC 80828365 for the policy period of May 1, 2008 to May 1, 2009.  SACC ¶¶ 41, 44; Kasbohm Decl. Exs. B, C.  AAIC also issued umbrella and excess insurance policies to HNB under these policy numbers and for the same policy periods.  SACC ¶¶ 42, 45; Kasbohm Decl. Exs. B, C.

National Surety Corp. ("NSC") issued CGL policy No. A S1 AZC 80828365 to HNB for the policy period of May 1, 2009 to May 1, 2010.  SACC ¶ 44; Kasbohm Decl. Ex. C.  NSC also issued an umbrella and excess insurance policy to HNB under the same policy number for the same time period.  SACC ¶ 44; Kasbohm Decl. Ex. C.

The CGL policies provide insurance for "bodily injury and "property damage" "only if: (a) The **bodily injury** and **property damage** is caused by an **occurrence** that takes place in the **coverage territory**[.]"  Kasbohm Decl. Ex. B, at 73-74, Ex. C, at 411-412.[2]  "Occurrence" is defined by the Policies as "[a]n **accident** including continuous or repeated exposure to substantially the same general harmful conditions.  Id. Ex. B, at 87, Ex. C, at 425.

The umbrella insurance policies provide coverage for "**Bodily Injury** or **Property Damage** that takes place during our Policy Period and is caused by an **Occurrence**[.]"  Id. Ex. B, at 98, Ex. C, at 439.  The umbrella policies define an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  Id. Ex. B, at 112, Ex. C, at 453.  The excess insurance provisions in the

---

[2] The page numbers cited to are to the Bates Numbers in Exhibits B and C of the Kasbohm Declaration.

umbrella/excess insurance policies only insure damages that "are covered by **Primary Insurance**." Id. Ex. B, at 94, Ex. C, at 435.

## PROCEDURAL BACKGROUND

FFIC filed a Complaint for Declaratory Judgment against HNB in this Court on June 29, 2015. Compl., ECF No. 1. The Complaint sought a binding declaration that under the Policies, FFIC had no duty to defend and/or indemnify HNB for the claims asserted in the Underlying Lawsuit. Id.

On September 4, 2015, HNB filed a First Amended Answer to the Complaint along with a Counterclaim against the Insurers. ECF No. 14. The Counterclaim included counts for bad faith and declaratory relief. Id.

On February 12, 2016, HNB settled the Underlying Action with Safeway. SACC ¶ 2. As part of the settlement, HNB entered into a stipulated judgment in which it assigned its claims against FFIC and its insurance agents and brokers to Safeway. Id. ¶¶ 2-3. Accordingly, Safeway was granted leave to join this action. ECF No. 42.

Safeway and HNB then filed a Second Amended Counterclaim ("SACC") raising claims against FFIC and its insurance agents/brokers (Douglas Moore, Monarch Insurance Services, Inc., and Insurance Associates, Inc.). Safeway and HNB filed four counterclaims against FFIC: 1) breach of

contract; 2) bad faith 3) negligent misrepresentation and omission; and 4) reformation.  SACC ¶¶ 71-142.

On September 7, 2016, FFIC filed the instant Motion to Dismiss Breach of Contract and Reformation Counterclaims in Second Amended Counterclaim ("Motion to Dismiss").  Counterclaim Defendants Douglas Moore and Monarch Insurance Services, Inc. filed a Statement of No Position on November 21, 2016.  ECF No. 179.  HNB and Safeway filed their Memorandum in Opposition ("Opposition" or "Opp.") on November 21, 2016.  ECF No. 180. FFIC filed its Reply on November 28, 2016.  ECF No. 181.  The Court held a hearing on FFIC's Motion to Dismiss on December 12, 2016.  At the hearing, counsel for Counterclaim Defendant Insurance Associates, Inc. also represented that Insurance Associates, Inc. was not taking a position on the Motion to Dismiss.

## **STANDARD**

### I.   **Motion to Dismiss for Failure to State a Claim**

Rule 12(b)(6) authorizes the Court to dismiss a complaint that fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The Court may dismiss a complaint either because it lacks a cognizable legal

theory or because it lacks sufficient factual allegations to support a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988).

In resolving a Rule 12(b)(6) motion, the Court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded factual allegations as true. Sateriale v. R.J. Reynolds Tobacco Co., 697 F.3d 777, 783 (9th Cir. 2012). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." Id. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557). "In considering a motion to dismiss, the court is not deciding whether a claimant will ultimately prevail but rather whether the claimant is entitled to offer evidence to support the claims asserted." Tedder v. Deutsche Bank Nat. Trust Co., 863 F. Supp. 2d 1020, 1030 (D. Haw. 2012) (citing Twombly, 550 U.S. at 563 n.8).

The Court should grant leave to amend unless the pleading cannot be cured by new factual allegations. OSU Student All. v. Ray, 699 F.3d 1053, 1079 (9th Cir. 2012).

Under Rule 12(b)(6), review is generally limited to the contents of the complaint. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Campanelli v. Bockrath, 100 F.3d 1476, 1479 (9th Cir. 1996). However, courts may "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).

## II. Diversity Jurisdiction

The Court has diversity jurisdiction to hear this case pursuant to 28 U.S.C. § 1332. Federal courts sitting in diversity apply state substantive law and federal procedural law. Hanna v. Plumer, 380 U.S. 460, 465 (1965); Erie v. Tompkins, 304 U.S. 64, 78 (1938). A federal court is bound by the decisions of a state's highest court when interpreting state law. Ariz. Elec. Power Coop., Inc. v. Berkeley, 59 F.3d 988, 991 (9th Cir. 1995). However, "[i]n the absence of such a decision, a federal court must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes,

treatises, and restatements as guidance." Id. (citation omitted).

## DISCUSSION

I.  **Framework for Construing Insurance Contracts**

Under Hawaii law, courts look to the plain language of the insurance policy to determine the scope of the insurer's duties. Dairy Rd. Partners v. Island Ins. Co., Ltd., 992 P.2d 93, 107 (Haw. 2000); see also Burlington Ins. Co. v. Oceanic Design & Const. Inc., 383 F.3d 940, 945 (9th Cir. 2004) ("In Hawaii, the terms of an insurance policy are to be interpreted according to their plain, ordinary, and accepted sense in common speech.").

"In the context of insurance coverage disputes, [the Court] must look to the language of the insurance policies themselves to ascertain whether coverage exists, consistent with the insurer and insured's intent and expectations." Hawaiian Ins. & Guar. Co. v. Fin. Sec. Ins. Co., 807 P.2d 1256, 1260 (1991). "[B]ecause insurance policies are contracts of adhesion, they must [] be construed liberally in favor of the insured, [and] any ambiguities in their terms and conditions must be resolved against the insurer." Estate of Doe v. Paul Revere Ins. Grp., 948 P.2d 1103, 1114-15 (Haw. 1997). Insurance policies must also be "construed in accordance with the reasonable expectations of a layperson." Hawaiian Isle

12

Adventures, Inc. v. N. Am. Capacity Ins. Co., 623 F. Supp. 2d 1189, 1194 (D. Haw. 2009).   A contract term is considered ambiguous only if it is "capable of being reasonably understood in more ways than one."  Cho Mark Oriental Food, Ltd. v. K & K Int'l, 836 P.2d 1057, 1064  (Haw. 1992).

"The insurer owes a duty to indemnify the insured 'for any loss or injury which comes within the coverage provisions of the policy, provided it is not removed from coverage by a policy exclusion.'"  State Farm Fire & Cas. Co. v. Cabalis, 80 F. Supp. 3d 1116, 1122 (D. Haw. 2015) (quoting Dairy Rd. Partners, 992 P.2d at 108).

## II. Consideration of Evidence Beyond the Complaint and Duty to Indemnify

As an initial matter, the parties dispute whether the Court should look to evidence beyond the Underlying Complaint to determine whether FFIC has a duty to indemnify.  In their Opposition, Safeway and HNB argue that because the underlying case was settled, the Court must consider "all available evidence."  Opp., at 12-13.  In turn, FFIC claims that because the SACC does not indicate that settlement was based on allegations other than those in the Underlying Complaint, the Court need not look beyond the Underlying Complaint to decide the issue.  Reply, at 4.

Safeway and HNB cite to only one case applying Hawaii law to support its argument and as FFIC argues, this case is inapposite.  In Allstate Insurance Co. v. Davis, this Court considered an insurer's duty to defend and indemnify an insured for claims arising out of an alleged assault.  430 F. Supp. 2d 1112, 1119 (D. Haw. 2006).  With respect to its consideration of the duty to indemnify, the Court noted that it should consider "whether actual liability of the insured may be established at trial considering all available evidence."  Id. at 1127.  The Court proceeded to consider the criminal judgment in the underlying criminal case pursuant to a Hawaii Supreme Court decision finding criminal judgments admissible in certain circumstances.  Id.  Here, there was no trial, neither is there a document comparable to a criminal judgment nor is there any court finding for the Court to review.  Accordingly, Davis is inapplicable to the instant case.  The other cases cited by Safeway and HNB apply law from other jurisdictions outside the Ninth Circuit.  See Opp., at 13.

In contrast, FFIC cites to a federal district court case from the Central District of California for the proposition that "where a plaintiff has not alleged that the settlement involved matters outside those raised by the complaint, the court looks to the complaint to determine whether the insurer would have had a duty to indemnify such claims."  Archer W.

Contractors, LTD v. Liberty Mut. Fire Ins. Co., No. CV14-3041
DMG(MANx), 2015 WL 11004493, at *5 (C.D. Cal. Mar. 31, 2015)
(citing Horace Mann Ins. Co. v. Barbara B., 846 P.2d 792, 795
(Cal. 1993); Enron Oil Trading & Transp. Co. v. Underwriters of
Lloyd's of London Under Policy No. 552/020129100, 47 F. Supp. 2d
1152, 1161 (D. Mont. 1996), aff'd in part, rev'd in part sub
nom. Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co., 132
F.3d 526 (9th Cir. 1997); Texas Farmers Ins. Co. v. Lexington
Ins. Co., 380 F. App'x 604, 607 (9th Cir. 2010)).   FFIC argues
that Safeway and HNB have not alleged in the SACC that the
settlement was based on allegations other than those in the
Underlying Complaint.   Reply, at 4.

          Ninth Circuit cases holding that the facts underlying
the settlement agreement should be considered in determining the
duty to indemnify have made clear that the underlying complaint
remains relevant.   See, e.g., Enron Oil Trading, 132 F.3d at 529
(noting that insured would be entitled to prove that settlement
payment was attributable to certain covered claims present in
the underlying complaint).   Indeed, these cases seem to be
primarily concerned with whether claims raised in the underlying
complaint—which would provide insurance coverage—were
considered in settlement.   See id.; see also Texas Farmers, 380
F. App'x at 607 (noting that settlement documents demonstrated

that a covered claim pled in the underlying complaint was
included in the settlement).

Contrary to most of the above-cited cases, which
involved motions for summary judgment, this case is currently
before the Court on a Motion to Dismiss.  Because the Court is
ruling on a Motion to Dismiss, it would be inappropriate at this
point to consider most of the evidence submitted by Safeway and
HNB along with their Opposition to the Motion to Dismiss.
Accordingly, the Court has not considered most of these exhibits
in its Order.

### III. Breach of Contract Claim

FFIC argues that Safeway and HNB fail to state a claim
for breach of contract in Count I of the SACC, because the
claims in the Underlying Complaint are not for "occurrences" as
defined in the insurance policies and Hawaii and Ninth Circuit
precedent.  Mem. in Support of Motion to Dismiss ("Mem."), at 9-
10.  On this basis, FFIC claims that it owes no duty to
indemnify HNB for the stipulated judgment.  The Court agrees
insofar as the case is before the Court on a Motion to Dismiss.
Based on the limitations the Court is faced with reviewing the
case on a Motion to Dismiss, the Court finds that dismissal of
Count I of the SACC is appropriate.

The Policies provide coverage only for property damage
caused by an "occurrence," which is defined in relevant part, as

"an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  Kasbohm Decl. Ex. B, at 87, 112, Ex. C, at 425, 453.  Courts applying Hawaii law have consistently determined that claims arising out of alleged breaches of contract and warranties do not involve accidents or "occurrences" as defined in the Policies.

The Ninth Circuit, in addressing the coverage available under CGL policies in Hawaii, indicated its agreement with several cases from this district that found that "contract and contract-based tort claims are not within the scope of CGL policies."  Burlington Ins. Co. v. Oceanic Design & Const., Inc., 383 F.3d 940, 949 (9th Cir. 2004).  In Burlington, the insured construction company was sued, inter alia, for breach of contract, breach of express and implied warranties, and negligent and/or intentional infliction of emotional distress. Id. at 943.  The court affirmed the lower court's granting of summary judgment for the insurer on the basis that the claims at issue were not for "occurrences" as defined under the insurance policy at issue.  Id. at 948.

The court cited to a Hawaii Supreme Court decision which determined that "[i]n Hawaii, an occurrence 'cannot be the expected or reasonably foreseeable result of the insured's own intentional acts or omissions.'"  Id. (quoting Hawaiian Holiday Macadamia Nut Co. v. Indus. Indem. Co., 872 P.2d 230, 234 (Haw.

17

1994)).  The court stated that if the construction company

"breached its contractual duty by constructing a substandard

home, then facing a lawsuit for that breach is a reasonably

foreseeable result."  Id.  In this respect, the court cited with

agreement to a Ninth Circuit case outlining the rationale of a

CGL policy as follows:

> General liability policies . . . are not designed
> to provide contractors and developers with
> coverage against claims their work is inferior or
> defective.  The risk of replacing and repairing
> defective materials or poor workmanship has
> generally been considered a commercial risk which
> is not passed on to the liability insurer.
> Rather liability coverage comes into play when
> the insured's defective materials or work cause
> injury to property other than the insured's own
> work or products.

Id. (alteration in original) (quoting Anthem Elec., Inc. v. Pac.

Employers Ins. Co., 302 F.3d 1049, 1057 (9th Cir. 2002)).  The

court also noted that, "[a]llowing recovery for disputes between

parties in a contractual relationship over the quality of work

performed would convert [the] CGL policy into a professional

liability policy or a performance bond."  Id.

As the Policies at issue here, the insurance policy in

Burlington defined an "occurrence" as "an accident, including

continuous or repeated exposure to substantially the same

general harmful conditions."  Id. at 943.  The court concluded

that based on the contractual relationship between the

homeowners and the construction company at issue, the "claims

for breach of contract and breach of contract-related tort duties did not give rise to coverage within the scope of the policy." Id.

In Group Builders, Inc. v. Admiral Insurance Co., Hawaii's Intermediate Court of Appeals ("ICA"), relying on Burlington held that "under Hawaii law, construction defect claims do not constitute an 'occurrence' under a CGL policy." 231 P.3d 67, 73 (Haw. Ct. App. 2010). In Group Builders, a subcontractor was hired to install insulation, sealant, fireproofing, and metal wall framing for part of hotel that was under construction. Id. at 68. Approximately a year after the hotel was open to the public, mold growth was found in the hotel's guest rooms. Id. at 69. It was discovered that there were defects in the design and construction of the hotel which contributed to or caused the mold growth. Id. The ICA affirmed the trial court's ruling that the insurance company did not breach its duty to indemnify the construction company, holding that "breach of contract claims based on allegations of shoddy performance" and "tort-based claims, derivative of these breach of contract claims, are also not covered under CGL policies." Id. at 73-74.

This district court has continued to apply the reasoning set forth in Burlington and Group Builders to determine the scope of coverage under CGL policies under Hawaii

law.  Of particular relevance here, in a case between Nordic and

its insurer for coverage related to the same underlying action,

this district court found that Nordic's breach of contract

counterclaim against its insurer could not stand based on

Burlington, and accordingly granted the insurers' motion to

dismiss the breach of contract claim.  Illinois Nat. Ins. Co. v.

Nordic PCL Const., Inc., 870 F. Supp. 2d 1015, 1027, 1049 (D.

Haw. 2012).  The court held that the "claims asserted against

Nordic in the" underlying action "arise from Nordic's alleged

breach of construction contracts" and accordingly, "they are not

covered" under the relevant insurance policies.  Id. at 1028-29.

     As here, the policies at issue defined an "occurrence"

as "an accident, including continuous or repeated exposure to

substantially the same general harmful conditions."  Id. at

1023.  The court determined that the underlying claims for

breach of contract, breach of the covenant of good faith and

fair dealing, negligence, gross negligence, breach of express

and implied warranties, unjust enrichment, and negligent and

intentional misrepresentation were not for "occurrences" as

defined under the policies because the claims arose out of

Nordic's contractual relationships.  Id. at 1024, 1028-29; see

also Burlington Ins. Co. v. United Coatings Mfg. Co., 518 F.

Supp. 2d 1241, 1251-52 (D. Haw. 2007) (determining there was no

coverage under a CGL policy for damage to exterior walls,

windows, and parking lots caused by a paint product manufactured and sold by the insured as all underlying claims arose from the parties' contractual relationships); State Farm Fire & Cas. Co. v. GP West Inc., Civ. No. 15-00101 ACK-KSC, 2016 WL 3189187, at *11 (D. Haw. June 7, 2016) (denying coverage under a CGL policy for underlying breach of contract, breach of warranties, negligence, and intentional/negligent misrepresentation claims where claims stemmed from the contractual relationships and obligations of the insured subcontractor).

Safeway and HNB raise several arguments to attempt to distinguish the instant case from the rulings discussed above. First, Safeway and HNB claim that the instant case is distinguishable because there was no contract between "HNB and any other party." Opp., at 2. The Court is not persuaded by this argument.

In the first instance, the Underlying Complaint, which was the operative complaint at the time of the settlement, contradicts Safeway and HNB's argument. The Underlying Complaint alleges that HNB entered into contracts with Nordic and Cascade (a subcontractor on the project). UC ¶ 7. The Underlying Complaint more specifically provides that Nordic entered into a contract with HNB wherein HNB agreed to supply VersaFlex manufactured products and that HNB entered into a contract with Cascade also to aid in supplying VersaFlex

21

products.  UC ¶¶ 16, 17.  According to the Underlying Complaint,
the contracts between Nordic and HNB and Cascade and HNB
"incorporated by reference the terms and obligations of the
Construction Contract, and were entered into for the intended
benefit of Plaintiff [Safeway] and manifested an intent to
benefit Plaintiff [Safeway]."  Id. ¶ 18.  On this basis, the
Underlying Complaint alleged that Safeway was the "intended
third-party beneficiary of each of these agreements."  Id.

Moreover, Safeway and HNB acknowledge that the
"business transaction with HNB was reflected" in purchase orders
and invoices from HNB.  Opp., at 4.  Such purchase orders and
invoices may provide evidence of a contract under Hawaii law.
See Haw. Rev. Stat. § 490:2-204 ("A contract for sale of goods
may be made in any manner sufficient to show agreement,
including conduct by both parties which recognizes the existence
of such a contract."); Haw. Rev. Stat. § 490:2-207 ("Conduct by
both parties which recognizes the existence of a contract is
sufficient to establish a contract for sale although the
writings of the parties do not otherwise establish a
contract.").  Here, there is no dispute that HNB, serving as the
distributor of the VersaFlex products, actually did distribute
the products at issue, which were used for the construction of
the roof deck at the Safeway Kapahulu store.  Thus, the parties
conduct, including the use of invoices and purchase orders,

recognized the existence of a contract.  See Earl M. Jorgensen Co. v. Mark Const., Inc., 540 P.2d 978, 983 (Haw. Ct. App. 1975) (noting that use of a purchase order indicated acceptance on the part of the buyer "to bind the seller").

Even if there was no direct contract between Safeway and HNB, Safeway and HNB's argument fails.  In United Coatings, this district court rejected United Coatings' claim that the underlying state court action was not contract-based because there was no contract between United Coatings and the underlying plaintiff.  518 F. Supp. 2d at 1249 n.3.  For the construction project at issue, four Association of Apartment Owners (the "AOAO") contracted with Seal Tech, Inc. to repair and repaint several residential buildings.  Id. at 1244.  The project used Acrylad, a topcoat product manufactured by United Coatings that was represented by United Coatings to be 100% acrylic paint. Id.  Following the application of the Acrylad product, residents noticed "chalking and streaking of the exterior walls, streaking and dirtying of the windows, and chips of fallen paint in the parking lots."  Id. at 1245.

The AOAO filed suit against Seal Tech and United Coatings in state court asserting several counts including strict products liability, negligence, and breach of contract. Id.  United Coatings' insurance company filed a declaratory

action in this district court regarding its duty to defend or indemnify its insured in the underlying state court action.  Id.

United Coatings argued that the claims in the underlying complaint were not contract-based because there was no contract between United Coatings and the AOAO.  Id. 1249 n.3. The court found United Coatings' argument unavailing given that "[t]he AOAO was the intended and known third-party beneficiary to the contract and warranties between United Coatings and Sealtech."  Id.  The court explained:

> As such, the AOAO has standing to sue for breach of those contracts and warranties.  See, e.g., Ass'n of Apartment Owners of Newton Meadows, 167 P.3d [225,] 262-65 [Haw. 2007] (discussing third party beneficiary status and right to sue); Ontai v. Straub Clinic & Hospital, Inc., 66 Haw. 237, 249-52, 659 P.2d 734, 743 (1983) (finding that patient could bring action as a third party beneficiary of an implied warranty between the manufacturer of an X-ray table and the Straub hospital). HRS § 490:2-318 states:

>> Third party beneficiaries of warranties express or implied.  A seller's warranty whether express or implied extends to any person who may reasonably be expected to use, consume or be affected by the goods and who is injured by breach of the warranty. A seller may not exclude or limit the operation of this section with respect to injury to the person of an individual to whom the warranty extends.

> HRS § 490:2-318 is based on the Uniform Commercial Code ("UCC") § 2-318.  The 1962 official comments to UCC § 2-318 explain that "[t]he purpose of this section is to give the

buyer's family, household and guests the benefit
of the same warranty which the buyer received in
the contract of sale, thereby freeing any such
beneficiaries from any technical rules as to
'privity.'"

Id.

As in United Coatings, here, Safeway was the "intended

third-party beneficiary" of the contracts between the

subcontractors and vendors at issue, including HNB.  See UC

¶ 18.  And, at the least, the contracts between the

subcontractors involved in the project and HNB contained implied

warranties.  See, e.g., Ontai, 659 P.2d at 744 ("The implied

warranty of merchantability is perhaps the broadest warranty in

the Uniform Commercial Code.  This warranty is implied by

operation of law into every sale of goods by a merchant seller.

Merchantability, as provided in Hawaii's statute, means, *inter*

*alia*, that the goods 'are fit for the ordinary purpose for which

such goods are used.'" (footnote omitted) (citations omitted)).

Accordingly, as in United Coatings, that there was no contract

between HNB and Safeway is of no moment.

Safeway and HNB's allegation that HNB had no contract

with anyone is also unpersuasive, as discussed above.  The Court

additionally notes its previous holding that "regardless of the

existence of an actual contract, allegations that stem directly

from contract-based or intentional acts are still not covered as

'occurrences' under insurance policies."  Allstate Ins. Co. v.

Riihimaki, Civ. No. 11-00529 ACK-BMK, 2012 WL 1983321, at *7 (D. Haw. May 30, 2012); see also State Farm Fire & Cas. Co. v. Lau, Civ. No. 06-00524 DAE-BMK, 2007 WL 1288153, at *5 (D. Haw. Apr. 30, 2007) (holding that regardless of the existence of a contract in the underlying suit, the allegations at issue were contract-based). Here, as discussed more fully below, all of the claims against HNB are contract-based.

The Court also rejects Safeway and HNB's attempt to distinguish the instant case based on its claim that HNB "performed no work on the Safeway project." Opp., at 15 (emphasis omitted). This claim is belied by the allegations raised in both the Underlying Complaint and the SACC, which demonstrate that HNB directly influenced the design of the project. The SACC, for instance, alleges that Timothy Lyons, an HNB employee "interfaced directly with Safeway"; that HNB "represented to Safeway" that the VersaFlex products were suitable "for this intended use" and also "preferable to the waterproofing system Safeway was planning to use"; and that Mr. Lyons along with VersaFlex had an integral role in causing Safeway to delete the aliphatic top coat, which Safeway claimed contributed to its damages. SACC ¶¶ 18-25. The Underlying Complaint contains similar allegations regarding the representations made by HNB, which influenced the project. UC ¶¶ 20-26, 28-30.

Given the Court's rejection of the aforementioned arguments raised by Safeway and HNB and following the law of Burlington and the other cases from this district, the Court finds that the underlying claims for breach of contract, breach of the covenant of good faith and fair dealing, and breach of implied warranties are all contract-based claims and as such, are not covered by the Policies.[3]  See United Coatings, 518 F. Supp. 2d at 1251 (noting that breach of contract and breach of warranties claims "clearly stem from United Coatings' contracts and warranties"); Nordic, 870 F. Supp. 2d at 1024, 1031 (finding that underlying claims for, *inter alia*, breach of contract, breach of the covenant of good faith and fair dealing, and breach of express and implied warranties, arose from contractual relationships and were not "occurrences").  The Court considers

---

[3]  Safeway and HNB do not argue that Act 83, passed by the Hawaii legislature in 2011 changes the result here.  The Court notes that House Bill 924, which eventually was passed by the legislature as Act 83, criticized Group Builders.  See H.B. 924 § 1.  Act 83, in turn, provided that for liability insurance policies, "the meaning of the term 'occurrence' shall be construed in accordance with the law as it existed at the time the insurance policy was issued."  Haw. Rev. Stat. § 431:1-217(a).

   Here, the relevant policies were issued after the Ninth Circuit's decision in Burlington.  "Thus, an 'occurrence' under the [] policies is properly interpreted to exclude coverage for contract and contract-based tort claims."  GP West, 2016 WL 3189187, at *10.  Moreover, as this district court has previously recognized, "no court has criticized Group Builders—or Burlington, the case upon which Group Builders so heavily relied—in the six years since the decision was rendered and the five years since the enactment of Act 83."  Id.

the additional claims raised in the underlying complaint below as well as Safeway and HNB's argument regarding the product defects claim.

### A. Negligence Claims and Intentional Misrepresentation/Fraudulent Concealment Claim

The Underlying Complaint includes claims for negligence and gross negligence, negligent misrepresentation and/or omission, intentional misrepresentation and/or fraudulent concealment, and negligent design and manufacture.  "[T]he relevant inquiry is whether these claims are 'premised on a contractual relationship or are based on an independent tort claim under state law.'"  GP West, 2016 WL 3189187, at *11 (quoting United Coatings, 518 F. Supp. 2d at 1251).

The negligence and gross negligence claims allege that the defendants, including HNB, "owed to Plaintiff in connection with their work on the Project a duty to perform work and provide products free from defects, in accordance with the Construction Contract, the Subcontractor/Vendor Agreements . . . and/or accepted practices and applicable industry standards . . . and in accordance with all laws, codes, and regulations applicable to such work and services."  UC ¶ 64.  Thus, these claims clearly arose from HNB's alleged contracts and warranties.  See GP West, 2016 WL 3189187, at *12 ("Here, any duty that Defendants had to 'perform all work and provide all

28

services in accordance with the state and local statutes, ordinances, and regulations,' arose out of the parties' contract and subcontract to construct the MVC Building and install the HVAC system."); <u>Nordic</u>, 870 F. Supp. 2d at 1024, 1027-32 (finding the same underlying claims for negligence and gross negligence were contract-based).

The negligent misrepresentation claim and the negligent design and manufacture claims rely on allegations that the VersaFlex product did not perform as promised by the representations and warranties made by HNB and the other defendants and on HNB and VersaFlex's related "actions and/or omissions." <u>See</u> UC ¶ 78-82; 120-23, 125. The Underlying Complaint also alleges that in the relevant subcontractor and vendor agreements between HNB and the other parties, HNB "agreed to provide quality products . . . free from defects and as represented or advertised, and in strict conformance with the Construction Contract . . . in accordance with accepted practices . . . including adherence to all laws, codes, and regulations applicable to such work." <u>Id.</u> ¶ 19. As such, the claims rely on the underlying contract or warranties and are therefore not covered under the Policies. <u>See</u> <u>GP West</u>, 2016 WL at *11 (holding negligent misrepresentation claim not covered under the CGL policy because it was contractually-based); <u>Nordic</u>, 870 F. Supp. 2d at 1024, 1027-32 (finding the same

29

underlying claim for negligent misrepresentation was contract-based); United Coatings, 518 F. Supp. 2d at 1251 ("Because the AOAO's claim for negligent misrepresentation depends upon the existence of United Coatings' underlying contract, contract of sale, or warranties, the claim for negligent misrepresentation is contract-based.").

Finally, the intentional misrepresentation/fraudulent concealment claim relies on intentional conduct, and therefore, "any resulting injury was not caused by an 'accident' and is therefore outside the coverage of the" Policies.  United Coatings, 518 F. Supp. 2d at 1251 n.6 (citing Hawaiian Holiday Macadamia Nut Co., 872 P.3d at 234); see also Nordic, 870 F. Supp. 2d at 1024, 1027-32 (finding the same underlying claim for intentional misrepresentation/fraudulent concealment was not covered under the relevant insurance policies).

### B. Unjust Enrichment Claim

The Court similarly finds that the Policies do not cover Safeway's underlying claim for unjust enrichment because the claim relies on HNB's contractual relationships.  With respect to the claim for unjust enrichment, the Underlying Complaint provides that "[t]he money paid by Plaintiff under the Construction Contract to Nordic inured to the benefit of all Defendants" and that "[t]he money was paid with the reasonable expectation that Nordic and its subcontractors and vendors would

perform their work and supply their products free of material
defects" but the defendants failed to do so.  UC ¶¶ 74-75.  This
claim explicitly relies on the existence of the alleged
contracts and subcontracts at issue.  See Nautilus Ins. Co. v. 3
Builders, Inc., 955 F. Supp. 2d 1121, 1124, 1134-37 (D. Haw.
2013) (finding underlying claim for unjust enrichment against
contractor arose from the contract or from the contractual
relationships between the relevant parties); Nordic, 870 F.
Supp. 2d at 1024, 1027-32 (finding that the same underlying
claim for unjust enrichment was contract-based).

### C. Product Defects Claim

Safeway and HNB additionally attempt to distinguish
the instant case based on the Underlying Complaint's product
defect claim.  In this respect, Safeway and HNB claim that
Hawaii law recognizes coverage under CGL policies for defective
product tort claims.  Opp., at 14.

In United Coatings, this district court considered
whether a strict product liability claim in the underlying
complaint arose from the product manufacturer's contracts and
warranties.  As discussed above, United Coatings concerned
underlying claims regarding Acrylad, a topcoat paint product
manufactured by United Coatings.  518 F. Supp. 2d at 1244-45.
The underlying complaint alleged that United Coatings was
strictly liable "because it manufactured and sold a defective

31

product which resulted in harm to the exterior walls, windows, and parking lots" of the residential buildings at issue.  Id. at 1251-52.

The court recognized that strict product liability claims are typically tort-based.  Id. at 1252.  However, the court found that rather than asserting a claim that Acrylad was inherently defective or defective per se, the underlying plaintiff alleged that "Acrylad was unsuited for the purpose for which it was purchased and that the composition of the paint was not as represented or warranted."  Id.  The court noted that the underlying action was "clearly premised on the representations made that this specific paint was a 100% acrylic emulsion when in fact it was not."  Id. n.8.  The court further stated: "In other words, the paint was purchased *because* it was supposedly 100% acrylic.  And *because* it was not 100% acrylic (according to the AOAO State Action), damage resulted."  Id.  Because the claim was premised on the representations made by the insured regarding the paint product, the court determined that the strict product liability claim was "a contract or warranty-based claim."  Id. at 1252.

The Court finds the reasoning in <u>United Coatings</u> applicable in the instant case.[4]  Here, rather than alleging an inherent defect in the product, the product defects claim is premised on misrepresentations made by HNB regarding the VersaFlex products.  Indeed, the product defects claim in the Underlying Complaint references the express and implied warranties made by VersaFlex and HNB regarding the products as well as the misrepresentations and/or omissions made by VersaFlex and HNB "regarding the quality, performing capabilities, and useful life of their products."  UC ¶¶ 110-12, 116.  Moreover, the factual allegations in the Underlying Complaint focus on representations made by HNB that the VersaFlex products were appropriate "for their intended use or purpose in connection" with the Safeway Project and that the products would "perform as intended" notwithstanding Hawaii's UV exposure.  UC ¶¶ 20-21.  The Underlying Complaint further provides that Safeway chose to use the VersaFlex products based on VersaFlex and HNB's representations.  UC ¶ 22.  The SACC similarly alleges that Safeway elected to use the VersaFlex

---

[4] As FFIC points out, Safeway and HNB are incorrect in arguing that <u>United Coatings</u> did not involve damage to property "other than to the paint itself."  Opp., at 21.  As noted above, in <u>United Coatings</u>, the underlying complaint alleged that the Acrylad damaged the exterior walls, windows, and parking lots of the residential buildings at issue.  518 F. Supp. 2d at 1251-52.

33

products based on representations by VersaFlex and HNB that the products were suitable for the project.  SACC ¶¶ 19, 21.

The Underlying Complaint additionally alleges that representations by HNB regarding the deletion of the aliphatic top coat contributed to Safeway's damages.  UC ¶¶ 27-30.  It further states that HNB and VersaFlex represented that the deletion of the aliphatic top coat would not "impair[] or reduc[e] the integrity of the VersaFlex Coating System" and that HNB and VersaFlex failed to inform Safeway that the deletion of the aliphatic top coat would increase exposure to UV rays.  Id. ¶¶ 27, 29.  The SACC contains similar allegations.  SACC ¶¶ 22-25.

Accordingly, as in United Coatings, because the product defect claim is premised on the representations and warranties made regarding the VersaFlex products, the Court finds that the claim is contract or warranty-based.  As in United Coatings, the VersaFlex products were chosen by Safeway specifically because of the representations made by HNB and VersaFlex.  Here, as in United Coatings, the focus of the Underlying Complaint is on claims that the product would perform as represented and was appropriate for its intended use, i.e., the Safeway project.  Accordingly, the claim depends on HNB's "contracts, contracts of sale, warranties or representations." United Coatings, 518 F. Supp. 2d at 1252.

34

The Court reiterates that given that it is considering a Motion to Dismiss, and for the foregoing reasons, the Court finds that none of the claims in the Underlying Complaint arise from a covered "occurrence" as defined under the Policies. Accordingly, the Court concludes that none of the claims are covered by the Policies and FFIC did not breach its contract by not providing coverage for these claims.[5]  On this basis, the Court DISMISSES WITHOUT PREJUDICE and with leave to amend Count I: Breach of Contract in the SACC to the extent the claim relies on such a breach.[6]

---

[5] Safeway and HNB do not argue that the underlying claims are covered by the products-completed operations hazard ("PCOH") provisions in the underlying policies.  In any event, this district court has found that the existence of PCOH coverage "does not obviate the requirement that coverage for such claims arise from an 'occurrence.'"  GP West, 2016 WL 3189187, at *14; see also Illinois Nat'l Ins. Co. v. Nordic PCL Const., Inc., Civ. No. 11-00515 SOM-KSC, 2012 WL 5386609, at *12-13 (D. Haw. Oct. 31, 2012).

[6] The Court notes that Count I of the SACC also appears to raise a claim for breach of the implied covenant of good faith and fair dealing.  See SACC ¶ 76.  To the extent Safeway and HNB wish to maintain such a claim, it should be repled as a separate claim in an amended complaint.

## IV.  **Equitable Estoppel**[7]

HNB and Safeway argue in their Opposition that FFIC
should be estopped from claiming that there is no insurance
coverage under its policies "when, for six years, FFIC
internally concluded and also represented to HNB that there was
coverage under the policies at issue." Opp., at 28.  In its
Reply, FFIC argues that the facts in the SACC do not provide a
basis for HNB and Safeway's estoppel claim.  Reply, at 12-14.

It appears that estoppel has not been sufficiently
alleged in the SACC.  The Court notes that given that this case
is before the Court on a Motion to Dismiss, the Court's
consideration of most of the exhibits submitted by Safeway and
HNB—some of which may be relevant to the issue of estoppel—is
precluded.

The Hawaii Supreme Court has recognized that in the
insurance context, a party "invoking equitable estoppel must
show that 'he or she has detrimentally relied on the
representation or conduct of the person sought to be estopped,
*and* that such reliance was reasonable.'"  AIG Hawaii Ins. Co. v.

---

[7] The Court notes that the Motion to Dismiss did not request
that any claim for estoppel be dismissed, nor was a claim for
estoppel specifically pled as a numbered counterclaim in the
SACC.  Nonetheless, as the parties have addressed the issue in
their briefings, the Court finds it appropriate to consider the
claim in its Order, although the Court will not issue a ruling
on it.

Smith, 891 P.2d 261, 266 (Haw. 1995) (quoting Doherty v.

Hartford Ins. Group, 574 P.2d 132, 134-35 (Haw. 1978)).  The

court also recognized, however, that the requirement of

detrimental reliance "may be dispensed with in order to prevent

manifest injustice."  Id.; see also Delmonte v. State Farm Fire

& Cas. Co., 975 P.2d 1159, 1170 (Haw. 1999), as amended (Mar.

15, 1999).

　　　The Hawaii Supreme Court has also stated the following

with respect to an insurer's change of position regarding

coverage:

> [E]stoppel is particularly appropriate where the
> insurer, either directly or through an agent,
> . . . admits coverage under a policy of insurance,
> yet later denies coverage.  However, where the
> insurer maintains the position that it will not
> defend an insured because there is no coverage
> under a policy, estoppel should not apply because
> the insurer has not changed its position
> regarding whether it would cover its insured,
> and, therefore, the insured has not relied on any
> of the insurer's representations to his or her
> detriment.

Enoka v. AIG Hawaii Ins. Co., 128 P.3d 850, 870 (Haw. 2006)

(second alteration in original) (emphasis omitted) (quoting

State Farm Mut. Auto. Ins. Co. v. GTE Hawaiian Telephone Co.,

915 P.2d 1336, 1344 (1996)), as corrected (Feb. 28, 2006).

　　　Here, in order to maintain a claim for estoppel,

Safeway and HNB must demonstrate that HNB either detrimentally

relied on a representation from FFIC regarding coverage or that

manifest injustice would result if FFIC were allowed to deny coverage.  As FFIC points out, Safeway and HNB's arguments regarding estoppel in their Opposition do not make reference to facts or claims alleged in the SACC.

The SACC, under its claims for relief request that the Court grant "equitable estoppel to enforce the promises made by the Insurers." SACC, at 31.  The SACC's bad faith claim (Count II) also states that "[t]he Insurers should be estopped from disclaiming coverage for the claims against HNB arising from the sale, services, promotion and distribution of the construction-related products at issue in the Lawsuit." Id. ¶ 85.  However, the SACC does not refer to the requirements of detrimental reliance or manifest injustice, nor does it sufficiently allege facts supporting these factors.[8]

Again, it appears that the SACC lacks clarity with respect to its claim for estoppel and fails to sufficiently allege facts supporting its claim.  See Illinois Nat. Ins. Co. v. Nordic PCL Const., Inc., Civ. No. 11-00515 SOM-KSC, 2013 WL 3975668, at *9 (D. Haw. July 31, 2013) (dismissing insured's claim for estoppel related to the insurers "promise[] that 'the

_____

[8] The Court notes that Count III of the SACC (Negligent Misrepresentation and Omission) alleges that "HNB reasonably relied on the false information supplied by and omissions of material information made by the Insurers." SACC ¶ 104.  This claim does not mention estoppel, however, nor does it allege detrimental reliance.

Policies would provide coverage for property damage claims arising out of construction defects'" "given its lack of clarity"); <u>California Dairies Inc. v. RSUI Indem. Co.</u>, 617 F. Supp. 2d 1023, 1047-48 (E.D. Cal. 2009) (allowing insured to amend estoppel claim based on assertion of exclusion to insurance coverage "not mentioned in the insurer's final denial of coverage letter" where complaint did not contain allegations relevant to detrimental reliance).

## V.  Reformation Claim

FFIC argues that Safeway and HNB's reformation claim should be dismissed for failure to plead with sufficient particularity.  Mem., at 20.  The Court agrees.

In their reformation claim, Safeway and HNB state that, "Under Hawaii law, relief through reformation may be had when a written instrument does not, through mutual mistake, conform to the intention of the parties' instrument."  SACC ¶ 110; <u>see also</u> <u>State v. Kahua Ranch, Ltd.</u>, 384 P.2d 581, 585 (Haw. 1963) ("[R]eformation may be had when the written instrument does not, through a mutual mistake of fact, conform to the intention of the parties to the instrument.").  The SACC further alleges that at the time the insurance policies were procured by HNB, HNB and FFIC "mutually intended" that the policies "would provide coverage for property damage claims arising out of construction-related product defects and related

39

claims" and that "to the extent" that they "believed that the language" in the policies reflected this intention, they were "mutually mistaken." Id. ¶¶ 111, 113. On this basis, HNB and Safeway argue that "[t]he Court should reform the language contained in the Policies conform to the mutual intention of the parties." Id. ¶ 115.

Where a party alleges fraud or mistake, the Federal Rules of Civil Procedure require a heightened pleading standard. In particular, Rule(b) requires that, "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The Ninth Circuit has held that "[t]o satisfy Rule 9(b), a pleading must identify 'the who, what, when, where, and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent] statement, and why it is false.'" Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 (9th Cir. 2011) (alteration in original) (quoting Ebeid ex rel. United States v. Lungwitz, 616 F.3d 993, 998 (9th Cir. 2010)); see also Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007) ("To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just

deny that they have done anything wrong." (quoting <u>Bly-Magee v. California</u>, 236 F.3d 1014, 1019 (9th Cir. 2001))).

Here, the SACC fails to meet this heightened pleading standard. For example, the SACC fails to plead facts regarding who at FFIC was mistaken about the scope of the policies' coverage and when and how such facts regarding the mutual mistake arose. The SACC also fails to include details of any statements or representations made by FFIC regarding its alleged mistake. Again, Safeway and HNB attach several exhibits to their Opposition some of which appear to be relevant to their claim of mutual mistake. However, the Court reiterates that in the context of a Motion to Dismiss, the Court is precluded from considering most of the exhibits provided by Safeway and HNB.[9]

In their Opposition, HNB and Safeway point to allegations in the SACC that Douglas Moore, HNB's insurance agent, met with HNB's President and CEO, William Hayes, III on several occasions to discuss HNB's insurance needs and that Mr. Hayes during these meetings discussed his insurance needs and expectations. Opp., at 30 (citing SACC ¶¶ 37-52). However, Safeway and HNB do not point to any allegations in the SACC

---

[9] The Court acknowledges that it could potentially consider the reservation of rights letters, as they were referenced in the SACC. One of the reservation of right letters references the possibility of partial coverage under the Policies. Pavey Decl. Ex. Q. However, consideration of this letter does not cure the pleading deficiencies related to the reformation claim.

regarding Moore's communications with FFIC (nor are there any specific allegations as to such communications in the SACC). Because mutual mistake requires both sides to be mistaken regarding a fact, the allegations regarding Moore are insufficient.

Notably, Safeway and HNB cite to a case from the Eastern District of Philadelphia which included a reformation claim alleging mutual mistake regarding coverage available under an insurance policy.  See Asbury Auto. Grp. LLC v. Chrysler Ins. Co., No. 01-3319, 2002 WL 15925, at *2 (E.D. Pa. Jan. 7, 2002). In that case, the court determined that mutual mistake had been pled with sufficient particularity where the complaint alleged that at a meeting that took place "from February 10 to February 11, 1999, in Jacksonville, Florida, Bill Koehane, a representative of defendant [insurance company], informed plaintiff that the excess umbrella policy would cover all of the areas of liability that were covered by the primary policy, which included [employment practices liability] EPL." Id.  The complaint further alleged that plaintiff insured later found out "that the excess umbrella policy did not cover EPL as it had been led to believe." Id.

In Asbury, in contrast to the SACC in the instant case, the complaint stated specific facts regarding a meeting with a representative of the insurance company in which a

statement made by said representative evinced the mutual mistake of the parties regarding coverage.  Here, the SACC is devoid of such specific allegations.[10]  Accordingly, and for the reasons discussed above, the Court DISMISSES the reformation claim WITHOUT PREJUDICE and with leave to amend.  See Rymal v. Bank of Am., Civ. No. 10-00280 DAE-BMK, 2011 WL 6100979, at *7 (D. Haw. Dec. 6, 2011) (dismissing claim for mutual mistake where claims were insufficiently pled pursuant to Fed. R. Civ. P. 9(b)).

The Court notes that FFIC additionally argues that the reformation claim should be dismissed based on the SACC's failure to plead in the alternative.  Mem., at 20-21. Specifically, the negligent misrepresentation claim in the SACC alleges that FFIC at the time it issued the Policies "intended to later rely on Burlington's 'occurrence' analysis to deny coverage for the sorts of property damage claims that it knew or should have known that HNB expected and understood were covered under the Policies."  SACC ¶ 100.  However, in the reformation claim, the SACC alleges that "HNB and the Insurers mutually intended at the time the Policies were procured that the

---

[10] Safeway and HNB state that in Nordic, the court found a reformation claim adequately pled based on similar allegations to those made in the SACC at issue here.  Opp., at 30 (citing Nordic PCL Const., Inc., 2013 WL 3975668, at *9).  The Court notes that in Nordic, the court did not elaborate on its ruling other than stating that it "consider[ed] the alleged mistake to have been sufficiently pled."  Id.  The Court is not bound to follow this ruling in the instant case.

Policies would provide coverage for property damage claims arising out of construction-related product defects and related claims." SACC ¶ 111. The reformation claim also incorporated all "allegations contained in the foregoing paragraphs as if fully stated or set forth herein." SACC ¶ 109.

The allegations cited above from the negligent misrepresentation claim and the reformation claim are inconsistent. The Federal Rules of Civil Procedure allow parties to plead inconsistent claims in the alternative. See Fed. R. Civ. P. 8(d). However, rather than incorporate inconsistent allegations into the same cause of action as was done here, the complaint should make clear that the inconsistent allegations are being pled in the alternative. See Maloney v. Scottsdale Ins. Co., 256 F. App'x 29, 31-32 (9th Cir. 2007). Safeway and HNB should so clarify in any amended claim for reformation.

## CONCLUSION

For the foregoing reasons, the Court GRANTS FFIC's Motion to Dismiss. The Court GRANTS FFIC's Motion to Dismiss Count I: Breach of Contract of the SACC WITHOUT PREJUDICE and with leave to amend and GRANTS the Motion to Dismiss Count IV: Reformation WITHOUT PREJUDICE and with leave to amend.

Safeway and HNB must file any amended complaint within thirty days of the entry of this Order.  Any amended complaint must correct the deficiencies noted in this Order.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, December 16, 2016.


_____
Alan C. Kay
Sr. United States District Judge


American Automobile Insurance Company, et al. v. Hawaii Nut & Bolt, Inc., et al., Civ. No. 15-00245 ACK-KSC Order Granting Plaintiffs American Automobile Insurance Company's and National Surety Corporation's Motion to Dismiss Breach of Contract and Reformation Counterclaims in Second Amended Counterclaim