IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| AMERICAN AUTOMOBILE INSURANCE COMPANY, a Missouri corporation; NATIONAL SURETY CORPORATION, a Illinois corporation, | CIVIL NO. CV15-00245 ACK-KSC<br><br>MEMORANDUM IN SUPPORT OF MOTION |
| Plaintiffs, | |
| vs. | |
| HAWAII NUT & BOLT, INC. and SAFEWAY INC., | |
| Defendants. | |
| SAFEWAY INC.; HAWAII NUT & BOLT, INC., | |
| Counterclaim Plaintiffs, | |
| vs. | |
| AMERICAN AUTOMOBILE INSURANCE COMPANY, a Missouri corporation; NATIONAL SURETY CORPORATION, a Illinois corporation, | |
| Counterclaim Defendants, | |
| and | |
| DOUGLAS MOORE, MONARCH INSURANCE SERVICES, INC., a Hawaii corporation, and INSURANCE ASSOCIATES, INC., a Hawaii corporation, | |
| Additional Counterclaim Defendants. | |

# **TABLE OF CONTENTS**

I.     INTRODUCTION..................................................................1

II.    THE UNDISPUTED FACTS.................................................2

III.   SUMMARY JUDGMENT STANDARD.....................................4

IV.    ARGUMENT......................................................................7

      A.    Hawai'i law recognizes no legal duty to anticipate a change or
            shift in an unsettled area of law..............................................7

      B.    Moore could not owe a duty to anticipate a change in insurance
            law that occurred subsequent to the policy periods at issue...........13

      C.    Safeway and HNB cannot allege any facts that demonstrate
            that Moore owed a duty to anticipate a change in coverage
            interpretation...................................................................14

      D.    Attorneys' fees are not recoverable on the breach of
            contract claim..................................................................16

      E.    Damages recoverable on the breach of contract claim are
            limited to those incidental to the contract..............................19

V.     CONCLUSION.................................................................24

# TABLE OF AUTHORITIES

## CASES

*Amfac, Inc. v. Waikiki Beachcomber Inv. Co.*, 74 Haw. 85,
839 P.2d 10 (1992) ..................................................................19

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .......................................5, 6

*Ass'n of Apartment Owners of Newtown Meadows ex rel. Bd. of Directors v.
Venture 15, Inc.*, 115 Hawai'i 232, 167 P.3d 225 (2007) ...........................22

*In re Barboza*, 545 F.3d 702 (9th Cir. 2008) .........................................................6

*Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252 (9th Cir. 1999) ...............5

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ......................................................5

*Cox v. Geary*, 624 S.E.2d 16 (2006) ....................................................................11

*Durette v. Aloha Plastic Recycling, Inc.*, 105 Hawai'i 490, 100 P.3d
60 (2004) ..................................................................18

*Eastman v. McGowan*, 86 Hawaii 21, 31, 946 P.2d 1317 (1997) .......................17

*Evergreen Eng'rg, Inc. v. Green Energy Team LLC*, 884 F. Supp.
2d 1049 (D. Haw. 2012) ..................................................................17

*Francis v. Lee Enter., Inc.*, 89 Hawai'i 234, 971 P.2d 707 (1999) .....................20

*Group Builders, Inc. v. Admiral Insurance Co.*, 123 Hawai'i 142,
231 P.3d 67 (App. 2010) ......................................................4, 7, 12, 13, 14

*Healy-Tibbitts Constr. Co. v. Hawaiian Independent Refinery, Inc.*,
673 F.2d 284 (9th Cir. 1982) ..................................................................19

*Hough v. Pac. Ins. Co.*, 83 Hawai'i 457, 927 P.2d 858 (1996) ...........................23

*Hunt v. First Ins. Co. of Haw., Ltd.*, 82 Hawai'i 363, 922 P.2d 976
(App. 1996) ..................................................................22

*Jespersen v. Harrah's Operating Co.*, 392 F.3d 1076 (9th Cir. 2004) .................5

*Jou v. Dai–Tokyo Royal State Ins. Co.*, 116 Hawai'i 159, 172 P.3d
    471 (2007) ......................................................................22, 23

*Kemp v. State of Hawaii Child Support Enforcement Agency*,
    111 Hawai'i 367, 141 P.3d 1014 (2006) ....................................18

*In re Kirkland*, 915 F.2d 1236 (9th Cir. 1990) ........................................6

*Otani v. State Farm Fire & Cas. Co.*, 927 F.Supp. 1330 (D. Haw. 1996) ..........18

*Macabio v. TIG Insurance Co.*, 87 Hawai'i 307, 955 P.2d 100 (1998) .....8, 10, 15

*Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574 (1986) ..................5, 6

*Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121 (9th Cir. 2008) ......6

*Quality Furniture, Inc. v. Hay*, 61 Haw. 89, 595 P.2d 1066 (1979) ......................8

*Takahashi v. Loomis Armored Car Serv.*, 625 F.2d 314 (9th Cir. 1980) ..............6

*S. Utsunomiya Enters. v. Moomuku Country Club*, 76 Hawai'i 396,
    879 P.2d 501 (1994) ........................................................17, 18

*Schulz v. Honsador, Inc.*, 67 Haw. 433, 690 P.2d 279 (1984) ...........................19

*Siopes v. Kaiser Found. Health Plan, Inc.*, 130 Hawai'i 437,
    312 P.3d 869 (Sept. 26, 2013) ................................................22

*Smith v. McLaughlin*, 769 S.E.2d 7 (Va. 2015) ...................................10

*Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978 (9th Cir. 2007) ........................5

*Uyemura v. Wick,* 57 Haw. 102, 551 P.2d 171 (1976) .........................................16

## **RULES**

Fed. R. Civ. P. 56(a) ....................................................................5

## **STATUTES**

HRS § 431:10C-301 ....................................................................9

HRS § 431:10C-301(c) ................................................................9

HRS § 607-14 ...............................................................16, 17, 19

## **OTHER**

Black's Law Dictionary 1199 (6th ed. 1990) .......................................22

Restatement (Second) of Contracts § 302 (1981) ..................................23

17 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance 3d*
  § 241:25 at 241–34 (2000) .......................................................22

Virginia Code § 8.01-35.1 ..........................................................11

## MEMORANDUM IN SUPPORT OF MOTION

### I.      INTRODUCTION

This case arises out of defects related to the construction of the Safeway store on Kapahulu Avenue, Honolulu, Hawai'i (the "Project").  Counterclaim Plaintiffs SAFEWAY, INC. ("Safeway") and HAWAII NUT & BOLT, INC. ("HNB") (collectively "Counterclaim Plaintiffs") cannot establish a *prima facie* case for liability or an entitlement to recover attorneys' fees in this action against Counterclaim Defendants DOUGLAS MOORE ("Moore"), MONARCH INSURANCE SERVICES, INC.'s ("Monarch") and INSURANCE ASSOCIATES, INC. ("IAI") (collectively "Broker Defendants").

First, Safeway and HNB cannot establish that Broker Defendants owed an affirmative duty in procuring insurance for HNB to anticipate an unfavorable judicial precedent on an unsettled area of law or to take action to ensure coverage. Each of Counterclaim Plaintiffs' claims against Broker Defendants assumes this duty.  No such duty can be established here because the appellate decision Moore allegedly owed a duty to anticipate was issued after the expiration of the final policy alleged to respond to the loss at bar.  Thus, Moore could not have sought additional coverage based on the appellate decision.

Second, in the Third Amended Counterclaim [Dkt. No. 204] ("TAC"), Safeway asserts it may, if it proves malfeasance, collect uncompensated losses

from the Project including attorney's fees from the Broker Defendants.  However,

neither Safeway nor HNB are entitled to recover attorneys' fees because this is not

an action in the nature of assumpsit.  The requested attorneys' fees are not

incidental to an alleged contract or caused by a contractual breach.  Accordingly,

they may not be recovered, as a matter of law, under the undisputed facts here.

## II.    THE UNDISPUTED FACTS

HNB is a wholesale distributor of nuts, bolts and other hardware.  *See*

Broker Defendants' Concise Satement of Facts in Support of Motion for Summary

Judgment ("CSOF"), ¶ 1.  For more than fifteen (15) years, Douglas Moore, a

Honolulu-based insurance agent affiliated with Monarch, then IAI, assisted HNB

with its purchase of liability insurance.  CSOF ¶ 2.  Through Moore, HNB

purchased comprehensive general liability and excess liability policies that

included products liability coverage from Counterclaim Defendants American

Automobile Insurance Company and National Surety Corporation (collectively

"Fireman's Fund").   CSOF ¶ 3.   During the period relevant to the claims at issue,

Hayes believed that he was covered for liability claims that might be brought

against HNB and never requested an explanation of coverage interpretation or

sought to discuss the specific policy terms with Moore or the agencies that

employed him.  *See* CSOF ¶ 6; Ex. "2", at 218-19, 261-66.

2

According to the TAC, HNB sold components of a roof waterproofing system to Safeway for use in the Project.  CSOF ¶ 7.  Construction began in or around 2007.  *See* CSOF ¶ 9.  The roof deck that ultimately contained the components failed.  *See* CSOF ¶ 8, Ex. "3".  Safeway sued its general contractor and other entities involved in the Project, including HNB, for losses allegedly caused by the leaking roof deck ("the Underlying Action.").  *Id.*

Fireman's Fund provided a defense to HNB in the Underlying Action.  CSOF ¶ 10.  HNB retained Peter Knapman as defense counsel for the instant action and was responsible for paying his attorneys' fees.  CSOF ¶ 11.  Years of litigation ensued, and settlements were eventually reached among the various parties.  CSOF ¶ 14.  In early 2016, however, Safeway settled with HNB, the lone remaining defendant, for non-monetary relief.  CSOF ¶ 15; Ex. "4".  The settlement terms are set forth in the February 12, 2016 "Settlement and Mutual Release Agreement" between Safeway and HNB (the "Settlement Agreement").  *Id.*  HNB stipulated to a judgment for Safeway and assigned all of its claims against Broker Defendants to Safeway in exchange for a mutual release of liability and covenant not to execute the stipulated judgment.  CSOF ¶¶ 15-17; Ex. "4", "5".

Counterclaim Plaintiffs' claims against Broker Defendants rest on their claim that Douglas Moore, as HNB's insurance agent, failed to procure appropriate liability coverage for HNB when he brokered the following policies:  (1) CGL

3

policies from AAIC identified as AZC 80667751 with effective policy periods of May 1, 2005-May 1, 2006; May 1, 2006-May 1, 2007; May 1, 2007-May 1, 2008 with per occurrence limits of $1 million; (2) umbrella and excess liability policies with the same identification number and policy periods with limits of $5 million for each policy period; and (3) CGL policies from NSC identified as AZC 80828365 with effective policy periods of May 1, 2008-May 1, 2009 and May 1, 2009-May 1, 2010 with per occurrence limits of $1 million limits; and (4) umbrella and excess liability policies with the same identification number and policy periods with limits of $5 million for each policy period.  CSOF ¶ 4.  These primary and excess liability policies cover damages that arise from an "occurrence."  CSOF ¶ 5.

On May 19, 2010, the Intermediate Court of Appeals issued *Group Builders, Inc. v. Admiral Insurance Co.*, 123 Hawai'i 142, 231 P.3d 67 (App. 2010) ("*Group Builders*"), which decided issues pertaining to coverage under "occurrence" policies for construction defects claims.  CSOF ¶ 12.  Local insurers responded to *Group Builders* by making endorsements available confirming that occurrence policies would continue to cover certain property damage claims caused by negligent construction.  CSOF ¶ 13.

## III.   SUMMARY JUDGMENT STANDARD

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P.

4

56(a). Rule 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 323); *see also Jespersen v. Harrah's Operating Co.*, 392 F.3d 1076, 1079 (9th Cir. 2004). "When the moving party has carried its burden under Rule 56[(a)] its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586–87 (1986) (citation, internal quotation signals, and emphasis omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson*, 477 U.S. at 248). When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *see also Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn in his favor" (citations omitted)).

This case involves questions of state law. "When interpreting state law, a federal court is bound by the decision of the highest state court." *In re Kirkland*, 915 F.2d 1236, 1238 (9th Cir. 1990). "In the absence of controlling forum state law, a federal court sitting in diversity must use its own best judgment in predicting how the state's highest court would decide the case.... In so doing, a federal court may be aided by looking to well-reasoned decisions from other jurisdictions." *Takahashi v. Loomis Armored Car Serv.*, 625 F.2d 314, 316 (9th Cir. 1980) (citations omitted).

## IV. ARGUMENT

### A. Hawaiʻi law recognizes no legal duty to anticipate a change or shift in an unsettled area of law

The TAC raises claims against Broker Defendants for breach of contract, negligence, promissory estoppel, and breach of fiduciary duty for allegedly failing to procure appropriate liability coverage for HNB. All of Counterclaim Plaintiffs' claims against Broker Defendants rest on the theory that Broker Defendants had a legal duty to anticipate a change or shift in the law and should have acted to cure any resulting gaps in HNB's coverage. This argument is a logical fallacy.

The TAC alleges that HNB's insurer, Fireman's Fund, interpreted the policy term "occurrence" as providing product liability coverage for third-party property damage caused by a defective product and/or negligent construction work until 2010 when the Intermediate Court of Appeals ("ICA") issued its decision in *Group Builders, Inc. v. Admiral Insurance Co.*, 123 Hawaiʻi 142, 231 P.3d 67 (App. 2010) ("Group Builders"). TAC, ¶¶ 58-61. The TAC further alleges that Fireman's Fund changed its interpretation of the Policies to unilaterally eliminate product liability coverage for third-party property damage caused by negligent construction, and that Moore owed a duty to determine Fireman's Fund's position following *Group Builders* and take action to ensure HNB maintained its coverage. TAC, ¶ 68. However, the fact that Moore did not seek out Fireman's Fund's

7

interpretation of coverage is irrelevant to the outcome of this case because he did not owe a duty to so act.

In Hawaiʻi, "[a]n insurance agent owes a duty to the insured to exercise reasonable care, skill and diligence in carrying out the agent's duties in procuring insurance." *Quality Furniture, Inc. v. Hay*, 61 Haw. 89, 93, 595 P.2d 1066, 1068 (1979). This duty is owed to "the extent of the responsibilities that the agent had in rendering help and providing advice to the insured." *Macabio v. TIG Ins. Co.*, 87 Hawaiʻi 307, 318, 955 P.2d 100, 111 (1998) (quoting *Quality Furniture*, 61 Haw. at 93, 595 P.2d at 1068).

Hawaiʻi courts have not imposed a legal duty on an insurance agent to inform his or her clients of changes in the law. This is the particular situation addressed in *Macabio v. TIG Insurance Co.*, 87 Hawaiʻi 307, 955 P.2d 100 (1998). In that case, an insured sued his insurance agent for failing to advise him of the option to stack coverages under his motor vehicle insurance policy, which would have provided greater coverage in the event of an accident. The insured had been injured in a car accident and settled with the driver of the other car for $25,000, which was the driver's bodily injury policy limit. This amount did not cover the insured's medical bills, so he filed a claim with his insurance carrier for stacked underinsured motorist benefits under his automobile insurance policy. The insurer refused the claim because the insured's policy was unstacked.

8

At the time of the accident, HRS § 431:10C-301 prohibited stacking of uninsured and/or underinsured motorists, but permitted coverages to be stacked if the insured requested stacking. *See* HRS § 431:10C-301(c) (Supp. 1992) ("The stacking or aggregating of uninsured or underinsured motorist coverage, whichever is applicable, is prohibited. However, an insurer shall offer an option to stack uninsured motorist and underinsured motorist coverage, as applicable, in each no-fault policy whenever any policy is issued, delivered, or renewed."). A letter had been sent to the insured to inform him of the option, but the insured did not fill out the form to elect stacking because he had already paid his premium for the relevant period. 87 Hawaiʻi at 309-10, 955 P.2d at 102-03.

The insured filed a complaint against his carrier and insurance agent seeking a declaration that the policies obligated the carrier to provide stacking. *Id.* at 312, 955 P.2d at 105. The insured argued that according to the law in effect at the time of the accident, HRS § 431:10C-301, his carrier was required to offer the option to stack his coverage when he renewed his policies semi-annually and when he purchased an additional policy for another vehicle one month before the accident. *Id.* As to the agent, the insured argued that the agent breached his duty by failing to call and advise of the option to stack coverages despite knowing the policies were unstacked, and further breached this duty by failing to offer this option when he sold the insured the additional policy. *Id.* at 318, 955 P.2d at 111. The agent

9

filed for summary judgment on the breach of duty claims on the basis that "an insurance agent owes no duty to an insured to advise of available coverages, and that Hawai'i recognizes no legal duty to make unsolicited calls to clients." *Id.* The lower court granted summary judgment to the agent and the insured appealed. *Id.* at 311, 955 P.2d at 104.

The Hawai'i Supreme Court reviewed the nature of the relationship between the agent and insured, and explained that whether the agent owed a duty "to make an unsolicited call to the [insured] depends on whether [the agent] had made such calls in the past, so that the [insured] came to rely on [the agent] to inform them of changes in available coverages without their inquiry." *Id.* at 319, 955 P.2d at 112. The Court found "no evidence that the prior dealings between [the agent] and the [insured] created such reliance" where the agent took care of the insured's needs only when consulted, and affirmed the lower court's ruling for the agent on the breach of duty claims. *Id.* Thus, *Macabio* affirms that there is no duty to inform an insured of changes in the law where the law does not impose such a duty.

Moreover, other courts addressing the question of whether a duty is owed to anticipate a change in law have likewise ruled that a failure to correctly anticipate a judicial ruling on an unsettled legal issue does not constitute breach of the standard of care. In *Smith v. McLaughlin*, 769 S.E.2d 7 (Va. 2015), the Virginia Supreme Court determined that an attorney who advised his client based on the state of the

10

law at the time of the alleged negligence did not breach the duty owed to the client

so as to be liable for legal malpractice, by failing to correctly anticipate a judicial

ruling on an unsettled legal issue.

In that case, an attorney was retained to institute a legal malpractice action

against his client's former criminal defense attorneys.  In an underlying criminal

action, the client had been convicted for felony sexual abuse charges and was

incarcerated for over four years.  769 S.E.2d at 11.  The convictions were later

vacated, and the client was granted a new trial at which the jury found him not

guilty.  During the subsequent legal malpractice action against the client's former

criminal defense attorneys, the attorney advised his client to enter into a settlement

agreement with the criminal defense firm, believing that it released some but not

all of the co-defendants to the criminal malpractice claim under Virginia Code §

8.01-35.1, under the theory that legal malpractice defendants are "tort-feasors" as

that term was used therein.  *Id.*

Approximately four months after entry of the settlement agreement, the

Virginia Supreme Court issued an opinion in an unrelated case, ruling that Virginia

Code § 8.01-35.1 "did not apply to legal malpractice claims because 'although

legal malpractice [claims] sound in tort, it is the contract that gives rise to the

duty,' and thus a legal malpractice defendant is not a tortfeasor as '[t]he cause of

action . . . is one for breach of contract.'"  *Id.* at 15 (quoting *Cox v. Geary*, 624

11

S.E.2d 16, 22-23 (2006)).  Thus, the client's settlement agreement had released all of the legal malpractice co-defendants.  As a result, the client sued his attorney for legal malpractice, and a jury found the attorney liable for $5.75 million.

On appeal, the Virginia Supreme Court vacated the award, ruling that the jury incorrectly found the attorney to be negligent based on the theory that the attorney breached his duty by failing to correctly anticipate a subsequent court ruling on an unsettled legal issue.  *Id.* at 13.  Noting the nature of the unsettled legal issue, the court ultimately held that "if an attorney exercises a 'reasonable degree of care, skill, and dispatch' while acting in an unsettled area of the law, which is to be evaluated in the context of 'the state of the law at the time' of the alleged negligence, then the attorney does not breach the duty owed to the client." *Id.* at 14.  Thus, the failure to anticipate an appellate ruling did not, as a matter of law, constitute a breach of the duty of reasonable care.

In this case, *Group Builders* represented a major change in the interpretation of "occurrence"-based policies under state law.  *Group Builders* was the first state appellate decision on coverage for breach of contract claims under general liability policies in the construction context.  According to the TAC, the ICA "held that shoddy construction work did not qualify as an 'occurrence' that was insured under a CGL policy issued to the contractors and subcontractors who performed the shoddy work."  TAC, ¶ 59.  The TAC further alleges that CGL policies had

previously been understood as providing coverage to property damage caused by negligent construction, and that "[s]ubsequent to Group Builders most local insurance carriers issued endorsements confirming that this coverage would continue." TAC, ¶ 62; *accord id.*, ¶ 61.  As there is no duty to anticipate a judicial ruling on an unsettled legal issue, Safeway and HNB cannot establish that  Broker Defendants owed an affirmative duty to anticipate a change in the law.

### B.     Moore could not owe a duty to anticipate a change in insurance law that occurred subsequent to the policy periods at issue

In this case, the TAC alleges that insurance carriers issued endorsements after *Group Builders* to confirm that coverage for property damage caused by negligent construction would continue, and that Moore should have sought to procure such coverage for HNB via these endorsements or other insurance products.  TAC, ¶¶ 62, 80.  This argument is without merit as none of the Policies remained in effect when *Group Builders* was decided.  Thus, such endorsements could not have been obtained for expired insurance policies after the fact to provide coverage for the claims against HNB related to the Project.

*Group Builders* was issued on May 19, 2010, *after* the expiration of the final policy period at issue in this matter, which ended on May 1, 2010.  According to the allegations in the Underlying Action, construction on the Safeway store, from which the claims against HNB arose, began in 2007.  CSOF ¶ 9; Ex. "3", ¶ 31.  On June 22, 2009, Safeway filed its complaint in the Underlying Action for property

damage allegedly caused by the leaking roof.  CSOF ¶ 8; Ex. "3".  According to

the TAC, modified policy language and/or endorsements based on *Group Builders*

became available subsequent to May 2010, which is *after* the relevant policy

periods ended.  CSOF ¶ 13.  Logically, therefore, Moore could not have owed a

duty to obtain endorsements or insurance to address the impact *Group Builders*

could have on coverage for claims against HNB relating to the Project.

### C.   Safeway and HNB cannot allege any facts that demonstrate that Moore owed a duty to anticipate a change in coverage interpretation

Safeway and HNB cannot establish that Moore owed a duty to recommend

changes to HNB's insurance coverage based on an unsettled legal issue.  There is

nothing in the parties' past dealings that could be inferred as imposing a duty to

advise HNB of developments in insurance law that could potentially negate

coverage for certain causes of action under its policies.  As Hayes testified during

his deposition, throughout the more than fifteen-year relationship between Moore

and HNB, Hayes never requested an explanation of coverage interpretation or

sought a discussion on the specific policy terms such as products liability coverage

from the Broker Defendants.  *See* CSOF ¶ 6; Ex. "2", at 261-66.  Rather, Hayes

"belie[ved] that the products [he] sold were insured" and "always had been" based

purely on the fact that he met with "professional insurance people" and his "money

was accepted."  *Id.* at 263.  Under *Macabio*, Hayes' general belief that he was

14

covered for any and all claims of any nature based on the fact that he had an insurance agent and paid premiums is insufficient to establish that Broker Defendants owed a duty to advise HNB of possible changes in the law that could impact coverage. *Macabio*, 87 Hawai'i at 319, 955 P.2d at 112.

There is no set of facts Safeway and HNB can put forth that could be inferred as imposing a duty on Broker Defendants to advise HNB of changes in insurance law that might negate coverage for certain causes of action under its policies. Even assuming arguendo that Moore did owe such a duty, obtaining an endorsement after the allegedly responsive policies had expired would not have impacted HNB's coverage for the claims against it related to the Project.

Based on the foregoing, there are no genuine issues of material fact and Broker Defendants are entitled to judgment as a matter of law on the scope of Moore's duty to HNB. Safeway and HNB cannot put forth any evidence to establish that Moore owed a duty to anticipate a judicial ruling on an unsettled legal issue and to obtain additional coverage. Construing the evidence in the light most favorable to Safeway and HNB, the only possible inference is that Moore could not have owed a duty to determine Fireman's Fund's position on coverage or obtain additional endorsements or coverage, as alleged in the TAC.

Accordingly, Safeway and HNB cannot establish a *prima facie* case for liability against the Broker Defendants under any asserted liability theory as a matter of law.

> **D. Attorneys' fees are not recoverable on the breach of contract claim**

With respect to damages against Broker Defendants, Safeway and HNB seek, among other things, reimbursement of all of their respective attorneys' fees and costs incurred in the instant declaratory action *and* the Underlying Action. The TAC requests fees 1) for HNB's defense of the instant declaratory action, 2) for Safeway's defense of the declaratory action, 3) incurred by HNB in the Underlying Action, *and* 4) incurred by Safeway in the Underlying Action. TAC, wherefore clauses B.2 to B.3. None of these attorneys' fees are recoverable under Hawai'i law, however, because this is not an assumpsit case.

Ordinarily under the American Rule, attorneys' fees cannot be awarded as damages or costs unless so provided by statute, stipulation, or agreement. *Uyemura v. Wick,* 57 Haw. 102, 108, 551 P.2d 171, 176 (1976). A well-recognized statutory exception to the American Rule is HRS § 607-14, which provides in pertinent part:

> In all the courts, **in all actions in the nature of assumpsit** and in all actions on a promissory note **or other contract in writing that provides for an attorney's fee**, there shall be taxed as attorneys' fees, to be paid by the losing party and to be included in the sum for which

> execution may issue, a fee that the court determines to be
> reasonable[.]

Therefore, under HRS § 607-14, Safeway and HNB are entitled to an award of

attorneys' fees if there is an applicable promissory note or "contract in writing," or

if the action was "in the nature of assumpsit." *S. Utsunomiya Enters. v. Moomuku

Country Club*, 76 Hawai'i 396, 399-400, 879 P.2d 501, 504-05 (1994) (analyzing

fee entitlement separately under both "contract in writing" and "in the nature of

assumpsit" prongs); *Eastman v. McGowan*, 86 Hawai'i 21, 31, 946 P.2d 1317,

1327 (1997) (recognizing "under HRS § 607-14, attorneys' fees may be awarded

in three types of cases:  (1) all actions in the nature of assumpsit;  (2) all actions on

a promissory note;  and (3) contracts in writing that provide for an attorney's

fee.").

The TAC does not allege that there was a promissory note or a contract in

writing.  Moreover, Safeway and HNB have not specified the contract at issue let

alone the particular provision allegedly violated.  As such, the TAC does not allege

the elements of a breach of contract claim and the facts on which such a claim is

based.  *See Evergreen Eng'rg, Inc. v. Green Energy Team LLC*, 884 F. Supp. 2d

1049, 1059 (D. Haw. 2012) ("To prevail on a claim for breach of contract, a party

must prove:  (1) the contract at issue; (2) the parties to the contract; (3) whether

Plaintiff performed under the contract; (4) the particular provision of the contract

allegedly violated by Defendants; and (5) when and how Defendants allegedly

17

breached the contract." (internal citations and quotation marks omitted)); *see also Otani v. State Farm Fire & Cas. Co.*, 927 F.Supp. 1330, 1335 (D. Haw. 1996) ("In breach of contract actions, . . . the complaint must, at minimum, cite the contractual provision allegedly violated. Generalized allegations of a contractual breach are not sufficient . . . the complaint must specify what provisions of the contract have been breached to state a viable claim for relief under contract law.")).

Instead, the TAC appears to state a claim based upon implied contract. *Durette v. Aloha Plastic Recycling, Inc.*, 105 Hawai'i 490, 504, 100 P.3d 60, 74 (2004); *Kemp v. State of Hawaii Child Support Enforcement Agency*, 111 Hawai'i 367, 391, 141 P.3d 1014, 1038 (2006) (To state a claim for breach of an implied contract, a plaintiff must allege the breach of "an agreement in fact," which is not expressed, but "is implied or presumed" based upon the actions of the parties.). The TAC alleges that Broker Defendants caused damage to HNB by failing to procure product liability coverage for all claims related to the products HNB sold and are therefore liable for HNB's and Safeway's damages, including all of their attorneys' fees and costs.  TAC, ¶ 175.  Thus, the only basis for an award of fees is on a theory of assumpsit.

Assumpsit is "a common law form of action that allows for recovery of damages for the non-performance of a contract, either express or implied, written or verbal, as well as quasi-contractual obligations." *S. Utsunomiya*, 76 Hawai'i at

18

39-400, 879 P.2d at 504-05. The "character of the action should be determined from the facts and issues raised in the complaint, the nature of the entire grievance, and the relief sought." *Schulz v. Honsador, Inc.,* 67 Haw. 433, 436, 690 P.2d 279, 282 (1984). "Where there is doubt as to whether an action is in assumpsit or in tort, there is a presumption that the suit is in assumpsit." *Healy-Tibbitts Constr. Co. v. Hawaiian Independent Refinery, Inc.*, 673 F.2d 284, 286 (9th Cir. 1982) (interpreting HRS § 607-14).

### E. Damages recoverable on the breach of contract claim are limited to those incidental to the contract

Despite artful pleading, a review of the essential character of the action reveals that this is not an action to recover damages for the non-performance of a contract. Rather, it is an attempt to shift liability for indemnification of Safeway's damages related to the Project to Broker Defendants. As Safeway and HNB cannot establish an entitlement to recover fees based on assumpsit, the request should be stricken.

"The general rule is that in an action for damages for breach of contract only such damages can be recovered as are the natural and proximate consequence of its breach[.]" *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.*, 74 Haw. 85, 128, 839 P.2d 10, 32 (1992) (emphasis added). Stated differently, "the damages recoverable must be incidental to the contract and be caused by its breach[.]" *Id.* at 128, 839 P.2d at 32–33 (emphasis added). Thus, Safeway and HNB's entitlement to recover

19

damages on the breach of contract claim are limited to those incidental to the contract and caused by the alleged breach.

The TAC alleges that Broker Defendants are liable for any damages for which HNB's Policies do not provide coverage.  With respect to the breach of contract claim, the TAC alleges that Broker Defendants "agreed to procure for HNB the products liability coverage for claims related to the products HNB distributed[,]" represented that the policies provided such coverage, and breached their duties to HNB by failing to procure products liability coverage.  TAC, ¶ 169; *accord id.*, ¶¶ 170-72.  In addition to the request for attorneys' fees, the TAC also seeks "indemnification of HNB for liability or responsibility for Safeway's damages in the [Underlying] Lawsuit, including the damages set forth in the Settlement Agreement and/or Stipulated Judgment;" and "[d]isgorgement of the Brokers' commissions[.]"  TAC, whereas clause B.2, 4, 6.

As stated above, contract-based damages are "limited to those within the contemplation of the parties when the contract was entered into or at least reasonably foreseeable by them at the time; consequently damages beyond the expectations of the parties are not recoverable."  *Francis v. Lee Enter., Inc.*, 89 Hawai'i 234, 971 P.2d 707 (1999).

In this case, Safeway and HNB cannot establish that Broker Defendants breached an implied contract with HNB, or that the attorneys' fees requested are incidental to or caused by the alleged contract.

First, there can be no breach found because the policies include products liability coverage. In fact, that is the very reason Safeway and Fireman's Fund settled their coverage dispute; absent coverage, there would have been no reason to settle. In light of the settlement agreement reached between Safeway and Fireman's Fund, Safeway and HNB have already been compensated, at least partially, for their alleged injuries based on product liability coverage under the Policies.

Second, the attorneys' fees requested were not within the contemplation of the parties at the time the contract was allegedly entered into. With respect to HNB, the only attorneys' fees HNB has paid out-of-pocket were to Peter Knapman, its defense counsel in the present action. CSOF ¶¶ 10-11. HNB has not incurred any additional attorneys' fees in this action by virtue of the assignment and was not responsible for payment of any attorneys' fees in the Underlying Action. Fireman's Fund footed the bill for HNB's coverage counsel. CSOF ¶ 10.

Third, Safeway's attorneys' fees are not recoverable as damages on the breach of contract claim. Despite receiving an assignment of HNB's claims, Safeway is neither a party to the alleged contract between Broker Defendants and

21

HNB nor in privity with a party to the contract. *Hunt v. First Ins. Co. of Haw., Ltd.*, 82 Hawai'i 363, 367, 922 P.2d 976, 980 (App. 1996)("Privity of contract is 'that connection or relationship which exists between two or more contracting parties.'") (brackets omitted) (quoting Black's Law Dictionary 1199 (6th ed. 1990)).

Moreover, Safeway cannot claim a right of recovery as a third-party beneficiary of the alleged contract because it does not constitute "one for whose benefit a promise is made in a contract but who is not a party to the contract." *Siopes v. Kaiser Found. Health Plan, Inc.*, 130 Hawai'i 437, 456, 312 P.3d 869, 888 (2013), as corrected (Sept. 26, 2013) (quoting *Ass'n of Apartment Owners of Newtown Meadows ex rel. Bd. of Directors v. Venture 15, Inc.*, 115 Hawai'i 232, 270, 167 P.3d 225, 263 (2007)).

"Ordinarily, third-party beneficiary status is a question of fact as to whether the terms of the insurance policy reflect an intent to benefit the [party claiming such status]." *Jou v. Dai–Tokyo Royal State Ins. Co.*, 116 Hawai'i 159, 168, 172 P.3d 471, 480 (2007). *See also id.* (quoting 17 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance 3d* § 241:25 at 241–34 (2000) ("In order for a third party to maintain an action against an insurer, an intent to make the obligation inure to the benefit of such person must clearly appear in the contract of insurance, and, if any doubt exists, the contract should be construed against such intent.")). The Hawai'i

22

Supreme Court has stated, in resolving the foregoing factual inquiry, this

jurisdiction follows the framework set forth by the Restatement (Second) of

Contracts § 302 (1981), as follows:

> (1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either
>
> > (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
> >
> > (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.
>
> (2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

*Jou*, 116 Hawai'i at 168, 172 P.3d at 480 (quoting *Hough v. Pac. Ins. Co.*, 83

Hawai'i 457, 468 n. 15, 927 P.2d 858, 869 n. 15 (1996)).

In this case, Safeway is merely an incidental beneficiary of the contract.

Neither the Policies nor the alleged contract between Broker Defendants and HNB

reflect any intent to confer direct benefits upon Safeway such that Safeway has an

enforceable contractual right.  Rather, the Policies and alleged implied contract to

procure product liability coverage reflect the parties' intent to insulate HNB from

liability for damages related to its business.

In sum, Safeway's attorneys' fees are not incidental to the alleged contract

between HNB and Broker Defendants nor caused by its breach.  At the very least,

Safeway's attorneys' fees were not reasonably foreseeable at the time the alleged implied contract was entered into.  Moreover, HNB's attorneys' fees, while arguably incidental to the contract, are not caused by the alleged breach. Therefore, none of the attorneys' fees requested are recoverable.

## V.      CONCLUSION

For the foregoing reasons, Moore, Monarch and IAI respectfully move this Court to grant their Motion for Summary Judgment on the Standard of Care and for Partial Summary Judgment on Damages.  There are no genuine disputed facts related to the motion and Broker Defendants are entitled to the relief they seek as a matter of law.

DATED:  Honolulu, Hawai'i, May 12, 2017.


*/s/Kenneth S. Robbins*
KENNETH S. ROBBINS
DONNA C. MARRON
SASHA A. HAMADA
Attorneys for Counterclaim
Defendants
DOUGLAS MOORE and MONARCH
INSURANCE SERVICES, INC.

24