STARN • O'TOOLE • MARCUS & FISHER
A Law Corporation

TERENCE J. O'TOOLE          1209-0
WIL K. YAMAMOTO          7817-0
Pacific Guardian Center, Makai Tower
733 Bishop Street, Suite 1900
Honolulu, Hawai`i 96813
Telephone: (808) 537-6100

Attorneys for Plaintiff SAFEWAY INC.

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAI`I

| | |
|---|---|
| SAFEWAY INC. a Delaware corporation,<br><br>                    Plaintiff,<br><br>          vs.<br><br>NORDIC PCL CONSTRUCTION, INC., a Hawai`i corporation, VERSAFLEX INCORPORATED, a Missouri corporation, CBT TECH SERVICES, INC., a Hawai`i corporation; HAWAII NUT & BOLT, INC., a Hawai`i corporation, CASCADE INDUSTRIES, INC., a Hawai`i corporation, JOHN DOES 1-50, JANE DOES 1-50, DOE PARTNERSHIPS 1-50, DOE CORPORATIONS 1-50, and DOE ENTITIES 1-50,<br><br>                    Defendants. | CIVIL NO. _____  09-1-1414-06  S SM<br>(Contract) (Construction Defects)<br>(Other Non-Vehicle Tort)<br><br>COMPLAINT; DEMAND FOR JURY TRIAL; SUMMONS<br><br>No trial date set. |

1ST CIRCUIT COURT
STATE OF HAWAII
FILED

2009 JUN 22  AM 10: 49

R. TERAOKA
CLERK

## COMPLAINT

Pursuant to, *inter alia*, Rules 3, 4, and 8 of the Hawai`i Rules of Civil Procedure and Rule 3 of the Hawai`i Rules of the Circuit Courts, Plaintiff SAFEWAY INC. ("Safeway" or "Plaintiff"),

I do hereby certify that this is a full, true, and correct copy of the original on file in this office

Clerk Circuit Court, First Circuit

85119

**EXHIBIT A**

by and through its attorneys, Starn O'Toole Marcus & Fisher, for its claims against the Defendants, allege as follows:

## PRELIMINARY ALLEGATIONS
## REGARDING THE PARTIES, JURISDICTION, AND VENUE

1.     Safeway is, and at all times relevant herein was, a Delaware corporation doing business in the State of Hawai`i.

2.     Safeway is the current owner of certain real property and improvements located at Kapahulu Avenue, Honolulu, Hawai`i, and identified as Tax Map Key numbers. (1) 2-7-032: 041, 042, 043, 044, 045, 046, 047, and 048 (the "Property").   The Property consists of Safeway's flagship store and building known as Safeway Kapahulu #2747 ("Safeway Kapahulu") as well as other retail space and improvements (collectively, the "Project").

3.     Safeway is informed and believes and on that basis alleges that Defendant NORDIC PCL CONSTRUCTION, INC. ("Nordic") is, and at all times relevant herein was, a Hawai`i corporation doing business in the State of Hawai`i and was previously known and identified in the Construction Contract (defined below) as Nordic Construction, Ltd. prior to the merger between Nordic PCL Construction, Inc. and Nordic Construction, Ltd.  As a result of the merger, Nordic PCL Construction, Inc. and Nordic Construction, Ltd. are now one and the same entity doing business under the name Nordic PCL Construction, Inc., and the entity Nordic Construction, Ltd. no longer exists.

4.     Defendant VERSAFLEX INCORPORATED ("VersaFlex") is, and at all times relevant herein was, a Missouri corporation doing business in the State of Hawai`i.  VersaFlex is the inventor, developer, manufacturer, and/or supplier of various products used in connection with the waterproof traffic deck coating system including, without limitation, VersaFlex AquaLok II ("AquaLok"), VersaFlex Quick Mender ("Quick Mender"), VersaFlex SL/45 ("SL/45 Caulking"),

and VersaFlex FSS 45DC ("DC/45 Coating") (collectively, the "VersaFlex Coating System"). Upon information and belief, VersaFlex entered into a contract or contracts with Defendant CASCADE INDUSTRIES, INC. ("Cascade") and/or Defendant HAWAII NUT & BOLT, INC. ("HNB") to manufacture, supply, and/or install, and to provide oversight, supervision and guidance with respect to the installation of, the VersaFlex Coating System for the roof deck parking area and ramp located above Safeway Kapahulu ("Roof Deck").

5.     Safeway is informed and believes and on that basis alleges that Cascade is, and at all times relevant herein was, a Hawai`i corporation doing business in the State of Hawai`i. Cascade entered into a subcontract with Nordic as a subcontractor to perform certain work with respect to the construction of the Roof Deck which included, but was not limited to, the installation of the VersaFlex Coating System in accordance with the Construction Contract.

6.     Defendant CB TECH SERVICES, INC. ("CBT") is, and at all times relevant herein was, a Hawai`i corporation doing business in the State of Hawai`i. Upon information and belief, CBT entered into a contract with Cascade and/or Nordic to perform the grinding, shot blasting, and/or bead blasting of the non-structural concrete slab ("Wearing Slab") on the Roof Deck.

7.     HNB is, and at all times relevant herein was, a Hawai`i corporation doing business in the State of Hawai`i. Upon information and belief, HNB entered into a contract with Cascade and/or Nordic, is, or was, an authorized distributor of VersaFlex products in the State of Hawai`i, and was involved in the selection, design, planning, preparation, supply, and/or installation of the VersaFlex Coating System.

8.     John Does 1 – 50, Jane Does 1- 50, Does Corporations 1 – 50, and/or other Doe Entities 1-50 are sued herein under fictitious names for the reason that their true names and identities are presently unknown to Plaintiff except that they are connected in some manner with

the named Defendants or the Project, and/or were the agents, principals, partners, officers, directors, servants, employees, employers, representatives, insurers, co-insurers, associates, consultants, vendors, suppliers, manufacturers, subcontractors, contractors, sureties, guarantors, assignees, licensees of said Defendants and/or were in some manner responsible to Plaintiff for the amounts due under the claims and/or causes of action herein alleged and described.  Plaintiff will seek leave of the Court to identify these Defendants when the true identities of said fictitiously named Defendants become known.

9.      The conduct, acts, and/or omissions alleged herein occurred in the City and County of Honolulu, State of Hawai`i, and the amount of damages suffered by Plaintiff as a result thereof exceeds the jurisdictional requirements of this Court.

10.     This Court is the appropriate venue for the resolution of the claims set forth herein pursuant to Hawai`i Revised Statutes § 603-36.

## FACTS UPON WHICH PLAINTIFF'S CLAIMS FOR RELIEF ARE BASED

11.     Safeway and Nordic entered into that certain AIA Document A101-1997 Standard Form of Agreement Between Owner and Contractor, dated November 20, 2006, and other documents referenced therein including, but not limited to, the 1997 Edition of the General Conditions of the Contract for Construction, AIA Document A201-1997 as revised by Safeway, the General Conditions Section 00700, Supplementary Conditions Section 00800 ("General Conditions"), the Project Manual containing the specifications for the Project ("Plans and Specifications"), and related change orders (collectively, the "Construction Contract") whereby Nordic acted as general contractor for the construction of the Project.

12.     Pursuant to the Construction Contract, Nordic was involved in, among other things, the construction and construction supervision of the Project, including the construction of various

components that comprise the Roof Deck, such as the concrete Wearing Slab that is the subject of this controversy.

13.     At all times prior to entering into the Construction Contract, Nordic held itself out to Safeway as having expertise, knowledge, and experience in the construction of concrete structures such as the Project, and Safeway relied upon Nordic's representations.

14.     Nordic agreed that in performing its work under the Construction Contract, it would, among other things, retain professional subcontractors and vendors as may be necessary to fully implement the services it was rendering; be responsible for the timely and proper performance of services by its subcontractors, their respective subcontractors and vendors of any tier to the same extent as if all such services were performed by Nordic; observe and become familiar with the construction site as to the progress and quality of the construction and promptly inform Safeway of any deficiencies and/or deviations from the requirements of the Construction Contract; provide work of first-class quality, free from defects, and in strict conformance with the Construction Contract; fully warranty its work; promptly correct non-conforming work related to all elements of the Roof Deck and bear the costs of correcting such work; provide a 20 year warranty for the traffic deck coating applied to the Roof Deck ("20 Year Warranty"); and provide services that comply with applicable laws, ordinances, codes, rules, regulations, accepted practices, and applicable industry construction standards.

15.     As compensation for Nordic's performance of its services in full accordance with the Construction Contract and as valuable consideration for its adherence to the duties and obligations undertaken by it as described therein, Safeway agreed to pay, and did pay to Nordic in excess of twenty-one million ($21,000,000) dollars.

16.    Plaintiff is informed and believes and on that basis alleges that Nordic, in turn, entered into contracts with (1) Cascade (the "Nordic/Cascade Agreement") whereby Cascade agreed to provide services relating to, among other things, the installation of the VersaFlex Coating System; (2) with HNB ("Nordic/HNB Agreement") whereby HNB agreed to supply certain products manufactured by VersaFlex and/or others to be used in the construction of the Roof Deck, and specifically the preparation of the Wearing Slab for the application of the VersaFlex Coating System and for the VersaFlex Coating System itself; (3) and with CBT ("Nordic/CBT Agreement") whereby CBT agreed to provide services relating to, among other things, the grinding, shot blasting, and/or bead blasting of the Wearing Slab prior to and in preparation for the application of the VersaFlex Coating System.

17.    Plaintiff is further informed and believes and on that basis alleges that Cascade, in turn, entered into contracts with: (1) HNB (the "Cascade/HNB Agreement") and with VersaFlex (the "Cascade/VersaFlex Agreement") whereby HNB and VersaFlex agreed to supply certain products manufactured by VersaFlex and/or others to be used in the construction of the Roof Deck, and specifically the preparation of the Wearing Slab for the application of the VersaFlex Coating System and for the VersaFlex Coating System itself; and (2) with CBT ("Cascade/CBT Agreement"), whereby CBT agreed to provide services relating to, among other things, the grinding, shot blasting, and/or bead blasting of the Wearing Slab prior to and in preparation for the application of the VersaFlex Coating System.

18.    Plaintiff is informed and believes that the Nordic/Cascade Agreement, the Nordic/HNB Agreement, the Nordic/CBT Agreement, the Cascade/HNB Agreement, the Cascade/VersaFlex Agreement, the Cascade/CBT Agreement, and other subcontractor and vendor agreements entered into by Nordic or its subcontractors and vendors on the Project

("Subcontractor/Vendor Agreements"), incorporated by reference the terms and obligations of the Construction Contract, and were entered into for the intended benefit of Plaintiff and manifested an intent to benefit Plaintiff. Accordingly, Plaintiff is the intended third-party beneficiary of each of these agreements.

19.    Plaintiff is informed and believes and on that basis alleges that in the Subcontractor/Vendor Agreements, Cascade, VersaFlex, HNB, and CBT, among other things, agreed to provide quality products and/or services, free from defects and as represented or advertised, and in strict conformance with the Construction Contract, General Conditions, Plans and Specifications, and product directions for the installation, preparation, construction, and repair of the VersaFlex Coating System and related Roof Deck items, in accordance with accepted practices as exercised by reasonable professionals in their respective fields, including adherence to all laws, codes, and regulations applicable to such work.

## MISREPRESENTATIONS CONCERNING THE VERSAFLEX PRODUCTS AND VERSAFLEX COATING SYSTEM

20.    VersaFlex and HNB represented to Plaintiff that VersaFlex's products and the VersaFlex Coating System used on the Project were sufficient, adequate, and/or fit for their intended use or purpose in connection with the Roof Deck and the Safeway Kapahulu facility.

21.    Specifically, VersaFlex and HNB represented to Plaintiff that, among other things, the VersaFlex products and the VersaFlex Coating System would provide a 20 year watertight system for the Roof Deck; would perform as intended in Hawaii's climatic conditions, including Hawaii's ultraviolet ("UV") exposure; would have sufficient elongation and other properties to perform as intended on the Roof Deck (as designed by Safeway's architect and engineers); would be suitable as a waterproof coating surface on top of the Wearing Slab; and, that VersaFlex and

Nordic would provide Safeway with a 20 Year Warranty with respect to the VersaFlex Coating System.

22.     In reliance on VersaFlex and HNB's representations, Safeway elected to utilize the VersaFlex Coating System in lieu of the waterproofing system specified at the time by Safeway's architect and engineers which called for the waterproofing membrane to go on top of the structural slab and below the Wearing Slab.

23.     VersaFlex and HNB failed to inform Safeway that the specific VersaFlex Coating System proposed for the Safeway Kapahulu facility had never been used before in Hawaii and that other VersaFlex applications in Hawaii and elsewhere had failed.

24.     In addition, VersaFlex affirmatively represented to Safeway that the VersaFlex Coating System had elongation properties that would be sufficient, adequate, and/or fit for its intended use or purpose.

25.     VersaFlex failed to inform Plaintiff that the actual elongation properties of the coating would be significantly less than that advertised by VersaFlex and that Hawaii's UV exposure would significantly reduce the coating's elongation properties and useful life.

26.     Plaintiff's investigation of samples taken from the DC/45 Coating applied to the Roof Deck revealed significantly lower elongation properties than those represented by VersaFlex and HNB. Moreover, the DC/45 Coating is prematurely degrading under Hawai`i's UV exposure.

27.     In addition to the above-referenced representations, and in order to induce Plaintiff's selection of the VersaFlex Coating System over other vendors during the bidding process, Nordic, VersaFlex, and HNB proposed to Plaintiff a value engineering option of deleting the UV and color resistant aliphatic top coat ("Aliphatic Top Coat") to the VersaFlex Coating System. Nordic, VersaFlex and HNB represented to Plaintiff that the deletion of the Aliphatic Top

Coat would reduce the cost of the system without in any way impairing or reducing the integrity of the VersaFlex Coating System.

28.     Nordic, VersaFlex, and HNB represented to Safeway that the VersaFlex Coating System without the Aliphatic Top Coat would be sufficient, adequate, and/or fit for its intended use or purpose.

29.     Nordic, VersaFlex, and HNB failed to inform Plaintiff that the deletion of the Aliphatic Top Coat would, among other things, increase the VersaFlex Coating System's exposure to UV rays and significantly impair the elongation properties, functionality, effectiveness and/or useful life of the VersaFlex Coating System.

30.     Plaintiff is informed and believes that the deletion of the Aliphatic Top Coat contributed to the damages suffered by Safeway.

## DEFECTS AND DEFICIENCIES IN THE WORK

31.     After construction of the Project was completed, and on or about November 9, 2007, Plaintiff opened the Safeway Kapahulu store to the public.  Immediately thereafter, and on or about January 2008, the Safeway Kapahulu store began experiencing pervasive water leaks that penetrated into the store through the Roof Deck, disrupting business operations and causing damage to Safeway's business and reputation.

32.     On or about January 2008, Safeway notified Nordic of the leaks and made immediate demand upon Nordic to remedy the defects causing the leaks.  Safeway also made demand on Nordic to issue the 20 Year Warranty.

33.     At, or about, the time the Roof Deck manifested leaks, it also became apparent that the VersaFlex Coating System was failing.  Specifically, the VersaFlex Coating System began to

manifest cracks and failures in the waterproof membrane throughout the entire field of the Roof Deck.

34.     Despite constant demands by Safeway, neither Nordic nor VersaFlex have provided or implemented a permanent solution to stop the leaks or to repair or replace the failed VersaFlex Coating System.

35.     The VersaFlex Coating System has experienced wholesale failure and the leaks have continued to occur up to the present time.

36.     Plaintiff has been forced to hire its own consultants and to undertake its own investigation as to the cause of the failure.  In the meantime, Plaintiff has also had to deal with potential life-safety issues, interruption to business, damages to products and equipment inside the store, damage to the building itself and damage to Safeway's business reputation.

37.     Plaintiff's consultants have concluded that the VersaFlex Coating System has totally failed, and that a comprehensive permanent fix is needed immediately to prevent further damages.

38.     Plaintiff is informed and believes that the wholesale failure of the waterproof membrane on the Roof Deck which has caused, and continues to cause, pervasive water leaks into the store was caused by the failure of the VersaFlex Coating System and its component parts and defective workmanship by Nordic and its subcontractors.

*Defects in the Construction of the Wearing Slab*

39.     At the time Nordic was constructing the Wearing Slab, it became immediately apparent that the Wearing Slab was exhibiting excessive cracking, unevenness, and severe surface irregularities.

40.     The Construction Contract required that the Wearing Slab have an 80 grit surface finish per the Plans and Specifications and that it otherwise be constructed in accordance with industry standards and good practices.   After the concrete for the Wearing Slab was placed and cured, Nordic and/or Cascade instructed CBT to bead blast the slab in an attempt to provide a concrete surface representing 80-grit sandpaper.   The attempt failed due to the poor quality of concrete and overly aggressive shot-blasting, resulting in unevenness and severe surface irregularities and revealing excessive cracking throughout the deck.

41.     As constructed, the Wearing Slab did not meet the requirements of the Contract Documents or industry standards.   Rather, as constructed, the Wearing Slab had excessive cracks (which now exceed 3 linear miles), unevenness and severe surface irregularities all of which made it unsuitable for its intended use.   The Architect of Record on the Project ultimately rejected the Wearing Slab.

42.     Plaintiff is informed and believes that the defects in the Wearing Slab were caused by, among other things, Nordic's improper concrete placement and finishing operations and its failure to follow industry standards for concrete placement for the prevailing climatic conditions, including heat, sun, and wind conditions; Nordic's failure to install sufficient control joints in a timely manner leading to dry shrinkage of the concrete; and Nordic's failure to commence curing of the concrete in a timely manner.

43.     The defects in the Wearing Slab, and Nordic and VersaFlex's efforts to repair the same, resulted in major project delays.   The coating application, which was originally scheduled to take under six weeks from start to finish, actually took over twelve weeks.   Approximately eight weeks (2 months) of this time was spent repairing concrete irregularities and the excessive cracking due to the deficient Wearing Slab.   As alleged below, Nordic and VersaFlex's effort to

repair the Wearing Slab, which included an attempt to smooth out and even the surface of the slab by grinding over the bead blasted surface and repairing each crack prior to the application of the DC/45 Coating, failed.

### Failure of the Pre-Coating Repairs to the Wearing Slab

44.    Nordic and VersaFlex represented to Plaintiff and Plaintiff's architect that the Wearing Slab with its extensive defects could be remedied, and made useable for its intended purpose including the application of the VersaFlex Coating System.   The Nordic/VersaFlex solution included grinding the rough surface of the slab, routing out and filling all cracks and irregularities in the slab with SL/45 Caulking, and thereafter applying Quick Mender as a filler and/or leveling agent over the SL/45 Caulking (collectively, the "Pre-Coating Repairs").

45.    Nordic and VersaFlex further represented to Plaintiff that Quick Mender (a material intended to be used as a primer for concrete) could be applied in amounts in excess of its specified 5 to 8 mil thickness to serve as a filler or leveling agent for evening out the cracked and rough concrete surface; that Quick Mender could be applied over, as opposed to under, the SL/45 Caulking; and that the application of Quick Mender in this fashion would not impair or otherwise negatively impact the performance of the VersaFlex Coating System.

46.    The Pre-Coating Repairs failed in that, among other things, the grinding did not adequately remedy the rough and uneven bead blasted surface of the concrete.  Even after grinding, the Wearing Slab was rough and contained gouges and other surface irregularities.  Nordic and VersaFlex then caused the Quick Mender to be used in a manner and in amounts outside its specified limits to level the uneven concrete surface which further caused and contributed to the subsequent failure of the VersaFlex Coating System.

*Other Defects and Deficiencies*

47.     In addition to the defects, deficiencies and misrepresentations previously alleged, Plaintiff alleges that Defendants otherwise:

a)      Failed to construct the Roof Deck in accordance with the Construction Contract, the Plans and Specifications, industry standards, proper protocols, and/or manufacturer's instructions;

b)      Manufactured and/or supplied improper and defective materials;

c)      Provided poor quality workmanship, construction management and oversight, inspection, and/or testing;

d)      Failed to perform the work in accordance with applicable industry standards and/or laws; and

e)      Negligently, deliberately, or intentionally misrepresented, omitted, and/or concealed material facts from Plaintiff regarding defects and deficiencies in the work and in the materials with respect to the Roof Deck, including but not limited to:

   i.     The adequacy, functionality, durability, and useful life of the "as built" Wearing Slab; and

   ii.    The suitability, functionality, effectiveness and/or useful life of the VersaFlex Coating System and the component VersaFlex products incorporated into the system.

48.     Despite repeated demands, Nordic and VersaFlex have failed and refused to issue the 20 Year Warranty to Safeway or to provide a permanent fix to the Roof Deck.

## COUNT I
### (Breach of Contract Against All Defendants)

49.     Plaintiff realleges and incorporates paragraphs 1 through 48 as though fully stated herein.

50.     Plaintiff fully performed all of its obligations under the written agreements alleged herein, and each of them, except as otherwise agreed and/or as otherwise waived or excused by the acts, errors or omissions of the Defendants.

51.     The Construction Contract entered into by Plaintiff and Nordic, was supported by adequate consideration and imposed upon Nordic a duty to abide by its terms and obligations.

52.     Plaintiff is informed and believes and on that basis further alleges that Cascade, VersaFlex, HNB, and CBT entered into the Subcontractor/Vendor Agreements, which imposed upon them a duty to abide by the terms and obligations of those Subcontractor/Vendor Agreements for the benefit of Plaintiff.

53.     Plaintiff is informed and believes that the Defendants, and each of them, materially breached the contractual obligations that they owed to Plaintiff either directly or as an intended third-party beneficiary, by, among other things, performing services and/or providing products that were not in accordance with their respective agreements or as represented to Safeway, were not in accordance with the accepted practices or industry standards as exercised by reasonable professionals in their respective fields, and did not adhere to all laws, codes, and regulations applicable to such work.

54.     In addition, the Construction Contract provides that Safeway would receive the 20 Year Warranty on the VersaFlex Coating System from the material supplier and installer.

55.     Nordic has failed to cause VersaFlex to issue the 20 Year Warranty to Safeway and has otherwise failed to permanently repair the VersaFlex Coating System.

56.     VersaFlex has failed to issue the 20 Year Warranty to Safeway and has otherwise failed to permanently repair the VersaFlex Coating System.

57.     The Defendants' actions, as alleged herein, constitute material breaches of their contracts.

58.     As a direct and proximate result of the Defendants' breaches of their contracts, Plaintiff has been damaged in an amount to be proven at trial.

## COUNT II
### (Breach of Covenant of Good Faith and Fair Dealing Against All Defendants)

59.     Plaintiff realleges and incorporates paragraphs 1 through 58 as though fully stated herein.

60.     A covenant of good faith and fair dealing is implied in all contracts.

61.     The Defendants have materially breached the covenant of good faith and fair dealing implied in their respective contracts by their actions and omissions described herein.

62.     As a direct and proximate result of the Defendants' breaches of the implied covenant of good faith and fair dealing, Plaintiff has been damaged in an amount to be proven at trial.

## COUNT III
### (Negligence Against All Defendants and Gross Negligence Against Nordic, VersaFlex, and HNB)

63.     Plaintiff realleges and incorporates paragraphs 1 through 62 as though fully stated herein.

64.     Defendants each owed to Plaintiff in connection with their work on the Project a duty to perform work and provide products free from defects, in accordance with the Construction Contract, the Subcontractor/Vendor Agreements, the Plans and Specifications and/or accepted

practices and applicable industry standards as exercised by reasonable persons in each Defendant's respective field and in accordance with all laws, codes, and regulations applicable to such work and services.

65.     As set forth above, Defendants, and each of them, breached their duty of care to Plaintiff by the negligent and defective manufacturing, planning, material selection, scheduling, preparation, construction, supervision, installation and/or inspection of the Roof Deck work and products, and by not performing their services and work in accordance with the Construction Contract, the Subcontractor/Vendor Agreements, the Plans and Specifications, and/or accepted practices and applicable industry standards as exercised by reasonable persons in each Defendant's respective field, and in accordance with and all laws, codes, and regulations applicable to such work and services.

66.     Nordic, VersaFlex, and HNB's conscious and voluntary disregard of the need to use reasonable care was reckless and/or willful and, therefore, constitutes gross negligence.

67.     As a direct and proximate result of Defendants' actions and/or omissions, Plaintiff has sustained actual damages, in an amount to be proven at trial, and for which Defendants are jointly and severally liable.

## COUNT IV
### (Breach of Express and Implied Warranties Against All Defendants)

68.     Plaintiff realleges and incorporates paragraphs 1 through 67 as though fully stated herein.

69.     Defendants expressly or impliedly promised and warranted to Plaintiff that, among other things, the material and work (a) were free of defects and deficiencies; (b) would be sufficient, adequate and/or fit for their intended use or purpose; (c) would perform as intended in

conjunction with the Roof Deck and operation of the Safeway Kapahulu of which each Defendants' work was an integral part; (d) would result in a Roof Deck fit for use in Hawai`i, free of latent and patent defects and free from hazards; and (e) would perform to the accepted practices and applicable industry standards.

70.     Based on, among other things, the defects and inadequacies described above, Defendants have breached their respective express and implied warranties in that their respective work was not free from defects and deficiencies; was not sufficient, adequate, and/or fit for its intended use or purpose; did not perform as intended with respect to the Roof Deck and operation of the Safeway Kapahulu of which each Defendant's work was an integral part; did not result in a Roof Deck fit for use in Hawai`i, free of latent and patent defects and free from hazards; and did not perform to the accepted practices and applicable industry standards.

71.     As a direct and proximate result, Plaintiff has been damaged and will continue to be damaged in an amount to be proven at trial.

## COUNT V
### (Unjust Enrichment Against All Defendants)

72.     Plaintiff realleges and incorporates paragraphs 1 through 71 as though fully stated herein.

73.     The money paid by Plaintiff under the Construction Contract to Nordic inured to the benefit of all Defendants.

74.     The money was paid with the reasonable expectation that Nordic and its subcontractors and vendors would perform their work and supply their products free of material defects.

75.     Defendants failed to perform their work and to supply their products free of material defects.

76.     Defendants would be unjustly enriched if they were allowed to retain the money paid to them by Plaintiff.

77.     Defendants are liable to Plaintiff for the sums paid to them by Plaintiff which amount will be proven at trial.

## COUNT VI
### (Negligent Misrepresentation and/or Omission Against All Defendants)

78.     Plaintiff realleges and incorporates paragraphs 1 through 77 as though fully stated herein.

79.     To induce action on the part of Plaintiff, Defendants made express and implied representations to Plaintiff, and/or omitted informing Plaintiff of material information regarding the failures described above including, among other things, representations that they had the knowledge and experience necessary to plan, manufacture, install, prepare, and/or construct the various parts of the Roof Deck.

80.     Defendants' representations and/or omissions were made and/or omitted without due care as to the truth or falsity of such representations and omissions.

81.     These representations and/or omissions were false and misleading, and said Defendants either knew or should have known that Plaintiff would rely on them.

82.     Plaintiff did reasonably rely on Defendants' false and misleading representations and omissions.

83.     As a direct and proximate result, Plaintiff has been damaged and will continue to be damaged in an amount to be proven at trial.

18

### COUNT VII
**(Intentional Misrepresentation and/or Fraudulent Concealment Against Nordic, VersaFlex and HNB)**

84.     Plaintiff realleges and incorporates paragraphs 1 through 83 as though fully stated herein.

85.     To induce action on the part of Plaintiff, Nordic made express and/or implied misrepresentations to Plaintiff, and/or omitted informing Plaintiff of material information regarding the adequacy of the Wearing Slab.

86.     To induce action on the part of Plaintiff, Nordic and VersaFlex made express and/or implied misrepresentations to Plaintiff, and/or omitted informing Plaintiff of material information regarding the adequacy of the Pre-Coating Repairs.

87.     To induce action on the part of Plaintiff, VersaFlex and HNB made express and/or implied misrepresentations to Plaintiff, and/or omitted informing Plaintiff of material information regarding the adequacy of the VersaFlex Coating System.

88.     Further, to induce Plaintiff to enter into agreements and to perform certain actions, the following misrepresentations were made to Plaintiff:

a)     VersaFlex and HNB represented that VersaFlex's products including, but not the limited to, the DC/45 Coating, the SL/45 Caulking, and/or Quick Mender were sufficient, adequate, and/or fit for their intended use or purpose in Hawai`i in connection with the Roof Deck and Safeway Kapahulu;

b)     VersaFlex and HNB represented that the VersaFlex Coating System was fit for its intended use even with the deletion of the Aliphatic Top Coat, and there were no significant adverse effects, other than a possible reduction in

19

color stability; that would result from the deletion of the Aliphatic Top Coat
; and

c)      Nordic and VersaFlex represented that the Wearing Slab with its extensive
        cracks could be repaired in a manner adequate and sufficient for the
        VersaFlex Coating System to be applied and for it to perform for its
        intended use or purpose.

89.      Nordic, VersaFlex, and HNB's representations and/or omissions were made and/or
omitted without due care as to the truth or falsity of such representations and omissions.

90.      These representations and/or omissions were false and misleading, and Nordic,
VersaFlex, and HNB either knew or should have known that Plaintiff would rely on them.

91.      Plaintiff did reasonably rely on and was unaware of the false and misleading
representations and/or omissions.

92.      Nordic had a duty to disclose to Plaintiff all facts including, material information
regarding the adequacy of the Wearing Slab.

93.      Nordic and VersaFlex had a duty to disclose to Plaintiff all facts including, material
information regarding the adequacy of the Pre-Coating Repairs.

94.      VersaFlex and HNB had a duty to disclose to Plaintiff all facts including, material
information regarding the adequacy of the VersaFlex Coating System.

95.      Plaintiff is informed and believes and on that basis alleges that VersaFlex and HNB
fraudulently concealed and/or suppressed material facts relating to the effects of deleting the
Aliphatic Top Coat with the intent to defraud the Plaintiff.

96.      As a direct and proximate result, Plaintiff has been damaged and will continue to be
damaged in an amount to be proven at trial.

## COUNT VIII
### (Declaratory Relief – Warranty Obligations as to Nordic)

97.     Plaintiff realleges and incorporates paragraphs 1 through 96 as though fully stated herein.

98.     Under the Construction Contract, Nordic warranted to Safeway that the materials furnished would be of good quality, and that the work would be free from defects and conform to the requirements of the Construction Contract.

99.     As set forth above, the Roof Deck was not free from defects and did not conform to the requirements of the Construction Contract.

100.     Plaintiff is entitled to a declaration that (1) Nordic did not perform its warranty obligations under the Construction Contract, and (2) Nordic is required to repair the Roof Deck pursuant to its warranty obligations under the Construction Contract.

101.     Plaintiff is further entitled to a declaration that as a direct and proximate result of Nordic's actions and/or omissions, Plaintiff has sustained actual damages, as well as attorneys' fees and costs, in an amount to be proven at trial, and for which Nordic is liable.

## COUNT IX
### (Declaratory Relief – 20 Year Warranty Obligation as to Nordic and VersaFlex)

102.     Plaintiff realleges and incorporates paragraphs 1 through 101 as though fully stated herein.

103.     The Construction Contract provides that Safeway would receive the 20 Year Warranty on the VersaFlex Coating System.

104.     Nordic and VersaFlex have failed to issue the 20 Year Warranty to Safeway and have otherwise failed to permanently repair the VersaFlex Coating System, in breach of the Construction Contract.

105.     Plaintiff is entitled to a declaration that Nordic and VersaFlex are required to issue
to Safeway the 20 Year Warranty.

106.     Plaintiff is further entitled to a declaration that as a direct and proximate result of
the actions and/or omissions of Nordic and VersaFlex, Plaintiff has sustained actual damages, as
well as attorneys' fees and costs, in an amount to be proven at trial, and for which Nordic and
VersaFlex are liable.

## COUNT X
### (Product Defects Against VersaFlex and HNB)

107.     Plaintiff realleges and incorporates paragraphs 1 through 106 as though fully stated
herein.

108.     VersaFlex and HNB at all times relevant hereto were engaged in the business of
designing, manufacturing, assembling, selling, and/or distributing products used in the VersaFlex
Coating System including, but not limited to, AquaLok, Quick Mender, SL/45 Caulking, and
DC/45 Coating.

109.     VersaFlex and HNB engaged in the business of selling their products to the public
through publication, sale, distribution, and other communications.

110.     VersaFlex and HNB expressly or impliedly promised and warranted to Plaintiff that
their products were free of design or manufacturing defects and were adequate for their intended
use or purpose.

111.     VersaFlex and HNB have made material misrepresentations and/or omitted material
facts regarding the quality, performing capabilities, and useful life of their products.

112.     The products used in the VersaFlex Coating System were not sufficient, adequate
or fit for their intended use by reason of defect or defects in their design, manufacture and/or

assembly, which caused the products to malfunction, fail, and not perform to the standards indicated by VersaFlex and HNB, leading to damages to the Roof Deck and the Safeway Kapahulu.

113.    The use of said products in connection with the Roof Deck or other similarly situated projects was foreseeable and expected since Plaintiff is within the class of parties expected to use and rely on said products, and Plaintiff did reasonably rely on said products.

114.    VersaFlex and HNB knew or should have known that Plaintiff would be damaged by the use of said products.

115.    VersaFlex and HNB knew or should have known that Plaintiff would have no reason to believe that the use of these products would impair the Roof Deck, or that Plaintiff would not recognize the defects in the products, and that Plaintiff was in fact ignorant of the defects in said products.

116.    Due to the defective condition of the products, VersaFlex and HNB have breached their respective express and implied warranties in that their products were not free from manufacturing and/or design defects and deficiencies; were not sufficient, adequate, and/or fit for their intended use; and did not perform to the standards indicated by said VersaFlex and HNB.

117.    Defendants failed to exercise reasonable care to inform Plaintiff of the defective condition of the products or to advise Plaintiff of relevant facts regarding the defective condition of the products.

118.    VersaFlex and HNB are liable for the damages suffered by Plaintiff.

119.    As a direct and proximate cause of the actions and/or omissions of VersaFlex and HNB, Plaintiff has suffered damages in an amount to be proven at trial.

## COUNT XI
### (Negligent Design and Manufacture of Product Against VersaFlex and HNB)

120.    Plaintiff realleges and incorporates paragraphs 1 through 119 as though fully stated herein.

121.    VersaFlex and HNB, as the designer, manufacturer, and/or distributor of their respective products, failed to use reasonable care in the design, manufacture, and/or assembly of their products. As a result thereof, these products were defective.

122.    These products were not appropriate for their intended uses by reason of defect or defects in their design, manufacture, and/or assembly, which caused the products to malfunction and fail, leading to damages to the Roof Deck and the Safeway Kapahulu.

123.    VersaFlex and HNB knew or should have known that their failure to exercise reasonable care in the design, manufacture, and/or assembly of their respective products would create an unreasonable risk of causing harm to the Roof Deck and the Safeway Kapahulu.

124.    VersaFlex and HNB are liable for the damages suffered by Plaintiff.

125.    As a direct and proximate cause of the actions and/or omissions of VersaFlex and HNB, Plaintiff has suffered damages in an amount to be proven at trial.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment in its favor against all Defendants as follows:

A.    For general, special, consequential, and punitive damages including, but not limited to, actual repair costs and expenses to permanently fix/replace the Roof Deck, mitigation costs and expenses, lost profits and/or diminished value components, damages to the Safeway Kapahulu, damages to business operations, damage to Safeway's business reputation, loss in property value, and consultant and testing fees, in an amount to be proven at trial;

24

B.      For an order that Defendants be required to fund the entire repair of the Roof Deck;

C.      For a declaratory ruling that (1) Nordic did not perform its warranty obligations under the Construction Contract, and (2) Nordic is required to repair the Roof Deck pursuant to its warranty obligations under the Construction Contract;

D.      For a declaratory ruling that Nordic and VersaFlex are obligated to issue to Safeway the 20 Year Warranty;

E.      For prejudgment and post-judgment interest;

F.      For reasonable attorneys' fees and costs; and

G.      For such other and further relief to which this Court deems Plaintiff justly entitled.

DATED: Honolulu, Hawai`i, June 22, 2009.


TERENCE J. O'TOOLE
WIL K. YAMAMOTO
Attorneys for Plaintiff SAFEWAY INC.

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAII

| | |
|---|---|
| SAFEWAY INC. a Delaware corporation,<br><br>        Plaintiff,<br><br>   vs.<br><br>NORDIC PCL CONSTRUCTION, INC., a Hawai`i corporation, VERSAFLEX INCORPORATED., a Missouri corporation, CBT TECH SERVICES, INC., a Hawai`i corporation; HAWAII NUT & BOLT, INC., a Hawai`i corporation, CASCADE INDUSTRIES, INC., a Hawai`i corporation, JOHN DOES 1-50, JANE DOES 1-50, DOE PARTNERSHIPS 1-50, DOE CORPORATIONS 1-50, and DOE ENTITIES 1-50,<br><br>        Defendants. | CIVIL NO. _____<br>(Contract) (Construction Defects)<br>(Other Non-Vehicle Tort)<br><br>DEMAND FOR JURY TRIAL |

**DEMAND FOR JURY TRIAL**

       Plaintiff SAFEWAY, INC, by and through their attorneys, Starn O'Toole Marcus & Fisher, hereby demands trial by jury on all issues triable herein.

       DATED: Honolulu, Hawai`i, June 22, 2009.

                             _____
                             TERENCE L. O'TOOLE
                             WIL K. YAMAMOTO
                             Attorneys for Plaintiff SAFEWAY INC.

85119

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAI'I

| | |
|---|---|
| SAFEWAY INC. a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>NORDIC PCL CONSTRUCTION, INC., a Hawai`i corporation, VERSAFLEX INCORPORATED., a Missouri corporation, CBT TECH SERVICES, INC., a Hawai`i corporation; HAWAII NUT & BOLT, INC., a Hawai`i corporation, CASCADE INDUSTRIES, INC., a Hawai`i corporation, JOHN DOES 1-50, JANE DOES 1-50, DOE PARTNERSHIPS 1-50, DOE CORPORATIONS 1-50, and DOE ENTITIES 1-50,<br><br>Defendants. | CIVIL NO. _____<br>(Contract) (Construction Defects)<br>(Other Non-Vehicle Tort)<br><br>SUMMONS |

## SUMMONS

STATE OF HAWAI'I

To the above-named Defendants:

You are hereby summoned and required to serve upon the law offices of Starn O'Toole Marcus & Fisher, whose address is 733 Bishop Street, Suite 1900, Honolulu, Hawai`i 96813, Plaintiff's attorneys, an answer to the Complaint which is herewith served upon you, within twenty (20) days after service of this summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

85119

Pursuant to Rule 4(b) of the Hawai`i Rules of Civil Procedure, this summons shall not be personally delivered between 10:00 p.m. and 6:00 a.m. on premises not open to the general public, unless a judge of the above-entitled court permits, in writing on this summons, personal delivery during those hours.

DATED:  Honolulu, Hawai`i, _____.

R. TERAOKA

SEAL
FIRST CIRCUIT COURT
STATE OF HAWAII

_____
Clerk of the Court