RECEIVED
FEB 26 2016
BY:

FIRST CIRCUIT COURT
STATE OF HAWAII
FILED

2016 FEB 22 PM 2: 01

J. KUBO
CLERK

STARN ● O'TOOLE ● MARCUS & FISHER
A Law Corporation

TERENCE J. O'TOOLE      1209-0
JUDITH ANN PAVEY        2173-0
MAILE S. MILLER         10179-0
Pacific Guardian Center, Makai Tower
733 Bishop Street, Suite 1900
Honolulu, Hawai'i 96813
Telephone: (808) 537-6100

Attorneys for Plaintiff SAFEWAY INC.

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAI'I

| | |
|---|---|
| SAFEWAY INC. a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>NORDIC PCL CONSTRUCTION, INC., a Hawai'i corporation, VERSAFLEX INCORPORATED, a Missouri corporation, CB TECH SERVICES, INC., a Hawai'i corporation; HAWAII NUT & BOLT, INC., a Hawai'i corporation, CASCADE INDUSTRIES, INC., a Hawai'i corporation, JOHN DOES 1-50, JANE DOES 1-50, DOE PARTNERSHIPS 1-50, DOE CORPORATIONS 1-50, and DOE ENTITIES 1-50,<br><br>Defendants. | CIVIL NO. 09-1-1414-06 (JHC)<br>(Contract) (Construction Defects)<br>(Other Non-Vehicle Tort)<br><br>STIPULATED JUDGMENT AND ORDER |
| CASCADE INDUSTRIES, INC.,<br><br>Third-Party Plaintiff,<br><br>vs.<br><br>GRANT HENRY, DIVISION SEVEN CONSULTING OF HAWAII, INC., JOHN DOES 2-50, JANE DOES 1-50, DOE PARTNERSHIPS 1-50, DOE CORPORATIONS 2-50, AND DOE ENTITIES 1-50,<br><br>Third-Party Defendants. | (caption continued on next page) |

1522485v1

I do hereby certify that this is a full, true, and correct copy of the original on file in this office.

Clerk, Circuit Court, First Circuit

**EXHIBIT F**

FFIC-HNB026160

| | |
|---|---|
| VERSAFLEX INCORPORATED, a Missouri corporation,<br>        Third-Party Plaintiff,<br>vs.<br>BENNER STANGE ASSOCIATES ARCHITECTS, INC.,<br>        Third-Party Defendant. | Trial Week: November 16, 2015 |

## STIPULATED JUDGMENT AND ORDER

IT IS HEREBY STIPULATED by and between Plaintiff SAFEWAY INCORPORATED ("Safeway"), a Delaware corporation, and Defendant HAWAII NUT AND BOLT, INC. ("HNB"), a Hawaii corporation, by and through their undersigned counsel, as follows:

### I. Factual Background

#### A. Overview

1. On June 22, 2009 Safeway filed a civil Complaint entitled Safeway, Inc. v. Nordic PCL Construction, Inc., et al., Civil No. 09-1-1414-06 in the First Circuit Court of the State of Hawaii ("Lawsuit").

2. The Lawsuit involved Safeway's Flagship Kapahulu store, which had its grand opening in November 2007. The allegations in the Complaint specifically related to the failure of the waterproofing membrane on the elevated parking deck directly above the store.

3. The construction of the parking deck, including the concrete wearing slab, was completed in or around June/July 2007. Thereafter, the waterproof membrane was installed on top of the wearing slab. By the November 2007 grand opening of the store, the store began to experience significant water leaks through the roof deck. At this time, the waterproof membrane on the roof deck began to show signs of failure. Within months, the entire roof deck membrane exhibited cracks, blisters and de-lamination to the point that the failure was deemed catastrophic

FFIC-HNB026161

and the membrane was unable to serve its intended purpose. The water intrusion through the roof deck damaged, *inter alia*, the interior of the store, products and equipment inside the store and created life-safety issues for Safeway's customers, employees and anyone else in the grocery store, exposing Safeway to liability and costing substantial sums in repair/replacement costs.

4. As a result of the leaks, and over the ensuing almost eight years, Safeway was forced to spend millions of dollars to investigate the cause of the failure, including the various theories of causation raised by the Defendants, to apply a temporary membrane over the failed waterproofing membrane, to conduct ongoing maintenance of the temporary membrane and to finally remove and replace the entire membrane with a different permanent membrane. Safeway substantiated the total cost of this work and its collectable damages to be in excess of $11 Million.

5. While the roof deck membrane was still undergoing temporary repairs, and in 2012, Safeway sold the entire shopping center that included the grocery store to INVESCO ADVISERS, INC. ("Invesco") and leased back from Invesco the Safeway store. In connection with that transaction, and as a direct result of the defective condition of the roof deck, Safeway was also forced to 1) reduce the sales price of the shopping center by $1 Million; 2) pay to Invesco increased lease rent of $50,000 annually over 20 years amounting to another $1 Million; and 3) accept ongoing responsibility for the roof deck waterproofing and maintenance over the following 20 year period, at a cost that was estimated to be in excess $4 million.

II. **The Failed VersaFlex Waterproofing Systems**

A. **Timothy Lyons, HN&B and VersaFlex**

6. The failed waterproofing membrane and system were designed and manufactured by VERSAFLEX INCORPORATED ("VersaFlex"). VersaFlex began promoting

3

and selling its products in Hawaii in or around 2005. At times, Timothy Lyons was VersaFlex's primary representative in Hawaii and by mid-2006, Mr. Lyons was employed by HNB.

7. Mr. Lyons had worked with VersaFlex prior to his employment with HNB. Specifically, Mr. Lyons was a sales manager for G.W. Killebrew Co., Inc. ("Killebrew") between 2004 until April 2006. Killebrew merged with Allied Building Products Corporation ("Allied") in February 2006.

8. Killebrew/Allied was the sole distributor of VersaFlex products while Mr. Lyons was employed there. At the end of April 2006, Mr. Lyons was terminated from Killebrew/Allied but Mr. Lyons continued on as the distributor of the VersaFlex products. Because of Tim Lyons, HNB became the primary distributor of VersaFlex products in Hawaii.

9. Tim Lyons introduced HNB to the VersaFlex products; it was not until after meeting Mr. Lyons that HNB contemplated distributing the VersaFlex products. The President of HNB was not familiar with the VersaFlex products prior to meeting Tim Lyons.

10. By mid-2006, HNB was the main distributor of the VersaFlex products in Hawaii, and HNB supplied all of the VersaFlex products for use on the Safeway store and specifically the roof deck parking.

11. Safeway was first introduced to the idea of using VersaFlex products and system for the roof deck parking on Safeway's store in or around April 2006. At that time, Safeway had already largely completed the design of the store and that design contemplated the use of an alternative waterproofing system and the use of different waterproofing products. Specifically, the original design utilized a split-slab approach with a waterproof coating on top of the wearing slab *and* also on the top of the structural roof deck. The specified waterproofing material was to be Tremco.

4

FFIC-HNB026163

12. Safeway and its consultants evaluated the use of the VersaFlex system over a period of many months. During that time, Mr. Lyons met and communicated with Safeway and its consultants concerning the use of VersaFlex. Mr. Lyons represented to Safeway that the Tremco dual membrane system was not necessary, and that the VersaFlex waterproofing system had many advantages including ease of application, a much faster drying time (that would shorten the duration of the waterproofing work) and the Versaflex system would eliminate the need for the additional waterproof coating on top of the structural slab for the roof.

13. Based on the ongoing representations, including the VersaFlex literature, provided by Mr. Lyons, VersaFlex and HNB, Safeway ultimately decided to go with the VersaFlex system instead of the Tremco system.

14. More specifically, while employed by HNB, Mr. Lyons continued to represent to Safeway that the VersaFlex products and system were suitable for the elevated parking deck. Mr. Lyons supplied Safeway with the VersaFlex literature and product data sheets, pricing information for the products and for the Safeway job.

15. After joining HNB in mid-2006, Mr. Lyons participated in numerous discussions with representatives of Safeway, Nordic (the General Contractor) and VersaFlex regarding the VersaFlex product. These discussions involved reviewing the design of the roof deck, including (1) whether the VersaFlex products were suitable for the roof deck; (2) the quantity and type of VersaFlex products that would be needed; (3) the pricing of VersaFlex products; and (4) whether or not an aliphatic top coat was required.

16. While an employee of HNB, Mr. Lyons affirmed both the suitability and quality of the VersaFlex products and further confirmed that VersaFlex would issue the 20-year warranty required by Safeway for the roof deck waterproofing membrane.

FFIC-HNB026164

17. Mr. Lyons continued to be the conduit of pricing information between VersaFlex, Safeway and Safeway's contractor (and its subcontractor). On March 5, 2007, Mr. Lyons sent an email from his HNB account to VersaFlex recapping the product order for the Store including the 20% mark-up for VersaFlex and a 7% commission for Cascade, the applicator of the VersaFlex system.

18. Mr. Lyons continued to participate in job related meetings, including the 2007 pre-construction meetings.

19. Mr. Lyons was on HNB's payroll as of at least June or July 2006, and was acting on behalf of HNB as early as May 2006.

20. HNB hired Mr. Lyons as its commissioned salesman based strictly upon the "numbers" (i.e., the money) that Mr. Lyons convinced HNB's owner he could bring in to HNB.

21. Mr. Lyons was unsupervised by HNB's president and worked on commission. His income and his job at HNB depended on his ability to sell product. HNB had no protocols for him to follow. Next to the owner, Mr. Lyons was HNB's highest paid employee.

22. By June 2006, purchase invoices from VersaFlex to HNB list Mr. Lyons as the point of contact to pick up VersaFlex materials in Hawaii.

23. All of the VersaFlex products used on this Project, including but not limited to the FSS 45DC, Aqualok, SL/45, and Quickmender were purchased through Hawaii Nut and Bolt.

**B. The Removal of the Aliphatic Top Coat**

24. The VersaFlex coating system initially recommended for the Safeway deck contained both an aromatic coat and an aliphatic top coat. The VersaFlex literature

6

described the aliphatic top coat as protection for the underlying aromatic membrane from UV exposure.

25. In August 2006, Safeway was presented with several value engineering options for reducing costs: One of those options was to remove the aliphatic top coat.

26. VersaFlex and HNB (via Tim Lyons) approved the deletion of the aliphatic top coat and advised Safeway that the aliphatic top coat was only needed for maintaining color stability in the waterproofing membrane. Mr. Lyons participated in the value engineering deletion of the aliphatic topcoat.

27. By December 2006, Safeway accepted the recommendation and the aliphatic top coat was removed from the plans.

28. When the VersaFlex membrane ultimately failed, it became clear that the aliphatic top coat should not have been deleted since Hawaii has one of the highest UV ratings in the nation; the failure of the VersaFlex system was, at a minimum, accelerated by the absence of the aliphatic top coat and the protection it would have afforded against the intense UV light.

29. Even VersaFlex's key expert, Dudley Primeaux, testified that he would not have recommended deletion of the aliphatic top coat in this instance.

C. **VersaFlex's Failure to Produce ANY quality control records for the products that dramatically failed to perform as advertised**

30. VersaFlex kept no quality control records to prove that its products were manufactured according to specifications. It had no chemist on staff at the time the relevant products were manufactured, it had no dedicated machines for the various products it manufactured, and only conducted random checks on minute samples of the chemicals it purchased from various vendors that were combined to make its products. It also kept no

FFIC-HNB026166

customer complaint records and had no system to test or prove the performance of its products during the relevant timeframe.

### III. IMMEDIATE FAILURE OF THE VERSAFLEX SYSTEM

31. The Store and retail shops opened on November 9, 2007. Less than two months after opening, the rooftop parking deck began experiencing pervasive water leaks. The leaks were directly caused by the failure of the VersaFlex waterproofing system.

32. Over the next 14 months, despite attempts by Nordic, VersaFlex and Cascade to repair the roof deck and ramp using materials and procedures provided by VersaFlex and HNB (discussed above), Nordic, VersaFlex and Cascade failed to remedy the leaking roof deck and ramp.

33. Safeway was forced to hire its own consultants and to undertake its own investigation as to the cause of the failure and to undertake necessary steps to remediate the problem.

34. Although Safeway applied a temporary coating (manufactured by Pacific Polymers) over the defective VersaFlex coating, and constantly maintained and repaired this coating, leaks continued to permeate the roof deck periodically until 2015.

35. Beginning in the Fall of 2015, Safeway is in the process of permanently repairing the roof deck, which involves completely removing all of the VersaFlex products.

### IV. DAMAGE TO THE SAFEWAY STORE

36. Because of Defendants' various failures, Safeway's damages amount to over $ 11 Million. Damages include not just the failed VersaFlex material but also damage to the wearing slab, the roof deck, the fireproofing system, and the interior of the store including fixtures, merchandise and equipment.

FFIC-HNB026167

37. Specifically, the cost to permanently repair the roof deck is approximately $4.7 Million. This includes the price for the contractor, Beachside to replace the deck and conduct ongoing maintenance, as well as the cost of Safeway's consultant to oversee the work and obtain the necessary permits. *See* **Exhibit A**.

38. Safeway spent approximately $150,000 in temporary repairs immediately after the roof deck failed, before it instituted the "one-year" coating. **Exh. A.**

39. Safeway spent approximately $580,000 instituting the temporary "one-year" coating in 2010, and spent an additional $195,000 in on-going maintenance and repair of that one-year coating. **Exh. A.**

40. Safeway spent approximately $750,000 on consultants that were paid to investigate Defendants changing theories for the reasons behind the Roof Deck failure. The consultants also helped in providing solutions to fix the problem. **Exh. A.**

41. Safeway suffered approximately $50,000 of in-store damage, including ceiling tiles, merchandise, IT equipment, the fireproofing system, etc. **Exh. A.**

42. Due to the roof deck failure, Safeway reduced its sales price to Invesco by $1 Million. Further, as part of the sale-leaseback agreement, Safeway agreed to pay $50,000/year additional rent for 20 years (totaling another $1 Million). **Exh. A.**

43. Safeway estimates that its internal costs to deal with the roof deck issues and problems created inside the store (including construction managers time and travel) have amounted to at least $50,000. **Exh. A.**

FFIC-HNB026168

## V.   HNB'S INSURANCE CARRIER

44.   HNB's insurance carriers American Automobile Insurance Company/National Surety Corporation, (aka "Fireman's Fund"), wrote insurance policies for HNB that provided a total of $6 Million in coverage for HNB's business.

45.   HNB's business was limited to selling specialty construction products to contractors in Hawaii. This was not a typical retail operation open to the general public. Selling special construction products to contractors in Hawaii is HNB's only business so it stands to reason that such extensive coverage would be purchased by HNB with the intent and expectation that such insurance would protect the business/business owner and his family (HNB being a family business) from liability related to the products it sold. HNB understood that it was, in fact, so covered by its insurance policies. HNB certainly had no need for such all-encompassing coverage for its modestly sized business premises.

46.   Fireman's Fund retained the law offices of Cary T. Tanaka in June 2009 and has paid them to defend HNB in the Safeway case since then. Although Fireman's Fund sent HNB a reservation of rights letter, it has fully defended HNB for the past seven years. Greg H. Takase, Esq. of the Law Offices of Cary T. Tanaka participated in every aspect of the case, including document productions, attending numerous mainland and local depositions, hiring expert witnesses, participating in numerous mediation and settlement sessions, and filing a dispositive motion along with other motions. All indications to HNB and its business lawyer Peter Knapman were that the reservation of rights letter was perfunctory and not serious.

47.   On June 29, 2015, fully seven years after it began defending HNB in this matter, with the Safeway trial scheduled to begin on October 26, 2015, just four months away, and which trial was scheduled to last nine weeks until the end of 2015, Fireman's Fund filed a

FFIC-HNB026169

Complaint in U.S. Federal District Court for the District of Hawaii (Civil No. CV 15-00245) against its insured HNB seeking to be released from any obligation to defend or to indemnify HNB in the Safeway case. It also then filed on August 27, 2015 a Motion for Summary Judgment in that coverage case which was scheduled to be heard during the Safeway trial. HNB was forced to hire an attorney to defend against its own carrier at this critical juncture in the Safeway case and to face the uncertainty of having a huge judgment against it for which it had no insurance coverage.

48. On September 15, 2015 Fireman's Fund made a Rule 68 Offer of Settlement on behalf of HNB in the amount of $400,000, an amount having nothing to do with HNB's liability exposure and the resulting devastation to HNB in the event of a verdict against it, but rather obviously just defense costs for the trial. Fireman's Fund refused to increase its settlement offer on behalf of HNB, relying instead on its newly filed declaratory relief action, understanding that it was leaving HNB completely unprotected against any judgment.

49. On October 20, 2015 Magistrate Judge Kevin Chang, the Federal Magistrate assigned to the Fireman's Fund coverage action against HNB, held a settlement conference with all remaining parties in the Safeway case by agreement of the parties and in consultation with mediator Keith Hunter and State Circuit Court Judge Castagnetti, the trial Judge assigned to the Safeway case. Fireman's Fund coverage counsel Richard Miller Esq. appeared alone, without the coverage adjuster, and it is believed that he indicated to Judge Chang that Fireman's Fund had no intention of offering money to settle the coverage case. The Fireman's Fund tort adjuster appeared along with Mr. Takase for HNB but she refused to increase Fireman's Fund's settlement offer of $400,000 and actually accused HNB of "noncooperation" for agreeing to assign its claims against Fireman's Fund to protect its very

FFIC-HNB026170

existence, notwithstanding the fact that HNB had paid for $6 Million in coverage and would be financially devastated by a Judgment against it of even less than $1 Million. Safeway agreed with the Court that the only way to settle with HNB was to take an assignment of HNB's rights against Fireman's Fund and its insurance agent/broker(s), agree to a set off amount of $400,000 in favor of Cascade, the only remaining defendant at that time in the Safeway case, and to a stipulated Judgment in an amount that reasonably reflects HNB's exposure if it goes to trial, in exchange for Safeway's covenant not to pursue HNB for collection of that Judgment.

50. At that same settlement conference Safeway reached an agreement to settle with VersaFlex for its $1 Million policy limits, an indication of the strength of Safeway's claims about the VersaFlex products and, by operation of law, of HNB's liability on the product defect claim, before even considering the claims based upon the conduct of HNB with respect to its employee Tim Lyons and Mr. Lyons' conduct itself.

51. Recently, Safeway has also reached a settlement agreement with Cascade for its $1 Million policy limits.

52. Safeway and HNB have negotiated a settlement of this dispute that was the subject of Safeway's Complaint in this action by entering into that certain Settlement Agreement dated February 12, 2016;

53. Pursuant to the Settlement Agreement, Safeway and HNB agreed that Safeway has the right to seek entry of this Stipulated Judgment in the amount of EIGHT MILLION AND NO/100 DOLLARS ($8,000,000.00) (the "Judgment Amount");

//

//

//

FFIC-HNB026171

SAFEWAY INC.

By: _____
Its: _____

HAWAII NUT & BOLT, INC.

By: *[signature]*
Its: PRESIDENT
February 10, 2016

APPROVED AS TO FORM:

*[signature]*

TERENCE J. O'TOOLE
JUDITH ANN PAVEY
MAILE S. MILLER

Attorneys for Plaintiff
SAFEWAY INC.

---

*Safeway Inc. v. Nordic PCL Construction, Inc., et al.*, First Circuit Court, Civil No. 09-1-1414-06 (JHC); STIPULATED JUDGMENT AND ORDER

FFIC-HNB026172

SAFEWAY INC., a Delaware corporation

By: _____[signature]_____
Its: Vice President
Date: 7/11/16

HAWAII NUT AND BOLT, INC., a Hawaii corporation

By: _____
Its: _____
Date: _____

APPROVED AS TO FORM:

TERRY J. O'TOOLE
JUDITH A. PAVEY
MAILE S. MILLER
Starn O'Toole Marcus & Fisher

Attorneys for SAFEWAY, INC.

APPROVED AS TO FORM:

GREG H. TAKASE
Law Offices of Cary T. Tanaka
Attorney for HAWAII NUT AND BOLT, INC.

PETER K. KNAPMAN
Law Offices of Peter Knapman

Attorney for HAWAII NUT AND BOLT, INC.

APPROVED AND SO ORDERED:

_____
JUDGE OF THE ABOVE-ENTITLED COURT

*Safeway Inc. v. Nordic PCL Construction, Inc., et al.*, First Circuit Court, Civil No. 09-1-1414-06 (JHC); STIPULATED JUDGMENT AND ORDER

13

FFIC-HNB026173

| | |
|---|---|
| SAFEWAY INC., a Delaware corporation | HAWAII NUT AND BOLT, INC., a Hawaii corporation |
| By:_____ | By:_____ |
| Its:_____ | Its:_____ |
| Date:_____ | Date:_____ |

APPROVED AS TO FORM:

*/s/ Terry J. O'Toole*

TERRY J. O'TOOLE
JUDITH A. PAVEY
MAILE S. MILLER
Starn O'Toole Marcus & Fisher

Attorneys for SAFEWAY, INC.

APPROVED AS TO FORM:

*/s/ Greg H. Takase*

GREG H. TAKASE
Law Offices of Cary T. Tanaka
Attorney for HAWAII NUT AND BOLT, INC.

*/s/ Peter K. Knapman*

PETER K. KNAPMAN
Law Offices of Peter Knapman

Attorney for HAWAII NUT AND BOLT, INC.

APPROVED AND SO ORDERED:

JEANNETTE H. CASTAGNETTI   [SEAL - FIRST CIRCUIT COURT]   FEB 1 9 2016

JUDGE OF THE ABOVE-ENTITLED COURT

*Safeway Inc. v. Nordic PCL Construction, Inc., et al.*, First Circuit Court, Civil No. 09-1-1414-06 (JHC); STIPULATED JUDGMENT AND ORDER

13

## 25 YEAR ROOF DECK COATING COST

**I.  Beachside Quote (January 1, 2014):**

| | | |
|---|---|---|
| 1. | Years 1 through 5 | $1,040,000 |
| 2. | Years 6 through 10 | $579,360 |
| 3. | Years 11 through 15 | $675,240 |
| 4. | Years 16 through 20 | $773,240 |
| 5. | Years 21 through 25 | $883,536 |

Subtotal: $3,951,376

**II.  Beachside Maintenance of Membrane**

| | | |
|---|---|---|
| 1. | Change Order No. 1 re: increase in area | $73,695 |
| 2. | Estimated maintenance in between 5 year coatings 20,000 year/ x20 years | $400,000 |

Subtotal: $473,695

**III.  Division Seven Consulting Quote**

| | | |
|---|---|---|
| 1. | Years 1 through 5 | $78,000 |
| 2. | Years 6 through 10 | $55,880 |
| 3. | Years 11 through 15 | $61,226 |
| 4. | Years 16 through 20 | $67,348 |
| 5. | Years 21 through 25 | $74,063 |

Subtotal: $336,517

**TOTAL   $4,761,588**

149259v1

FFIC-HNB026175

## I. SUMMARY OF SAFEWAY'S DAMAGES

| | | |
|---|---|---|
| 1. | 2015 forward 25 yr. Roof Deck Coating Cost | $4,761,588 |
| 2. | Cost of original temporary repairs pre-one-year coating | $150,397 |
| 3. | Cost of one-year coating | $579,734 |
| 4. | Cost of on-going maintenance and repairs | $196,168 |
| 5. | Consultants paid to investigate Roof Deck Failure | $744,465 |
| 6. | Interior Store damage[1] | $50,000[2] |
| 7. | Miscellaneous costs supported by journal entries | $176,269 |
| 8. | Sale price reduction due to Roof Deck problems | $1,000,000 |
| 9. | $50,000/year additional rent due to Roof Deck problems (for 20 years) | $1,000,000 |
| 10. | Internal cost to deal with Roof Deck problems | $50,000 |
| | TOTAL | $8,697,562 |
| | Plus legal Fees | $2,912,831 |
| | **GRAND TOTAL** | **$11,610,393** |

---

[1] Additional damages were incurred during recent storms which have not yet been quantified.
[2] Safeway has $38,941 in documented costs. The remaining balance is internal store labor costs.

149259v1