Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

AMERICAN AUTOMOBILE ) CIVIL NO. CV15-00245
INSURANCE COMPANY, a ) ACK/KSC
Missouri Corporation; ) (Declaratory Judgment)
NATIONAL SURETY )
CORPORATION, an Illinois ) Oral Deposition of:
Corporation, ) JOHN FOSTER
       )
   Plaintiffs, )
       )
versus )
       )
HAWAII NUT & BOLT, INC. )
and SAFEWAY INC., )
       )
   Defendants. )
_____)
SAFEWAY INC.; HAWAII NUT &)
BOLT, INC., )
       )
  Counterclaim Plaintiffs,)
       )
versus )
       )
AMERICAN AUTOMOBILE )
INSURANCE COMPANY, a )
Missouri Corporation; )
NATIONAL SURETY )
CORPORATION, an Illinois )
Corporation, )
       )
  Counterclaim Defendants,)
       )
and )
       )
DOUGLAS MOORE, MONARCH )
INSURANCE SERVICES, INC., )
a Hawaii Corporation, and )
INSURANCE ASSOCIATES, )
INC., a Hawaii )
Corporation, )
       )
  Additional Counterclaim )
  Defendants. )
_____)

Page 2

1     VIDEOTAPED DEPOSITION OF JOHN FOSTER
2     30(b)(6) REPRESENTATIVE OF MONARCH INSURANCE SERVICES
3
4     Taken on behalf of the Plaintiffs/Counterclaim
5     Defendants American Automobile Insurance Company and
6     National Surety Corporation at the law offices of
7     Bronster Fujichaku Robbins, 1003 Bishop Street, Suite
8     2300, Honolulu, Hawaii, commencing at 9:08 a.m., on
9     Friday, the 16th of December, 2016, pursuant to the
10    Federal Rules of Civil Procedure.
11
12    REPORTED BY: KATHY PEARSON, RPR, CRR, CSR No. 313
13
14    APPEARANCES:
15       For the Plaintiffs/Counterclaim Defendants
        American Automobile Insurance Company and
16       National Surety Corporation:
17         SAMRAH R. MAHMOUD
        Crowell & Moring
18         3 Park Plaza, 20th Floor
        Irvine, California 92614
19
      For the Real Party in Interest and
20    Defendant/Counterclaim Plaintiff Safeway Inc.
      and Defendant/Counterclaim Plaintiff Hawaii Nut &
21    Bolt, Inc.:
22         JUDITH ANN PAVEY
        Starn O'Toole Marcus & Fisher
23         Pacific Guardian Center, Makai Tower
        733 Bishop Street, Suite 1900
24         Honolulu, Hawaii 96813
25    (Appearances continued)

Page 3

1    For the Counterclaim Defendants Douglas Moore
    and Monarch Insurance Services, Inc.:
2
      DONNA C. MARRON
3      SASHA A. HAMADA
      Bronster Fujichaku Robbins
4      1003 Bishop Street, Suite 2300
      Honolulu, Hawaii 96813
5
    For the Counterclaim Defendants Douglas Moore
6    and Insurance Associates, Inc.:
7      MARISSA L.L. OWENS
      Goodsill, Anderson, Quinn & Stifel
8      First Hawaiian Center, Suite 1600
      999 Bishop Street
9      Honolulu, Hawaii 96813
10   Videographer:
11      Keoni Sallas
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 4

1             INDEX
2
3   EXAMINATION BY MS. MAHMOUD      Pg 6
4   EXAMINATION BY MS. PAVEY        Pg 55
5   EXAMINATION BY MS. OWENS        Pg 77
6   REEXAMINATION BY MS. MAHMOUD    Pg 79
7   *****************************
8   DEPOSITION EXHIBITS:
9   EXHIBIT NUMBER 86            Pg 8
10    (30(b)(6) notice of deposition)
11  EXHIBIT NUMBER 87            Pg 48
12    (Hawaii Nut & Bolt insurance policy)
13  EXHIBIT NUMBER 88            Pg 59
14    (American Southern Home policy)
15  EXHIBIT NUMBER 89            Pg 60
16    (Foster LinkedIn web pages)
17
18
19
20
21
22
23
24
25

**EXHIBIT H**

Page 65

1  soliciting Hawaii Nut & Bolt to leave Monarch to join
2  him at Transpac.
3     Q  Okay, so there wasn't any back and forth
4  between Monarch and Transpac about the way Doug went
5  about --
6     A  I did not see any communication between
7  Monarch and Doug Moore other than the processing of the
8  agent of record letter when we received it.
9     Q  Okay.  You haven't been with Monarch that
10 long, but are you familiar with the claims history
11 against Monarch?
12    A  No.
13    Q  Do you know whether other claims have been
14 filed against Monarch?
15    A  I do not know.
16    Q  Does Monarch represent any hardware
17 businesses or wholesale hardware businesses?
18       MS. MARRON:  And I'll object that this is
19 outside the scope of the deposition notice, and also
20 not specific as to time.
21    A  And I'll answer that I'm not aware of other
22 wholesale distributors of construction products like
23 Hawaii Nut & Bolt that are currently our clients.  I'm
24 not aware of any.
25 BY MS. PAVEY:

Page 66

1     Q  Okay.  Do you know whether -- well, let me
2  ask you this.  I guess you've never talked to Fireman's
3  Fund about providing insurance for a wholesale hardware
4  business?
5     A  Correct.
6     Q  Even when you were at Fairmont or First
7  Insurance?
8     A  Correct.
9     Q  So when you were at Fairmont and First
10 Insurance, did you deal with Monarch?
11    A  Yes.
12    Q  And they never talked to you about insuring a
13 client of theirs that was a wholesale hardware
14 business, that you recollect?
15    A  Correct.
16    Q  Okay.  Are there agencies in Hawaii that
17 typically deal with businesses like Hawaii Nut & Bolt,
18 wholesale hardware businesses?
19    A  There's approximately 35 general agencies in
20 Hawaii, and any of them can deal with the type of
21 business that Hawaii Nut & Bolt has.  Any of those 35
22 well-known agencies could become the agents for a
23 business like Hawaii Nut & Bolt.
24    Q  Sure.  I mean, including Monarch, right?
25    A  Including Monarch.

Page 67

1     Q  All right.  I'm just wondering whether you
2  know if any of the agencies in town specialize in
3  businesses like Hawaii Nut & Bolt's.
4     A  No.
5     Q  So Monarch may have other clients that are
6  businesses like Hawaii Nut & Bolt.  You just don't
7  know?
8     A  Correct.
9     Q  Who would know the answer to that question at
10 Monarch?
11    A  We'd have to send an interoffice request to
12 have all agents advise whether or not they have as
13 clients a wholesaler of construction materials.
14    Q  Okay.
15    A  Can I add to that?
16    Q  Yes.
17    A  That if we did have another client that was
18 in the business of selling nuts and bolts, we would
19 place exactly the same insurance policies that we
20 placed for Hawaii Nut & Bolt.
21       So, which is my opinion.  The insurance that
22 Monarch placed for Hawaii Nut & Bolt, the general
23 liability and umbrella liability policy for Hawaii Nut
24 & Bolt, was the correct and proper insurance to place
25 for that kind of business.

Page 68

1     Q  Okay, and when you say that kind of business,
2  you're talking about a wholesale hardware distributor?
3     A  Yes.
4     Q  All right, and are you aware of any general
5  liability policy for a wholesale hardware distributor
6  that eliminates coverage, product liability coverage
7  for the distribution of a product?
8        MS. MAHMOUD:  Objection.  Incomplete
9  hypothetical, calls for speculation.
10       MS. MARRON:  I'll object to lack of
11 foundation, calls for a legal conclusion.
12    A  Distributors of product, any kind of product,
13 when they come to an agent for general liability
14 insurance, it would be a very rare circumstance where
15 the general liability policy did not provide products
16 liability.
17       For example, if you were in the business of
18 selling drones --
19 BY MS. PAVEY:
20    Q  Sure.
21    A  -- and your land -- you had a store and the
22 landlord required that you carry general liability for
23 the premises, in case someone slips and falls in your
24 store.  So we could obtain a general liability policy
25 excluding the product, and so that would be called a

Page 69

1  premises only policy.
2       So in general, the products are covered for
3  the product liability, what they sell. And if the
4  product is not covered, that would be, there would be a
5  reason for that, and it would be communicated to the
6  client.
7       Q  Okay.
8       A  Does that answer your question?
9       Q  Yeah, it does. So for a business owner who's
10 insured under a CGL policy and the business owner sells
11 products to the public, they would expect that their
12 policy --
13      A  That there is coverage for products
14 liability, correct.
15      MS. MAHMOUD: Objection, incomplete
16 hypothetical, calls for speculation.
17 BY MS. PAVEY:
18      Q  How would you describe Monarch's duties or
19 obligations to the clients, being the insureds?
20      A  To understand what type of business they
21 operate, to capture that information accurately on
22 paper, and then to determine which carriers can provide
23 them with insurance to insure their operations.
24      Q  And would included in those duties also be
25 the responsibility to let them know if Monarch learns

Page 70

1  that an insurance company, for example Fireman's Fund,
2  was eliminating coverage that they had previously
3  provided under the same policy?
4       MS. MARRON: Object. Compound, ambiguous,
5  and lack of foundation.
6       MS. MAHMOUD: Join, and incomplete
7  hypothetical.
8       A  If the carrier does not communicate changes
9  to the agent, then the agent cannot communicate the
10 changes to the client.
11 BY MS. PAVEY:
12      Q  Of course, but if the agent knew that the
13 carrier was eliminating coverage under the same policy,
14 it would be the, part of the duty of the agent and the
15 agency to let the insured know about that. Right?
16      A  Yes.
17      MS. MAHMOUD: Objection. Same objections.
18 BY MS. PAVEY:
19      Q  Do you know whether Fireman's Fund ever let
20 anybody at Monarch know that they were eliminating
21 product liability coverage for insureds like Hawaii Nut
22 & Bolt?
23      MS. MAHMOUD: Objection.
24      MS. MARRON: Objection. Calls for
25 speculation and states facts not in evidence.

Page 71

1       MS. MAHMOUD: Join. Incomplete hypothetical.
2       A  I'm not aware of Fireman's Fund eliminating
3  coverage for product liability.
4  BY MS. PAVEY:
5       Q  Okay. One of the agents, or one of the
6  adjustors, I should say, for Fireman's Fund testified
7  that Fireman's Fund doesn't write any policies anymore,
8  it hasn't for several years. But you are, have been
9  testifying about the fact that you're still doing
10 business with Fireman's Fund and they are still writing
11 policies.
12      What's your understanding of the, I guess the
13 status of Fireman's Fund as an insurance company?
14      MS. MAHMOUD: Objection. Misstates the
15 testimony, calls for speculation and a legal
16 conclusion.
17      MS. MARRON: And I'll further state that it's
18 outside the scope of any deposition topic.
19      A  So Fireman's Fund was acquired by Allianz and
20 people who -- the divisions were eliminated, but the
21 current company has a new name, Allianz Global
22 Insurance Company or something, HEIC, or something
23 along those lines, but the people are still the people
24 who formerly were Fireman's Fund people.
25      So Fireman's Fund is more -- has become an

Page 72

1  Allianz company. And so I use the terms
2  interchangeably, and perhaps that's confusing, but
3  Fireman's Fund and Allianz, to me, are the -- Fireman's
4  Fund has become Allianz.
5  BY MS. PAVEY:
6       Q  Okay. Do the communications that you have
7  with Fireman's Fund/Allianz today reference or in some
8  way still indicate that they are Fireman's Fund?
9       A  What they reference is that the policies that
10 were issued back in '01, '02, '03, '04, '05 were all
11 Fireman's Fund policies.
12      Q  And now what are they?
13      A  They're still Fireman's Fund policies from
14 the past.
15      Q  Okay, so when those policies that were
16 written before 2005, I think you said, were Fireman's
17 Fund policies, they're still renewed as Fireman's Fund
18 policies?
19      A  When they left us in 2007 or '8, and that
20 policy period, I believe, was the last period they were
21 with us, they were still Fireman's Fund policies. And
22 then after they left Monarch, we didn't renew any more
23 policies for Hawaii Nut & Bolt.
24      Q  Okay, I was asking actually more generally.
25 When old Fireman's Fund policies are being renewed, do

```
 1                    C E R T I F I C A T E

 2    STATE OF HAWAII        )
                             )
 3    COUNTY OF HONOLULU     )

 4            I, Kathy Pearson, CSR, do hereby certify:

 5            That on Friday, the 16th of December, 2016,
      commencing at 9:08 a.m., appeared before me JOHN
 6    FOSTER, the witness whose deposition is contained
      herein; that prior to being examined, was by me duly
 7    sworn or affirmed pursuant to Act 110 of the 2010
      Session of the Hawaii State Legislature; that the
 8    proceedings were taken by me in machine shorthand and
      reduced to print by me; that the foregoing represents,
 9    to the best of my ability, a true and correct
      transcript of the proceedings had in the foregoing
10    matter.

11            That a request for an opportunity to review
      and make changes to this transcript was made by the
12    deponent or a party (and/or their attorney) prior to
      the completion of the deposition.
13
              I further certify that I am not an attorney
14    for any of the parties hereto, nor in any way
      interested in the outcome of the cause named in the
15    caption.

16            This 82 page deposition of JOHN FOSTER, taken
      on the 16th of December, 2016, was subscribed and sworn
17    to before me in the State of Hawaii.

18
              DATED:  _____
19

20                    _____

21                    Kathy Pearson, CSR No. 313

22

23

24

25
```

RALPH ROSENBERG COURT REPORTERS, INC.
(808)524-2090