STARN ● O'TOOLE ● MARCUS & FISHER
A Law Corporation

| | |
|---|---|
| TERENCE J. O'TOOLE | 1209-0 |
| JUDITH A. PAVEY | 2173-0 |
| MAILE S. MILLER | 10179-0 |

733 Bishop Street, Suite 1900
Pacific Guardian Center, Makai Tower
Honolulu, Hawai'i 96813
Telephone: (808) 537-6100
totoole@starnlaw.com
jpavey@starnlaw.com
mmiller@starnlaw.com

**Attorneys for Defendant/Counterclaim Plaintiff SAFEWAY INC. and HAWAII NUT & BOLT, INC.**

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF HAWAI'I

| | |
|---|---|
| AMERICAN AUTOMOBILE INSURANCE COMPANY, a Missouri corporation; NATIONAL SURETY CORPORATION, a Illinois corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>HAWAII NUT & BOLT, INC. and SAFEWAY, INC.,<br><br>Defendants. | CIVIL NO. CV 15-00245-ACK/KSC (Declaratory Judgment)<br><br>**DEFENDANT/COUNTERCLAIM PLAINTIFF SAFEWAY INC. AND HAWAII NUT & BOLT, INC.'S CONCISE STATEMENT OF FACTS IN SUPPORT OF THEIR MEMORANDUM IN OPPOSITION TO COUNTERCLAIM DEFENDANTS DOUGLAS MOORE, MONARCH INSURANCE SERVICES, INC. AND INSURANCES ASSOCIATES, INC.'S MOTION FOR SUMMARY JUDGMENT ON STANDARD OF CARE AND PARTIAL SUMMARY JUDGMENT ON DAMAGES; DECLARATION OF**<br><br>(caption continued on next page) |

1759756

| | |
|---|---|
| | **JUDITH A. PAVEY; EXHIBITS 1-7; CERTIFICATE OF COMPLIANCE; CERTIFICATE OF SERVICE**<br><br>**HEARING:**<br>DATE:  September 5, 2017<br>TIME:  11:00 a.m.<br>JUDGE:  Hon. Alan C. Kay |
| SAFEWAY INC.; HAWAII NUT & BOLT, INC.<br><br>          Counterclaim<br>          Plaintiffs<br><br>   vs.<br><br>AMERICAN AUTOMOBILE INSURANCE COMPANY, a Missouri corporation; NATIONAL SURETY CORPORATION, a Illinois corporation,<br><br>          Counterclaim<br>          Defendants<br><br>   and<br><br>DOUGLAS MOORE, MONARCH INSURANCE SERVICES, INC., a Hawaii corporation, and INSURANCE ASSOCIATES, INC., a Hawaii corporation<br><br>          Additional<br>          Counterclaim<br>          Defendants | TRIAL DATE:  Nov. 29, 2017<br>TRIAL JUDGE:  Hon. Alan C. Kay |

1759756

**DEFENDANT/COUNTERCLAIM PLAINTIFF SAFEWAY INC.
AND HAWAII NUT & BOLT, INC.'S CONCISE STATEMENT
OF FACTS IN SUPPORT OF THEIR MEMORANDUM IN OPPOSITION
TO COUNTERCLAIM DEFENDANTS DOUGLAS MOORE, MONARCH
INSURANCE SERVICES, INC. AND INSURANCES ASSOCIATES, INC.'S
MOTION FOR SUMMARY JUDGMENT ON STANDARD OF CARE AND
PARTIAL SUMMARY JUDGMENT ON DAMAGES [DKT. 313]**

Pursuant to Rule 12(d) of the Federal Rules of Civil Procedure and Rule 56.1 of the Local Rules of Practice for the United States District Court for the District of Hawaii, Defendant/Counterclaim Plaintiffs Safeway Inc. ("*Safeway*") and Hawaii Nut & Bolt, Inc. ("*HNB*"), (collectively "*Safeway/HNB*"), by and through their attorneys, Starn O'Toole Marcus & Fisher, respectfully submit their concise statement of material facts in support of their MEMORANDUM IN OPPOSITION TO COUNTERCLAIM DEFENDANTS DOUGLAS MOORE, MONARCH INSURANCE SERVICES, INC. AND INSURANCE ASSOCIATES, INC.'S MOTION FOR SUMMARY JUDGMENT ON STANDARD OF CARE AND PARTIAL SUMMARY JUDGMENT ON DAMAGES [DKT. 313] ("*Opposition*"), which is being filed contemporaneously.

Safeway/HNB ADMITS fact numbers 1, 2, 4, 7-10, and 14-17.

|   | BROKER DEFENDANTS | EVIDENTIARY SUPPORT |
|---|---|---|
| 3. | DENIED as stated. | Pursuant to this Court's Order, HNB did not have products liability coverage under the policies at issue. [Dkt. 193] Order Granting Plaintiffs American Automobile Insurance Company's and National Surety Corporation's Motion to Dismiss Breach of |

1759756

| | | |
|---|---|---|
| | | Contract and Reformation Counterclaim ("***Order***") at 35. |
| 5. | DENIED as stated for the purpose offered. | The policies at issue speak for themselves. The Court has taken judicial notice of the policies. |
| 6. | DENIED as stated. | Bill Hayes Jr. specifically requested and understood that HNB had product liability coverage, and that such coverage was critical for HNB. **Exh**. 1, Declaration of William Hayes Jr. ("***Hayes Jr. Decl***.") at ¶5-7. |
| 11. | DENIED as stated. | HNB was responsible for Peter Knapman's fees incurred in connection with this action, but the hiring of Knapman was necessitated by the broker Defendants' negligent breach of contract. **Exh**. 2, Deposition of Bill Hayes III ("***Hayes Dep***.") 234:11-19. |
| 12. | DENIED as stated for the purpose offered. | *Group Builders, Inv. v. Admiral Insurance Co.*, 231 P.3d 67 (App. 2010) decided issues pertaining to coverage based on *Burlington Ins. Co. v. Oceanic Design & Const., Inc*., 383 F.3d 940 (9th Cir. 2004), and did not represent a shift in coverage law. [Dkt. 193] Order at 17-19. |
| 13. | DENIED as stated for the purpose offered. | Some local insurers (but not Fireman's Fund, the carrier at issue in the case) responded to the *Group Builders* decision and Act 83, codified in HRS 431:1 et seq. by providing endorsements to clarify the extent of coverage but the Legislature only required them to continue to interpret the term "occurrence" as they had previously, prior to *Group Builders*, which was decided – years after the *Burlington* decision. There is no evidence substantiating the extent to which the endorsements affected specific policy interpretation nor claims handling practices except that it is clear some insurance companies would likely have conceded coverage for HNB in the |

|   |   | |
|---|---|---|
|   | underlying case had the issue been raised by the Broker Defendants between 2004 and 2008-2009.<br>**Exh**. 3, Deposition of Douglas Moore ("*Moore Dep*.") at 163:19-164:25; 167:18-168:14. **Exh**. 4, Deposition of John Foster ("*Foster Dep*.") at 57:18-58:16. **Exh**. 5, Deposition of Sue Savio ("*Savio Dep*.") at 60:13-61:8. | |

|   | **ADDITIONAL FACTS** | **EVIDENTIARY SUPPORT** |
|---|---|---|
| 18. | Bill Hayes Jr. ("*Hayes Jr*.") founded HNB in the 1980s, and sold HNB to his son Bill Hayes III ("*Bill Hayes*") in 2003. | **Exh**. 2, Hayes Dep. at 14:1-18. |
| 19. | Douglas Moore ("*Moore*") served as HNB's insurance agent starting in 2000, at which point he was employed by Monarch Insurance. Moore was the agent of Broker Defendants which procured the relevant policies at all times material to this suit.<br><br>Hayes Jr. relied on Moore to procure appropriate coverage for HNB, including products liability coverage, which he considered essential and critical coverage for HNB. Hayes Jr. understood that the CGL policy purchased through Moore included this critical coverage.<br><br>Hayes Jr. stated: "As the owner of a product distribution business product liability insurance coverage was critical to me and of course I understood from Douglas Moore that the policy HNB purchased through him provided that type of coverage. In my opinion no sensible business person would operate without such insurance coverage."<br><br>When Bill Hayes took over HNB in 2003, | **Exh**. 2, Hayes Dep. at 87:19-88:22; 114:4-7; 135:23-136:8.<br>**Exh**. 3, Moore Dep. at 38:18-39:1; 40:21-41:17; 153:2-154:10.<br>**Exh**. 1, Hayes Jr. Decl. at ¶5-8. |

3

1759756

|  | | |
|---|---|---|
|  | Moore continued to cover HNB's same needs. Bill Hayes understood Moore would continue to provide HNB with the same coverage required by his father. | |
| 20. | Moore and Bill Hayes met frequently and discussed HNB's business operations and needs. Hayes clearly expressed that he wanted a continuation of the fullest possible liability coverage for HNB's operations, as HNB had previously obtained.<br><br>Moore procured identical policies for HNB under Bill Hayes as he had under his father.<br><br>Moore represented to Bill Hayes that HNB was fully covered, leading Bill Hayes to understand that HNB was fully covered for liability based on the sale of products. | **Exh**. 2, Hayes Dep. at 101:7-14; 105:6-9; 114:4-7; 116:1-10; 118:3-120:6; 129:21-131:4; 135:23-136:8.<br>**Exh**. 3, Moore Dep. at 46:4-47:17; 49:18-50:7. |
| 21. | Moore later described himself as a one-man operation representing primarily tech firms and pension plans, characterizing HNB's account as "cookie cutter" and requiring "very little work." Moore has never represented any other wholesale hardware business like HNB and had almost no experience representing and procuring insurance for construction related business. | **Exh**. 3, Moore Dep. at 47:5-24; 170:3-11; 158:6-18. |
| 22. | Brokers must keep up to date on the legal climate surrounding interpretation and effectiveness of policies. | **Exh**. 6, Declaration of Elliott C. Rothman ("***Rothman Decl***.") at ¶ 8. |
| 23. | The coverage issues created by the *Burlington* decision were a known "regular topic" in the insurance industry, and known to Monarch and its agents. | **Exh.** 4, Foster Dep. at 28:24-29:12. |
| 24. | Moore was ignorant of coverage status under CGL policies insuring construction related businesses following the decisions in both *Burlington* and *Group Builders*.<br><br>After FFIC sent HNB a Reservation of Rights letter, Moore continued to advise Bill Hayes that | **Exh**. 3, Moore Dep. at 99:5-24**;** 161:25-163:3; 165:1-7.<br>**Exh**. 7.<br>**Exh**. 4, Foster Dep. at 69:9-14; 69:18-71:3. |

4

|     |     |     |
| --- | --- | --- |
|     | HNB had product liability coverage under the policy at issue.<br><br>The Brokers have testified that a business owner such as HNB who is insured under a CGL policy and sells products to the public would have coverage for products liability under the policy. |     |
| 25. | When *Burlington* was issued, neither Moore nor the Broker Defendants took any steps to ensure that Fireman's Fund would provide coverage for claims based on the sale of products to construction professionals. | **Exh**. 3, Moore Dep. at 47:8-17; 52:14-25; 54:4-17; 165:1-7; 177:1-178:20.  **Exh.** 5, Savio Dep. at 60:8-61:8. **Exh**. 4, Foster Dep. at 69:18-71:3. |
| 26. | Neither Moore nor the Broker Defendants provided HNB with any warning that Fireman's Fund would deny construction related products liability claims under *Burlington,* nor did they research the possibility that HNB could secure other coverage to protect it against such a loss.<br><br>HNB's same policy was instead renewed year after year, despite the risks associated with the *Burlington* decision. | **Exh**. 3, Moore Dep. at 47:8-17; 52:14-25; 159:16-160:23; 177:1-178:20.  **Exh**. 6, Rothman Decl. at ¶ 7, 9.  **Exh.** 5, Savio Dep. at 60:8-61:8. **Exh**. 4, Foster Dep. at 69:18-71:3. |
| 27. | Monarch Insurance, (the Broker who assigned HNB's account to Moore) held itself out as having special expertise in procuring insurance for construction related businesses. | **Exh**. 4, Foster Dep. at 54:6-8. |
| 28. | An insurance broker owes a duty to exercise reasonable care, skill and diligence, and this duty is violated if the insurance procured for a customer does not cover a known risk. | **Exh.** 5, Savio Dep. at 108:6-20; 110:3-15; 111:5-13. **Exh.** 6, Rothman Decl. at ¶¶ 5-10.  **Exh**. 4, Foster Dep. at 70:12-16. |

5

1759756

DATED:  Honolulu, Hawaii, August 15, 2017.

        */s/ Judith A. Pavey*
        TERENCE J. O'TOOLE
        JUDITH A. PAVEY
        MAILE S. MILLER
        Attorneys for Defendants/Counterclaim
        Plaintiffs SAFEWAY INC and
        HAWAII NUT & BOLT, INC.