# EXHIBIT 6

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| AMERICAN AUTOMOBILE INSURANCE COMPANY, a Missouri corporation; NATIONAL SURETY CORPORATION, a Illinois corporation,<br><br>              Plaintiffs,<br>vs.<br><br>HAWAII NUT & BOLT, INC. and SAFEWAY, INC.,<br><br>              Defendants. | CIVIL NO. CV 15-00245-ACK/KSC (Declaratory Judgment)<br><br>DECLARATION OF ELLIOTT C. ROTHMAN |
| SAFEWAY INC.; HAWAII NUT & BOLT, INC.,<br><br>              Counterclaim Plaintiffs,<br>vs.<br><br><br>AMERICAN AUTOMOBILE INSURANCE COMPANY, a Missouri corporation; NATIONAL SURETY CORPORATION, a Illinois corporation,<br><br>              Counterclaim Defendants,<br><br>and<br><br>DOUGLAS MOORE, MONARCH INSURANCE SERVICES, INC., a Hawaii corporation, and INSURANCE ASSOCIATES, INC., a Hawaii corporation,<br><br>              Additional Counterclaim Defendants. | TRIAL DATE: November 29, 2017<br>TRIAL JUDGE: Hon. Alan C. Kay |

1759088                                                     **Exhibit 6**

## DECLARATION OF ELLIOTT C. ROTHMAN

I, ELLIOTT C. ROTHMAN, do declare under penalty of law that the following is true and correct:

1. I am over eighteen and am competent to make this declaration.

2. I make this declaration based upon my firsthand knowledge of matters stated herein.

3. I am a licensed Fire & Casualty Insurance Agent/Broker in California. I have been a retail Insurance Broker for 51 years, as well as a senior executive of several Insurance Brokerages. During my career, I have procured and serviced hundreds of General Liability policies, which included Products Liability coverage. Under my supervision, thousands of such policies were procured and serviced. Many of the clients for whom such coverage was obtained were Wholesale Distributors. I am familiar with Products Liability coverage and with the custom and practice of ordinary retail Insurance Brokers and Agents with respect to the procurement and servicing of Products Liability policies. I am currently a Principal at Edgewood Partners Insurance Center in Los Angeles. A copy of my CV is attached to this report as an Appendix.

4. I have been retained as an Expert Witness in over 600 matters, most of which concerned the Standard of Care for Insurance Brokers and Agents. I have testified in State and Federal Courts in California and other states on at least 60 occasions. A list of recent testimony is attached to this report as an appendix.

5. My assignment in this matter was to opine on whether Douglas Moore, Monarch Insurance Services, Inc. and Insurance Associates, Inc. met the Standard of Care in the

procurement and servicing of Hawaii Nut and Bolt, Inc.'s ("HNB") primary and excess General Liability policies from May 1, 2005 through May 1, 2009.

6. My opinion is that Mr. Moore breached the Standard of Care by failing to determine, to a reasonable level of certainty, that the General Liability and Excess coverage which he obtained for HNB provided Products Liability coverage for Construction Defect claims. His breaches include his apparent lack of knowledge of the possibility of adverse interpretation, by Fireman's Fund companies, of Products Liability coverage for Construction Defect claims, following a Court decision in 2004, his failure to determine Fireman's Fund's position on this issue as soon as it arose, failure to inform his client regarding the possibility that its Products Liability coverage might not respond to what was virtually the only risk exposure which HNB faced, failure to secure, in the absence of a positive response from Fireman's Fund, alternative proposals from other Insurers which would cover Products-related Construction Defect claims and failure to advise HNB of the possibility of available protection from product manufacturers from such claims.

7. Mr. Moore has testified that he was HNB's broker since "…at least 2000". He knew that its business was primarily the sale, as a wholesale distributor, of products to those involved in the Construction industry. As such, he knew that HNB faced liability claims for damages arising out of the products which it sold. Since these products were to be used in construction, claims arising out of their use would, to a virtual certainty, be Construction Defect claims. Providing, to a client, a policy or policies which would not respond to Construction defect claims would therefore be both a misrepresentation and a breach of the Broker's responsibility to use due care in procuring insurance. Mr. Moore's testimony indicates that he never inquired as to Fireman's Fund's response to the <u>Burlington</u> (see below) decision, never

3

approached another insurer for a proposal at any time and never informed HNB that a potential issue existed as to the appropriateness of Fireman's Fund as its Products Liability Insurer.

       8.    A fundamental element of the Standard of Care is possessing the skills and knowledge of an ordinary Insurance Broker/Agent. Part of the core knowledge required of a Broker/Agent is called market intelligence. This includes keeping up to date on the legal climate surrounding the interpretation and effectiveness of policies which they do or will provide to their clients, as well as the positions taken by Insurers with respect to policy interpretation. To put it simply, a Broker/Agent is required to make reasonable efforts to determine that the coverage procured will respond as it was intended and expected to do when agreed upon by the Agent/Broker and the client. Knowledge of a very significant Court decision affecting many policyholders is readily obtainable for an average Insurance Broker/Agent.

       9.    On September 8, 2004, a decision in <u>Burlington Insurance Company v. Oceanic Design & Construction, Inc.</u> by the Ninth Circuit of the United States Court of Appeals was published. This decision appears to hold that standard Products Liability coverage in a Commercial Liability Policy does not apply to Products Liability alleged as part of a Construction Defect claim (my lay interpretation). In 2007 the Federal District Court in Hawaii reached a highly similar conclusion. In my experience, decisions as far-reaching as the two matters involving Burlington would engender very serious concern in both the Construction and Insurance industries, leading to commentary and questions in the relevant trade press of both industries, as well as to colloquy among Insurance Broker/Agents and between Broker/Agents and Insurers. Mr. Moore, as the Broker for HNB, is charged with the knowledge that the <u>Burlington</u> decision, if followed by an Insurer, would eviscerate the coverage provided to HNB. His responsibility was to ascertain Fireman's Fund's position and, if that position was to deny

4

1759088

future Products Liability claims based upon the <u>Burlington</u> decisions, to immediately inform HNB and begin efforts to secure coverage from an Insurer which would commit to a pre-Burlington interpretation of its policy language, or amend its policy form to provide the desired coverage.

10. Finally, it should be noted that many Wholesale Distributors, which have no role in the manufacturing of the products they sell, do not purchase Products Liability coverage, instead securing protection from Manufacturers by means of Vendor's Endorsements to the Manufacturers' insurance policies. Others secure Vendor's Endorsements but also purchase their own coverage at minimal premiums, as a fail-safe. In my opinion, Mr. Moore should have explored the feasibility of this approach to HNB's risk exposure.

11. Based upon the foregoing, I conclude that in the event Fireman's Fund prevails in its assertion of non-coverage for the Safeway claims, Mr. Moore and his employer(s) are accountable for the failure to secure the coverage sought by HNB.

I declare under penalty of perjury that the foregoing is true and correct.

DATED: Santa Monica, California, August 7, 2017.

_____
ELLIOTT C. ROTHMAN