IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

|  |  |  |
|---|---|---|
| AMERICAN AUTOMOBILE INSURANCE COMPANY, a Missouri Corporation; NATIONAL SURETY CORPORATION, an Illinois Corporation, | ) ) ) ) ) | Civ. No. 15-00245 ACK-KSC |
| Plaintiffs, | ) ) | ORDER DENYING COUNTERCLAIM DEFENDANTS DOUGLAS MOORE, |
| vs. | ) ) ) | MONARCH INSURANCE SERVICES, INC., AND INSURANCE ASSOCIATES, |
| HAWAII NUT & BOLT, INC. AND SAFEWAY INC., | ) ) ) ) | INC.'S MOTION FOR SUMMARY JUDGMENT AND SUBSTANTIVE JOINDER |
| Defendants. | ) ) | |
| SAFEWAY INC.; HAWAII NUT & BOLT, INC. | ) ) ) | |
| Counterclaim Plaintiffs | ) ) | |
| vs. | ) ) | |
| AMERICAN AUTOMOBILE INSURANCE COMPANY, a Missouri Corporation; NATIONAL SURETY CORPORATION, an Illinois Corporation, | ) ) ) ) ) ) | |
| Counterclaim Defendants. | ) ) ) | |
| and | ) ) | |
| DOUGLAS MOORE, MONARCH INSURANCE SERVICES, INC., a Hawaii Corporation, and INSURANCE ASSOCIATES, INC., a Hawaii Corporation, | ) ) ) ) ) ) | |
| Additional Counterclaim Defendants. | ) ) | |

<u>**ORDER DENYING COUNTERCLAIM DEFENDANTS DOUGLAS MOORE, MONARCH INSURANCE SERVICES, INC. AND INSURANCE ASSOCIATES, INC.'S MOTION FOR SUMMARY JUDGMENT AND SUBSTANTIVE JOINDER**</u>

For the reasons set forth below, the Court DENIES Plaintiffs/Counterclaim Defendants Monarch Insurance Services, Inc. and Douglas Moore's Motion for Summary Judgment, to which Insurance Associates, Inc. and Douglas Moore have filed a substantive joinder. ECF Nos. 313, 315, 317.

<u>**BACKGROUND**</u>[1]

At issue in this matter is the alleged failure of Douglas Moore and the companies with which he was affiliated, Monarch Insurance Services, Inc. and Insurance Associates, Inc. (collectively, "Brokers") to procure for Hawaii Nut & Bolt ("HNB") adequate insurance coverage for a dispute over defects related to the construction of a Safeway store in Hawaii. The Brokers have moved for summary judgment here on two issues: (1) what duties the Brokers owed to HNB; and (2) whether certain attorneys' fees are recoverable.

**I.    Claims in the Underlying Action**

On June 22, 2009, Safeway filed a complaint in the First Circuit Court of the State of Hawaii ("Underlying Complaint" or "UC"). Third Am. Counterclaim ("TACC") ¶ 16, ECF

---

[1] The Court incorporates by reference the Factual Background discussed in its December 16, 2016 Order, ECF No. 193, and its June 27, 2017 Order, ECF No. 342.

No. 206; Brokers' Concise Statement of Facts ("Brokers' CSF"), Ex. 3, Compl., <u>Safeway Inc. v. Nordic PCL Constr., Inc.</u>, No. 09-1-1414-06 (Haw. Cir. Ct. June 22, 2009). The Underlying Complaint involved issues pertaining to the construction of the roof deck at a Safeway store on Kapahulu Avenue in Honolulu, Hawaii ("Kapahulu Safeway"). <u>See generally</u> UC. In particular, the Underlying Complaint focused on the failure of the "VersaFlex Coating System," a group of products used to waterproof the roof deck of the Kapahulu Safeway. <u>See generally id.</u>

According to the Underlying Complaint, Safeway relied on HNB and VersaFlex's representations that the VersaFlex Coating System was adequate for its intended use in connection with the Kapahulu Safeway project and would perform as intended, notwithstanding Hawaii's ultraviolet exposure. UC ¶¶ 20-23. HNB also proposed to Safeway "the option of deleting the UV and color resistant aliphatic top coat" of the VersaFlex Coating System to save costs. <u>Id.</u> ¶ 27. However, shortly after the Kapahulu Safeway opened, the store began to experience water leaks from the roof deck, and Safeway alleged that it was "apparent that the VersaFlex Coating System was failing" because of the cracks and failures in the waterproof membrane in the roof deck. <u>Id.</u> ¶ 33. According to Safeway, the deletion of the aliphatic top coat contributed to its damages. <u>Id.</u> ¶ 30.

3

In the Underlying Complaint, Safeway brought claims against various defendants, including a products liability claim, among others, against HNB as the distributor of the allegedly defective VersaFlex products.[2] See generally id. HNB notified its insurers American Automobile Insurance Co. and National Surety Corp. (collectively, Fireman's Fund Insurance Corp., "FFIC," or the "Insurers") of the claims. See TACC ¶ 42. The Insurers defended HNB during the litigation subject to a reservation of rights letter regarding coverage. Id.; see HNB CSF ¶ 24.

Safeway and HNB settled the Underlying Complaint on February 12, 2016 and entered into a stipulated judgment in favor of Safeway in the amount of $8 million. Brokers' CSF ¶¶ 15, 17. In the Settlement Agreement, HNB assigned to Safeway all of its claims against the Brokers in exchange for a mutual release of liability and a covenant not to execute the stipulated judgment. Id. ¶ 16.

---

[2] The claims Safeway asserted against HNB were: 1) breach of contract; 2) breach of the covenant of good faith and fair dealing; 3) negligence/gross negligence; 4) breach of express and implied warranties; 5) unjust enrichment; 6) negligent misrepresentation and/or omission; 7) intentional misrepresentation and/or fraudulent concealment; 8) product defects; and 9) negligent design and manufacture. UC ¶¶ 49-96, 107-25.

## II. The Instant Action

On June 29, 2015, the Insurers filed a Complaint for Declaratory Judgment against HNB in this Court. Compl., ECF No. 1. The Complaint sought a binding declaration that under the insurance policies HNB had purchased, the Insurers had no duty to further defend and/or indemnify HNB for the claims asserted in the Underlying Action. Id.

The Insurers had issued to HNB three Commercial General Liability ("CGL") policies and three umbrella and excess policies (collectively, "Policies") relevant to the Underlying Action. Brokers' CSF ¶ 4. HNB purchased the Policies through Douglas Moore, who was affiliated with Monarch Insurance Associates and later Insurance Associates, Inc. Id. ¶¶ 2-3. The CGL policies had limits of $1 million per occurrence and the umbrella and excess policies had limits of $5 million per policy period. Id. ¶ 4. The Policies covered property damage caused by an "occurrence" taking place in the coverage territory. Order at 7, ECF No. 193; Brokers' CSF ¶ 5. The Polices defined an "occurrence" as "[a]n accident including continuous or repeated exposure to substantially the same general harmful conditions." Order at 7, ECF No. 193. William Hayes, the owner of HNB, believed that he was covered for any claims that could be brought against HNB. Brokers' CSF ¶ 6.

On September 4, 2015, HNB filed a counterclaim against

the Insurers. ECF No. 14. HNB then amended its counterclaim twice to join Safeway, by virtue of the assignment, and to add the Brokers as Counterclaim Defendants. See ECF Nos. 45, 64. The Insurers moved to dismiss the Second Amended Counterclaim on September 7, 2016. ECF No. 104. The Brokers took no position on the motion to dismiss. ECF Nos. 179, 189. The Court granted the Insurers' motion with leave to amend on December 16, 2016. Order, ECF No. 193. With respect to allegations that the Insurers breached the insurance contracts, "the Court conclude[d] that none of the claims [in the Underlying Action] are covered by the Policies...." See id. at 35; see also id. at 27, 29-30, 34. Safeway and HNB filed the operative Third Amended Counterclaim on January 13, 2017, which contained claims against both the Insurers and the Brokers. ECF No. 206. The Insurers have now settled their declaratory judgment action and the counterclaims against them, which settlement has been determined to have been in good faith. ECF No. 350.

The remaining claims in this action are against the Brokers for: (1) breach of contract; (2) negligence; (3) promissory estoppel; and (4) breach of fiduciary duty. TACC ¶¶ 168-93. The Brokers previously moved for summary judgment on the basis that the release in the settlement agreement in the Underlying Action precluded HNB and Safeway from proving damages. See ECF Nos. 293, 307. This Court denied the Brokers'

6

motion on June 27, 2017.  ECF No. 342.  On May 12, 2017, Monarch Insurance and Mr. Moore then filed the instant motion for summary judgment, to which Insurance Associates and Mr. Moore filed substantive joinders on May 15 and May 16.  ECF Nos. 313, 315, 317 ("Motion").  HNB and Safeway filed their Opposition on August 15, 2017.  ECF No. 351 ("Opp.").  The Brokers filed their Reply on August 22, 2017.  ECF No. 354 ("Reply").

The Court held a hearing on the Brokers' Motion on September 5, 2017.

## STANDARD

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Federal Rule of Civil Procedure ("Rule") 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also Broussard v. Univ. of Cal., 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of

material fact." Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (citing Celotex, 477 U.S. at 323); see also Jespersen v. Harrah's Operating Co., 392 F.3d 1076, 1079 (9th Cir. 2004). "When the moving party has carried its burden under Rule 56[(a)] its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586-87 (1986) (citation and internal quotation marks omitted); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." In re Barboza, 545 F.3d 702, 707 (9th Cir. 2008) (citing Anderson, 477 U.S. at 248). When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party. Matsushita Elec. Indus. Co., 475 U.S. at 587; see also Posey v. Lake Pend Oreille Sch. Dist. No. 84, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence of [the nonmovant] is to be believed, and all

justifiable inferences are to be drawn in his favor") (internal
citation and quotation omitted).

**DISCUSSION**

**I.    The Brokers' Duties to HNB**

Both parties agree that in Hawaii, "[a]n insurance
agent owes a duty to the insured to exercise reasonable care,
skill, and diligence in carrying out the agent's duties in
procuring insurance." Quality Furniture, Inc. v. Hay, 61 Haw.
89, 93, 595 P.2d 1066, 1068 (Haw. 1979); see Motion at 8; Opp.
at 12.  While recognizing that they owed duties to HNB, the
Brokers nevertheless assert these duties did not include
anticipating the Intermediate Court of Appeals' ("ICA") decision
in Group Builders, Inc. v. Admiral Insurance Co., 123 Haw. 142,
231 P.3d 67 (Haw. App. Ct. 2010) – a duty on which they contend
HNB and Safeway's claims depend.  See Motion at 7.  However, the
Brokers' Motion itself rests on the premise that a reasonable
jury could not find that the Brokers breached duties owed to HNB
independent of Group Builders.  In their Opposition HNB and
Safeway contest this premise, asserting that a reasonable jury
could find that the Brokers owed duties to HNB under the law
that existed at the time the Policies were procured, including
the Ninth Circuit's decision in Burlington Insurance Co. v.
Oceanic Design & Construction, Inc., 383 F.3d 940 (9th Cir.
2004).  See Opp. at 4, 24.

9

## A. **Developments in Hawaii's "Occurrence"-Based Insurance Law**

In 2010, the ICA held in Group Builders that "construction defect claims do not constitute an 'occurrence' under a CGL policy," and thus contract and contract-based tort claims arising from shoddy performance were not covered under CGL policies.  See 123 Haw. at 148-49, 231 P.3d at 73-74.  In so holding, the ICA extensively discussed the Ninth Circuit's 2004 holding in Burlington.  See id. at 146-48, 231 P.3d at 71-73. In Burlington, the Ninth Circuit, interpreting Hawaii law, held that contract-based construction defect claims were not covered "occurrences" under a standard CGL policy.  See 383 F.3d at 946-48.  Prior to 2010 when Group Builders was decided, courts in this district applied Burlington to find that contract-based claims were not covered occurrences under CGL policies.  See, e.g., Burlington Ins. Co. v. United Coatings Mfg. Co., Inc., 518 F. Supp. 1241, 1249-51 (D. Haw. 2007); State Farm Fire & Cas. Co. v. Lau, CV No. 06-00524 DAE-BMK, 2007 WL 1288153, at *5-6 (D. Haw. Apr. 30, 2007).

In 2011, the Hawaii Legislature passed Act 83 out of a concern that Group Builders would affect coverage that was understood to exist for ongoing projects.  See H.B. No. 924, 26th Leg., Reg. Sess. (Haw. 2011).  Under Act 83, for a construction liability policy, "the meaning of the term 'occurrence' shall be construed in accordance with the law as it existed at the time

that the insurance policy was issued." Act 83, as codified at Haw. Rev. Stat. § 431:1-217(a). Subsequent to the passage of Act 83, courts in this district have continued to find that policies issued before Group Builders and after Burlington continue to fall within the Ninth Circuit's Burlington analysis. See, e.g., Ill. Nat'l Ins. Co. v. Nordic PCL Constr., Inc., 870 F. Supp. 2d 1015, 1031-32 (D. Haw. 2012) (finding that for policies issued in 2007, the court was bound by the Ninth Circuit's analysis in Burlington).

The Brokers admit that Group Builders was issued after the expiration of the final policy period for the Policies at issue here. See Motion at 13; Brokers' CSF ¶ 4. Given that the Policies pre-date Group Builders, Act 83 requires that the Policies be interpreted according to then-existing law. As such, any change Group Builders may have wrought in Hawaii insurance law[3] appears to have little bearing on the Brokers'

---

[3] The Court does not need to decide here how Group Builders changed the law, if at all, but notes that "[c]ourts applying Hawaii law have consistently held that contract and contract-based tort claims are not covered under [CGL] policies" and that "Group Builders is consistent with prior case law." State Farm Fire & Cas. Co. v. GP W., Inc., 190 F. Supp. 3d 1003, 1015, 1017 (D. Haw. 2016) (Kay, J.) (citing inter alia Burlington).

duties in procuring insurance for HNB and the coverage HNB
received.[4]

B. **Whether a Reasonable Jury Could Find the Brokers Breached
Duties Owed to HNB Independent of _Group Builders_**

HNB and Safeway contend that based on the relationship
between the Brokers and HNB, a reasonable jury could find that
the Brokers owed duties to HNB in the wake of Burlington, which
duties they breached. See Opp. at 4. "[T]he extent of the
responsibilities that the appellees had as insurance agents in
rendering help and providing advice to the appellant" turns on
the facts of each case. See Quality Furniture, 61 Haw. at 93,
595 P.2d at 1068-69; see also Macabio v. TIG Ins., Co. 87 Haw.
307, 319, 955 P.2d 100, 112 (Haw. 1998) ("[W]hen looking at the
facts of each case to determine the duty of an insurance agent,
the nature of the relationship between the agent and the insured
must be scrutinized.").

In Macabio, the Hawaii Supreme Court addressed an
agent's duties to an insured after a legislative change
requiring automotive insurers to offer a stacking option for

---

[4] HNB and Safeway assert that once Group Builders was issued, Mr.
Moore should have taken further steps to confirm HNB's coverage
and discuss with Mr. Hayes whether HNB's coverage was at risk so
as to minimize HNB's exposure in the Underlying Action.  See
Opp. at 17-18, 22-23.  Whether the Brokers owed this duty or
whether Mr. Hayes' own conduct contributed to HNB's exposure is
a question of fact which the Brokers dispute, see Reply at 8-9,
and the Court need not decide this issue to resolve the Motion.

uninsured and uninsured motorist coverage. 87 Haw. at 317-19, 955 P.2d at 110-12. While the court determined that the insurer had failed to properly communicate with the insureds regarding the stacking option, it did not find that the agent had a duty to inform the insureds of this change in law regarding automotive insurance of his own accord. Id. The court noted that the agent had only taken care of the insured's insurance needs when contacted, and the course of dealing did not allow the insureds to justifiably rely on the agent to inform them of a legislative change in available insurance coverage options. Id. at 319, 955 P.3d at 112.

In so holding, the Macabio court distinguished from Hardt v. Brink, 192 F. Supp. 879 (W.D. Wash. 1961) where an insurance agent was held liable for failing to obtain additional coverage where the agent had for eight years exclusively procured insurance for the insured's business after the insured described the relevant facts about his business to the agent. See Macabio, 87 Haw. at 319, 955 P.2d at 112 (describing Hardt). The parties' course of dealing there led the insured to justifiably rely on the agent in procuring insurance after the insured informed the agent of a change which required additional coverage. Id. (describing Hardt). Thus, contrary to the Brokers' contention, Motion at 8, Macabio does not hold that there is no duty to ever inform an insured of changes in law but

rather that whether such duty exists depends on the circumstances of each case.

The parties dispute whether or not the course of dealing between the Brokers and HNB here created a duty to advise HNB of "developments in insurance law that could potentially negate coverage for certain causes of action under its policies" and ensure HNB had product liability insurance. See Motion at 14. The Brokers take the position that Hawaii law regarding construction defect claims under CGL policies was unsettled during the time the Policies were procured. Nevertheless, they argue that the Brokers did not owe duties to HNB to advise it of the risk it was not covered for the types of claims in the Underlying Action or attempt to procure such coverage because of the limited course of dealing between the parties. Motion at 14-15; Reply at 6-8. In particular, the Brokers rely on the fact that Mr. Hayes did not request an explanation of coverage or of the specific policy terms, despite believing he was covered. Brokers' CSF ¶ 6.

However, HNB and Safeway have provided evidence supporting a more extensive course of dealing. Mr. Moore began working with HNB around the year 2000 when Monarch Insurance assigned him the account. Deposition of Douglas Moore at 38:18-39:1, HNB Concise Statement of Facts ("HNB CSF") Ex. 3 ("Moore Dep."). Monarch Insurance held itself out as having a "focus" in

construction insurance.  HNB CSF ¶ 27; Deposition of John

Foster, 30(b)(6) Representative for Monarch Insurance at 53:22-

54:8, HNB CSF Ex. 4 ("Foster Dep.").  The Brokers conceded at

the hearing that Mr. Moore was aware that HNB sold specialty

construction products.  See also Moore Dep. at 43:16-44:16

(describing his understanding that construction opportunities in

Hawaii led to the founding of HNB).  Mr. Hayes' father, the

owner of HNB in 2000, relied on Mr. Moore "to procure the

appropriate coverage for HNB, including product liability

coverage which [he] considered essential coverage for HNB."

Declaration of William Hayes, Jr. ¶ 5, HNB CSF Ex. 1; see also

id. ¶ 8 ("In my opinion no sensible business person owning a

product distribution business like HNB would operate without

such insurance coverage.").  Mr. Hayes' father also understood

from Mr. Moore that the policies purchased covered the product

liability coverage he considered "critical."  Id. ¶ 7.

HNB and Safeway also provided evidence supporting that

Mr. Moore knew of HNB's continued need for product liability

insurance.  Mr. Moore testified that he did not recall that Mr.

Hayes or his father ever requested changes in insurance or

notified him of changes in the business.[5]  Moore Dep. at 46:18-

---

[5] The Brokers assert that Mr. Hayes did not inform Mr. Moore that
HNB had begun selling waterproofing roofing systems.  Reply at
6.  The Court is unable to locate in the record when HNB began
                                      (continued . . . )

24; 47:21-24; 49:18-50:7.  According to Mr. Hayes, Mr. Moore met with him at least yearly to walk through the facility, observe how the business operated, and go over HNB's business insurance needs.  Deposition of William Hayes III at 118:3-120:6, HNB CSF Ex. 2 ("Hayes Dep."); HNB CSF ¶ 20.  Mr. Hayes also stated that he relied on Mr. Moore to continue procuring appropriate insurance for the business, as discussed by Mr. Moore and his father, and that he wanted to be insured for any liability in connection with what HNB was selling.  Hayes Dep. at 88:15-22; 129:21-131:4; 135:23-136:8 ("I wanted to make sure what we sold, we were insured to sell.").  The Brokers contest the conclusions to be drawn from Mr. Hayes' reliance on the course of dealing established by his father.  <u>See</u> Reply at 5-8.  However, a reasonable jury could still find that Mr. Moore was informed about HNB's business needs and that HNB's continued reliance on Mr. Moore led to a duty to advise HNB regarding its product liability coverage and any risks to coverage, particularly in light of the Brokers' position that the law in this area was unsettled at that time.

The parties also appear to dispute the effect <u>Burlington</u> had on the Brokers' duties to HNB.  By arguing that

---

selling such systems, but regardless, whether selling this type of product constitutes a change in HNB's business affecting Mr. Moore's duties to HNB is a question of fact.

Group Builders represented a "major change" in "occurrence"-
based insurance law, Motion at 12, the Brokers appear to take
the position that Burlington and its progeny in this district
did not pose a risk to HNB's coverage or alter their duties to
HNB in ensuring product liability coverage. Although this Court
has indicated previously that Burlington is relevant to the
scope of coverage under the Policies,[6] see Order at 17-20, ECF
No. 193, whether the Brokers knew or should have known of
Burlington and/or United Coatings and Lau, the cases in this
district in 2007 applying Burlington, and what actions they
should have taken in response, is disputed.

On one hand, the Brokers note that the TACC focuses on
allegations that the Insurers did not alter their position on
HNB's coverage until after Group Builders, rather than focusing
on Burlington. See Reply at 3-4. The Brokers argue that Mr.
Moore should not have known that Burlington would apply to HNB
as a product distributor since the decision involved contractors
and developers, and also note that local insurers only began

---

[6] In resolving the Insurer's motion to dismiss the Second Amended
Counterclaim, this Court previously stated that it "follow[ed]
the law of Burlington and the other cases from this district"
and "conclude[d] that none of the claims [in the Underlying
Action] are covered by the Policies...." Order at 27, 35, ECF
No. 193. In a separate pending motion, HNB and Safeway have
asked the Court to confirm that under Burlington and its progeny
there is no coverage under the Policies. ECF No. 343. As such,
the Court declines to further discuss the issue of coverage
here.

offering endorsements regarding the extent of coverage after Group Builders. Brokers' CSF ¶ 13; Reply at 5.

On the other hand, HNB and Safeway have demonstrated that a reasonable jury could find that the Brokers' duties to procure product liability insurance also required them to take reasonable efforts to understand relevant changes in insurance law affecting HNB's coverage. According to HNB and Safeway's expert here, insurance brokers should "keep[] up to date on the legal climate surrounding the interpretation and effectiveness of policies which they do or will provide to their clients, as well as positions taken by Insurers with respect to policy interpretation." Declaration of Elliot C. Rothman ¶ 8, HNB CSF Ex. 6 ("Rothman Decl."). This could include not just Burlington but also cases applying Burlington to construction defect claims involving insureds other than contractors and developers. In 2007, a court in this district applied Burlington to find that a paint manufacturer was not covered under its standard CGL policy for claims relating to certain warranties regarding the paint. See United Coatings, 518 F. Supp. 2d at 1251-52.

HNB and Safeway's expert also opined that a decision like Burlington would "engender very serious concern" in the construction and insurance industries regarding coverage. Id. ¶ 9. Monarch Insurance's corporate representative agreed that the issue of "occurrence"-based coverage under Burlington and Group

18

Builders was a "regular topic" of which its agents were aware.
Foster Dep. at 28:22-29:12; HNB CSF ¶ 23.  HNB and Safeway's
expert then concluded that under the circumstances, Mr. Moore
had a responsibility to ascertain the Insurers' position as to
the effect of Burlington on the Policies and take necessary
steps to secure HNB's coverage.[7]  Rothman Decl. ¶ 9.

Indeed, while the Hawaii Supreme Court in Macabio did
not find a duty to inform the insureds of changes in available
coverage based on the particular course of dealing, see 87 Haw.
at 319, 955 P.2d at 112, other courts have found similar duties
may exist where warranted by the relationship between the
parties.  See, e.g., Parker v. Lexington Ins. Co., No. CIV.A. 06-
4156, 2006 WL 3328041, at *3 (E.D. La. Nov. 15, 2006) (noting
that Louisiana courts had found insurance agents owed a duty to
affirmatively inform insureds of information like changes in
federal flood policy which might affect the type of policy
selected); Baughman v. State Farm Mut. Auto. Ins. Co., 2005-
Ohio-6980, ¶ 43 (Ohio Ct. App. Dec. 30, 2005), cause dismissed
sub nom. Baughman v. State Farm Fire Mut. Auto. Ins. Co., 2007-
Ohio-2063, ¶ 43, 113 Ohio St. 3d 1483, 865 N.E.2d 908 (affirming

---

[7] As Safeway and HNB appear to recognize, whether the Brokers'
duties arose in 2004 when Burlington was issued, or sometime
thereafter over the parties' course of dealing and in light of
decisions applying Burlington, is a question of fact.  See Opp.
at 27-28.

finding that agent had assumed a duty to disclose changes in law
based on reliance by insured on historical disclosure of
information relevant to policy selection); Woodham v. Moore, 428
So. 2d 280, 280-81 (Fla. Dist. Ct. App. 1983) (per curiam)
(finding question of fact as to broker's duty to advise insured
of eligibility for greater coverage where broker had a policy of
periodically reviewing client files for such developments).  The
record here contains sufficient evidence regarding the course of
dealing for a reasonable jury to find that the Brokers owed
duties in the wake of Burlington regarding HNB's product
liability coverage.[8]

    Lastly, HNB and Safeway have provided evidence which
would allow a reasonable jury to find Mr. Moore breached his
duties to HNB.  The Policies were renewed each year, even after
Burlington in 2004 and after United Coatings and Lau in 2007.
See Brokers' CSF ¶ 4; Moore Dep. at 49:18-50:7; 52:14-25.  The
policies Mr. Moore procured were the same ones he had procured
previously.  HNB CSF ¶¶ 20, 26.  Mr. Moore did not recall
discussing with FFIC what coverage was being underwritten for
HNB during the renewals and was unaware of FFIC ever issuing a

_____

[8] HNB and Safeway assert that Burlington was especially relevant
given the existence of diversity jurisdiction in this matter.
See Opp. at 21-22.  However, whether the Brokers should have
understood the possibility of diversity jurisdiction and the
import of Burlington in a federal forum, as opposed to a state
forum, is a question of fact.

policy interpretation change.  Id. at 54:4-13; 178:14-20.  Mr.

Moore testified that he understood "in general that, under the

commercial general liability policy, that there is some coverage

for third party damages based on his sale of hardware products

that [HNB] sells."[9]  Moore Dep. at 99:18-24.

However, Mr. Moore also testified that even after

Group Builders he did not understand the definition of an

"occurrence" under a CGL policy for a construction-related

business "because [he didn't] work with the construction

industry very much, [so] it wasn't something [he] could have

really delved into or understood."  Id. at 162:14-63:3.  Indeed,

despite Monarch Insurance's claimed focus in construction

insurance, Mr. Moore testified that he had never represented a

hardware business like HNB and had only represented a couple of

other subcontractors.  Id. at 171:18-24; 158:6-18 (2-3

subcontractor clients); Foster Dep. at 53:22-54:8 (Monarch tells

clients it has a "focus in construction"); see also Moore Dep.

169:17-170:11; (primary clients are technology companies and

pension funds).  A reasonable jury could thus find that while

---

[9] The Brokers imply that Mr. Moore's deposition testimony
clarifying what he represented to HNB during the Underlying
Action means HNB was aware of the caveats in Mr. Moore's
understanding of the coverage.  See Reply at 7.  However, there
does not appear to be evidence that Mr. Moore actually
communicated this to HNB at the time the Policies were procured,
which is relevant in determining whether Mr. Moore breached his
duties to HNB.

Mr. Moore represented to HNB that there was some product liability coverage, he was unaware of and did not advise HNB of any risk that the Policies might exclude product liability coverage.  HNB CSF ¶¶ 20, 26; see Opp. at 23.

HNB and Safeway's expert has opined that Mr. Moore's "lack of knowledge of the possibility of adverse interpretation" of the Policies by the Insurers after Burlington and alleged failure to secure coverage or at least inform HNB of the risk it lacked coverage constituted a breach of Mr. Moore's duties to HNB.  See Rothman Decl. ¶ 6.  Insurance Associates' corporate representative agreed that if a client informs the broker of the facts concerning its business and needs, for which the broker intends to, but does not, procure coverage, then the broker "blew it."  Deposition of Sue Savio, 30(b)(6) representative for Insurance Associates Inc. at 110:6-111:13, HNB CSF Ex. 5 ("But if the client tells him everything and he just misses something on the application, he forgets to say something about the pool or whatever the case may be, then, yes, the agent blew it.").

In sum, reading the record in the light most favorable to HNB and Safeway, a reasonable jury could find that Mr. Moore breached duties owed to HNB in the wake of the 2004 Burlington decision and/or United Coatings and Lau, the cases in this district applying Burlington in 2007, in procuring product liability insurance.  See Hardt, 192 F. Supp. at 881; see also

<u>De Smet Farm Mut. Ins. Co. of S.D. v. Gulbranson Dev. Co.</u>, 2010

S.D. 15, ¶¶ 28-29, 779 N.W.2d 148, 158 (S.D. 2010) (finding

broker liable for procuring policy that did not provide coverage

sought where insured had clearly communicated his needs); <u>Gust</u>

<u>K. Newberg Constr. Co. v. E.H. Crump & Co.</u>, 818 F.2d 1363, 1366

(7th Cir. 1987) (noting that "it is scarcely surprising" that

the court in <u>Burns v. Consolidated American Insurance Co.</u>, 359

So.2d 1203 (Fla. App. 3d Dist. 1978) found a duty to inform the

insured of exclusion where it was "well aware that the very risk

excluded by the policy was likely to occur").  This conclusion

fatally undermines the premise on which the Brokers' motion

depends – that Safeway and HNB's claims fundamentally depend on

a duty to anticipate <u>Group Builders</u>.

In view of the foregoing, the Court DENIES the

Brokers' Motion on the issue of their duties to HNB.

## II.  <u>Recoverability of Attorneys' Fees</u>

HNB and Safeway seek attorneys' fees incurred in

connection with the instant counterclaims and the declaratory

judgment action between the Insurers and HNB, recovery of which

the Brokers contest.[10]  <u>See</u> Motion at 16-24.  The Court can

easily dispose of the Brokers' argument that attorneys' fees are

---

[10] HNB and Safeway confirmed at the September 5, 2017 hearing
that they are not seeking to recover attorneys' fees incurred by
either HNB or Safeway in the Underlying Action.

not available because HNB and Safeway cannot establish a breach
of the Brokers' duties, Motion at 21, as a reasonable jury could
find otherwise, as discussed above. And contrary to the
Brokers' contention, id., the fact of settlement between the
Insurers and Safeway does not necessarily mean that the Policies
must have included products liability coverage. Indeed, this
Court has previously stated that "none of the claims [in the
Underlying Action] are covered by the Policies...." Order at
35, ECF No. 193; see also supra at 17 n.6.

In addition, the Brokers appear to contest Safeway's
general ability to recover fees. Motion at 21-24. In the
settlement of the Underlying Action, Safeway received all of
HNB's claims against the Brokers, including all damages, losses,
and attorneys' fees. Settlement Agreement, Brokers' CSF Ex. 4
at 5. Despite the assignment, however, the Brokers contend that
the lack of a contract providing for attorneys' fees precludes
recovery. Reply at 13. They also assert that Safeway cannot
recover as it was not a party to or in privity with a party to
the alleged contract between HNB and the Brokers, nor was it an
intended beneficiary of the contract. Motion at 21-23.

However, the lack of a written contract to which
Safeway was an original party is not necessarily a barrier to
Safeway's recovery of fees. Even if Safeway cannot recover fees
in its own right as party to or beneficiary of a written

agreement, an assignment "provides the assignee with the same legal rights as the assignor had before assignment." <u>Fireman's Fund Ins. Co. v. AIG Hawai'i Ins. Co.</u>, 109 Haw. 343, 349, 126 P.3d 386, 392 (2006) (internal citation and quotation, and emphasis omitted). Thus, to the extent HNB was able to recover attorneys' fees, whether its own or Safeway's, Safeway may recover them here as HNB's assignee.

The Court will address the remainder of the Brokers' arguments and HNB and Safeway's responses regarding the recoverability of the fees incurred at each stage of this dispute separately.

A. **Fees in HNB and Safeway's Counterclaim Action**

"Ordinarily, attorneys' fees cannot be awarded as damages or costs unless so provided by statute, stipulation, or agreement." <u>Blair v. Ing</u>, 96 Haw. 327, 329, 31 P.3d 184, 186 (Haw. 2001) (internal quotation and citation omitted). As the Brokers recognize, Hawaii Revised Statues ("HRS") § 607-14 is a "well-recognized statutory exception" providing that reasonable fees may be taxed against the losing party "in all actions in the nature of assumpsit and in all actions on a promissory note or other contract in writing that provides for an attorney's fee." HRS § 607-14; Motion at 16; <u>see also</u> <u>Blair</u>, 96 Haw. at 329, 31 P.3d at 186. HNB and Safeway do not appear to dispute that this is not an action on a promissory note and that there

25

is no contract in writing providing for an attorneys' fee.  As

such, in order to recover under HRS § 607-14, HNB and Safeway's

claims must sound in assumpsit.

The Brokers contend that this is "not an assumpsit

case" but rather "an attempt to shift liability for

indemnification of Safeway's damages related to the Project to

Broker Defendants."  See Motion at 16, 19; Reply at 9.

"Assumpsit is a common law form of action which allows for the

recovery of damages for non-performance of a contract, either

express or implied, written or verbal, as well as quasi

contractual obligations."  TSA Int'l Ltd. v. Shimizu Corp., 92

Haw. 243, 264, 990 P.2d 713, 734 (Haw. 1999), as amended on

denial of reconsideration (Dec. 30, 1999) (emphasis and internal

citation and quotation omitted).  In Hawaii, whether a claim

sounds in assumpsit or tort "depends on whether the duties arose

from a promise or by operation of law."  Kona Enters., Inc., v.

Estate of Bishop, 229 F.3d 877, 886 (9th Cir. 2000).  "Where

there is doubt as to whether an action is in assumpsit or in

tort, there is a presumption that the suit is in assumpsit."

Id. (internal citation and quotation omitted).

The claims that HNB and Safeway have brought here are

for breach of contract, negligence, promissory estoppel, and

breach of fiduciary duty.  TACC ¶¶ 168-93.  "The breach of

contract and breach of promissory estoppel claims are clearly in

the nature of assumpsit." Au v. Funding Grp., Inc., No. CIV.
11-00541 SOM, 2013 WL 1154211, at *4 (D. Haw. Feb. 19, 2013),
report and recommendation adopted, No. CV 11-00541 SOM-KSC, 2013
WL 1154351 (D. Haw. Mar. 19, 2013), aff'd, 588 F. App'x 707 (9th
Cir. 2014). The negligence claim sounds in tort, not assumpsit.
See Helfand v. Gerson, 105 F.3d 530, 537 (9th Cir. 1997)
(analyzing claims for purposes of HRS § 607-14).

A breach of fiduciary duty claim sounds in assumpsit
where it "is based on the non-performance or breach of
contractual obligations and the complaint seeks damages flowing
from that non-performance or breach." Kona Enters., 229 F.3d at
886. The Brokers' alleged duties here appear to arise from
their agreement to procure insurance for HNB, and thus this
claim also appears to sound in assumpsit. See Eckard Brandes,
Inc. v. Riley, 338 F.3d 1082, 1087-88 (9th Cir. 2003) (holding
that breach of fiduciary duty claim sounded in assumpsit where
it arose from breach of contractual employment relationship).

The Hawaii Supreme Court has also indicated that where
tort claims are "inextricably linked" to the assumpsit claims,
the entire action can be considered in the nature of assumpsit.
See James B. Nutter & Co. v. Domingo, 139 Haw. 259 at *4, 388
P.3d 47 (Haw. Ct. App. 2016) (analyzing Blair, 96 Haw. at 333,
31 P.3d at 190). In Blair, the Hawaii Supreme Court found that
without the implied contract, which would create a cognizable

27

duty, there would be no negligence claim, and as such the claims were inextricably linked and the essential character of the action was in assumpsit. <u>Blair</u>, 96 Haw. at 333, 31 P.3d at 190.

To the extent that HNB and Safeway's negligence claim is inextricably linked to the assumpsit claims because the Brokers' duties arise from an agreement or promise, the entire action may be considered in the nature of assumpsit.[11] Thus, contrary to the Brokers' position, the lack of a contract in writing does not bar the recovery of fees here. <u>See</u> Reply at 13. Rather, as at least some of the claims at issue sound in assumpsit, attorneys' fees appear to be recoverable pursuant to pursuant to HRS § 607-14 should HNB and Safeway prevail. As such the Court DENIES the Brokers' Motion as to fees incurred in litigating the instant counterclaims.

### B. **Fees in the Declaratory Judgment Action On Coverage**

The Brokers also challenge the recoverability of HNB and Safeway's attorneys' fees in the Insurers' declaratory judgment action against HNB regarding coverage. <u>See</u> Motion at 16; TACC, Prayer for Relief ¶ B.1. Many jurisdictions, including Hawaii, allow for the recovery of attorneys' fees incurred in a third-party litigation under the wrong or tort of

---

[11] To the extent that the breach of fiduciary duty claim sounds in tort, rather than assumpsit, it may also be inextricably linked to the assumpsit claims for similar reasons.

another party doctrine as either an exception to the American rule on attorneys' fees or as an item of damages. See 25 C.J.S. Damages § 87; see also Restatement (Second) of Torts § 914 (1979).

In Hawaii, the wrong of another party doctrine is set forth in Uyemura v. Wick, 57 Haw. 102, 551 P.2d 171 (1976), which recognized that "it is generally held that where the wrongful act of the defendant has involved the plaintiff in litigation with others, or placed him in such relation with others as makes it necessary to incur expenses to protect his interest, such expenses, including attorneys' fees, should be treated as the legal consequences of the original wrongful act, and may be recovered as damages." 57 Haw. at 108-09, 551 P.2d at 176. It is under this principle that HNB and Safeway contend their attorneys' fees in the Insurers' declaratory judgment action are available. See Opp. at 28-30.

"In order to recover costs and attorneys' fees under Uyemura, a party must establish that: (1) it became involved in a legal dispute because of the wrongful act of the party to be charged; (2) the resulting litigation was with a third party; (3) the attorneys' fees and costs sought to be charged were incurred in the third-party litigation; (4) the attorneys' fees and costs incurred were the natural and necessary consequences of the wrongful act of the party to be charged; and (5) the fees

and costs are reasonable." Fought & Co. v. Steel Eng'g & Erection, Inc., 87 Haw. 37, 53, 951 P.2d 487, 503 (Haw. 1998) (citing Uyemura 57 Haw. at 109, 551 P.2d at 176). The wrongful act may be either breach of contract or tortious conduct. See Uyemura, 57 Haw. at 109, 551 P.2d at 176 (the plaintiff must establish that it became involved in a legal dispute "either because of a breach of contract by the defendant, or because of defendant's tortious conduct").

The Brokers first dispute that HNB and Safeway cannot establish that their alleged breaches caused HNB and Safeway to become involved in a legal dispute. Reply at 10. However, it is not necessary that the wrongful act be the sole cause of the third-party litigation. Fought, 87 Haw. at 53, 951 P.2d at 503 ("Accordingly, the DOT's contention that a defendant's wrongful act must be the *sole* cause of a plaintiff's litigation with a third party in order to enable the plaintiff to recover attorneys' fees expended in the third-party litigation is without merit.") (emphasis in original). Other courts applying the wrong of another doctrine in broker negligence suits have found fees incurred in coverage actions are recoverable. See, e.g., Prest v. La. Citizens Prop. Ins. Corp., 2012-0513 (La. 12/4/12), 125 So. 3d 1079, 1091 (finding that the insured was entitled to recover fees incurred in a coverage suit resulting from broker negligence in failing to procure policy limits the

insured believed he had); <u>Franchi v. Stella</u>, 42 Mass. App. Ct. 251, 259, 676 N.E.2d 56, 61 (1997) (allowing the plaintiff to recover in suit against broker the legal fees and costs incurred in a coverage action against the insurer).

Indeed, in <u>Mutual Fire, Marine & Inland Insurance Co. v. Costa</u>, the First Circuit reversed the trial court's denial of fees, finding that the fees incurred by the insured in defending the insurer's declaratory judgment action fell "squarely within th[e] third-party exception [to the American rule]." 789 F.2d 83, 90 (1st Cir. 1986). The court noted that the jury found the broker had breached its duties by failing to implement requested changes to the insured's policy and that if it had done so, the insured would not have had to defend the declaratory judgment action. <u>Id.</u>

As discussed above, there is sufficient evidence here for a reasonable jury to find that the Brokers breached their duties by failing to confirm the Insurers' position on HNB's coverage and either take steps to rectify any gap in coverage or inform HNB of the risk of lack of coverage. <u>See</u> Rothman Decl. ¶¶ 6-10. Had the Brokers not breached these duties, a reasonable jury could find that the Insurers' position on HNB's coverage would have been previously ascertained and HNB would have had the opportunity to seek any additional coverage it might deem necessary. Instead, the Brokers' alleged breaches

left HNB exposed to the Insurers' suit seeking a declaration that HNB did not have coverage under the Policies.  See Opp. at 29.  As such, a reasonable jury could find that the fees HNB and Safeway, as HNB's assignee, incurred in defending the coverage action were the natural and necessary consequence of the alleged breach.

The Brokers also contend that HNB and Safeway cannot demonstrate that litigation resulting from the alleged wrongful acts was with a third party because both the Brokers and Insurers are involved in "this case."  See Reply at 11.  The Brokers appear to conflate the Insurers' declaratory judgment action with the counterclaims that HNB and Safeway brought against the Insurers and later against the Brokers as well.  The consolidation of these two actions into a single suit does not affect the recoverability of attorneys' fees under Uyemura.

In Lee v. Aiu, the defendant's tortious interference with a contract between Lee and Aiu caused Lee to incur attorneys' fees litigating breach of contract with Aiu.  85 Haw. 19, 33, 936 P.2d 655, 669 (Haw. 1997).  The Hawaii Supreme Court held that Lee was entitled to recover attorneys' fees from the breach of contract suit with Aiu even though it had been consolidated with the tort suit against the defendant.  Id. ("[W]e see no reason why attorneys' fees should be recoverable when the aggrieved party files separate lawsuits against the

contract breacher and the tortfeasor, but should be denied when he [or she] consolidates both into one suit.") (internal quotation and citation omitted); see also Mutual Fire, 789 F.2d at 90 (noting that trying both the coverage and broker negligence actions in one case did not vitiate the insured's right to recover fees it incurred as a result of the broker's wrongful conduct). Similarly here, consolidating the declaratory judgment action HNB and Safeway had to defend[12] with HNB's counterclaims in the instant action does not preclude recovery of fees.

The Court thus concludes that a reasonable jury could find that the Brokers' alleged wrongful conduct caused HNB and Safeway to incur fees defending the Insurers' declaratory judgment action, and as such, are recoverable as the legal consequences of the Brokers' wrongful conduct under Uyemura.[13]

_____

[12] Uyemura applies regardless of whether HNB and Safeway are seeking fees for defending, rather than bringing, litigation. See Restatement (Second) of Torts § 914 (1979) (noting that the rule applies regardless of whether the party seeking fees is defending or bringing the third party action). Nor is it necessary for HNB and Safeway, as the party seeking attorneys' fees, to have prevailed in the third-party litigation. See Fought, 87 Haw. at 53, 951 P.2d at 503.

[13] As the fees can be considered a legal consequence of the Brokers' alleged wrongful conduct, the Court does not need to address HNB and Safeway's arguments that the fees were the foreseeable and likely consequence of the Brokers' alleged conduct. See Opp. at 31. In any event, a reasonable jury could find that a coverage action is a foreseeable result of the failure to obtain coverage critical to HNB's business, and thus

(continued . . . )

The Court thus DENIES the Brokers' Motion regarding fees incurred in the declaratory judgment action.

## CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiffs/Counterclaim Defendants Monarch Insurance Services, Inc. and Douglas Moore's Motion for Summary Judgment, to which Insurance Associates Inc. and Douglas Moore have filed a substantive joinder. ECF Nos. 313, 315, 317. The Motion is DENIED both as to the issue of the Brokers' duties to HNB and also as to the recoverability of HNB and Safeway's attorneys' fees in the instant counterclaim action and the Insurer's declaratory judgment action.

---

that the fees HNB and Safeway incurred in defending that action are recoverable as consequential damages. See Francis v. Lee Enters., Inc., 89 Haw. 234, 239-40, 971 P.2d 707, 712-13. (Haw. 1999) (Consequential damages are "limited to those within the contemplation of the parties when the contract was entered into or at least reasonably foreseeable by them at the time."); Amfac v. Waikiki Beachcomber Inv. Co., 74 Haw. 85, 91, 839 P.2d 10, 17 (Haw. 1992) ("Only such damages can be recovered as were foreseeable – i.e., may reasonably be supposed to have been in the contemplation of the parties – at the time the contract was entered into.").

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, September 14, 2017.



_____
Alan C. Kay
Sr. United States District Judge


American Automobile Insurance Company, et al. v. Hawaii Nut & Bolt, Inc., et al., Civ. No. 15-00245 ACK-KSC Order Denying Counterclaim Defendants Douglas Moore, Monarch Insurance Services, Inc., and Insurance Associates, Inc.'s Motion for Summary Judgment and Substantive Joinder.